Robert V. Prongay (SBN 270796)
   *rprongay@glancylaw.com*
Charles Linehan (SBN 307439)
   *clinehan@glancylaw.com*
Pavithra Rajesh (SBN 323055)
   *prajesh@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Trevor Wayne*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR WAYNE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MAXEON SOLAR TECHNOLOGIES, LTD., WILLIAM MULLIGAN, and KAI STROHBECKE,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Trevor Wayne ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Maxeon Solar Technologies, Ltd. ("Maxeon" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Maxeon; and (c) review of other publicly available information concerning Maxeon.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Maxeon securities between November 15, 2023 and May 29, 2024, inclusive, (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Maxeon is a global manufacturer and marketer of solar technology. Maxeon went public in August 2020 through a strategic spin off from SunPower Corp. ("SunPower"). SunPower was Maxeon's largest customer, representing 26.7% of the Company's total revenue for fiscal year 2022. Maxeon and SunPower maintained a supply agreement under which, among other things, SunPower was obligated to purchase certain minimum product volumes; and Maxeon was prohibited from selling certain modules to customers other than SunPower and could not circumvent that exclusivity provision via SunPower dealers (the "Master Supply Agreement").

3.      In mid-2023, Maxeon and SunPower engaged in a dispute wherein Maxeon alleged SunPower was withholding approximately $29 million in past due invoices and SunPower alleged that Maxeon was in breach of the Master Supply Agreement's non-circumvention clause. As a result, Maxeon ceased shipments to SunPower in July 2023. By November 2023, the two companies settled their dispute but terminated the Master Supply Agreement.

4.      On May 30, 2024, before the market opened, Maxeon announced financial results for first quarter 2024 in a press release, reporting a 41% year-over-year decline in revenue to

$187.5 million. The Company disclosed that it was "facing a serious cash flow challenge" as the result of, in part, the termination of the SunPower supply agreement. The Company revealed that, as a result, it was forced to "negotiate[] commitments for significant liquidity support" which will result in "substantial dilution to existing public shareholders, with TZE [TCL Zhonghuan Renewable Energy Technology Co. Ltd.] ultimately becoming a controlling shareholder."

5.      On this news, the Company's share price fell 34.7%, or $1.08, to close at $2.03 per share on May 30, 2024, on unusually heavy trading volume.

6.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Maxeon relied on the exclusive sales of certain products to SunPower; (2) that, following the termination of the Master Supply Agreement, the Company was unable to "aggressively ramp sales"; (3) that, as a result, revenue substantially declined; (4) that, as a result, the Company suffered a "serious cash flow" crisis; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts

charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

11.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

12.    Plaintiff Trevor Wayne, as set forth in the accompanying certification, incorporated by reference herein, purchased Maxeon securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.    Defendant Maxeon is incorporated under the laws of Singapore with its principal executive offices located in Singapore. The Company's domestic executive office is located in San Jose, California. Maxeon's ordinary shares trade on the NASDAQ exchange under the symbol "MAXN."

14.    Defendant William Mulligan ("Mulligan") was the Company's Chief Executive Officer ("CEO") at all relevant times.

15.    Defendant Kai Strohbecke ("Strohbecke") was the Company's Chief Financial Officer ("CFO") at all relevant times.

16.    Defendants Mulligan and Strohbecke (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.    The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.    Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the

public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Maxeon is a global manufacturer and marketer of solar technology. Maxeon went public in August 2020 through a strategic spin off from SunPower. SunPower remained Maxeon's largest customer, representing 26.7% of the Company's total revenue for fiscal year 2022. Maxeon and SunPower maintained a Master Supply Agreement under which, among other things, SunPower was obligated to purchase certain minimum product volumes; and Maxeon was prohibited from selling certain modules to customers other than SunPower and could not circumvent that exclusivity provision via SunPower dealers.

18.     In mid-2023, Maxeon and SunPower engaged in a dispute wherein Maxeon alleged SunPower was withholding approximately $29 million in past due invoices and SunPower alleged that Maxeon was in breach of the parties' master supply agreement's non-circumvention clause. As a result, Maxeon ceased shipments to SunPower in July 2023. By November 2023, the two companies reached a settlement on their dispute, but terminated the Master Supply Agreement.

### Materially False and Misleading

### Statements Issued During the Class Period

19.     The Class Period begins on November 15, 2023. On that day, Maxeon issued a press release announcing the Company's third quarter 2023 financial results, including that the dispute with SunPower was resolved, thereby "clearing the way for Maxeon to aggressively ramp sales into the US market." Specifically, the press release stated: [1]

> Maxeon's Chief Executive Officer Bill Mulligan commented, "As indicated in our preliminary results announcement of our third quarter financials, *the third quarter was significantly impacted by the absence of shipments to SunPower* for a majority of the quarter as well as by the industry-wide supply and demand

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

imbalance in Europe. ***Maxeon has responded by taking decisive action to adjust its market focus and manufacturing footprint to reposition Maxeon for success.***"

\*                    \*                    \*

"In DG, our business was negatively impacted by SunPower falling behind on payments, which caused Maxeon to suspend shipments to them starting in July. I am pleased to announce that we have reached a settlement with SunPower that has allowed us to resume shipments, while mutually releasing all outstanding claims. The settlement calls for SunPower to purchase 85 MW of IBC panels at contracted pricing through February 2024 and to post a $30 million payment security bond. ***Under the settlement terms, both existing supply agreements with SunPower will be terminated.*** The settlement also contemplates Maxeon receiving a warrant to purchase 1.7 million shares of SunPower's common stock, resolves outstanding claims and contract breaches, and ***ends constraints on Maxeon product sales to SunPower installers at the end of this quarter, clearing the way for Maxeon to aggressively ramp sales into the US market by leveraging its acquisition of Solaria Corporation and accelerated ramp plans for Maxeon 7 capacity***."

### Fourth Quarter 2023 and Fiscal Year 2023 Outlook

For the fourth quarter of 2023, the Company anticipates the following results:

| (In millions, except shipments) | Outlook |
|---|---|
| Shipments, in MW | 610 - 650 |
| Revenue[5] | $220 - $260 |
| Gross loss[5] | $5 - $15 |
| Non-GAAP gross loss[1][5] | $5 - $15 |
| Operating expenses | $113 ± $4 |
| Non-GAAP operating expenses[2] | $38 ± $2 |
| Adjusted EBITDA[3][5] | $(27) - $(37) |
| Capital expenditures[4] | $10 - $20 |

\*                    \*                    \*

20.     On November 15, 2023, the Company submitted its quarterly report for the period ended October 1, 2023 on a Form 6-K filed with the SEC. Attached as Exhibit 99.2 were the financial results for the third quarter ended October 1, 2023, which stated the following about the Company's liquidity:

**Liquidity and Capital Resources**

***Current Sources of Liquidity and Capital Resources***

As of October 1, 2023, we had unrestricted cash and cash equivalents of $208.1 million, restricted cash of $9.2 million and short-term securities representing a 6-months time deposit of $60.0 million as compared to $227.4 million of unrestricted cash and cash equivalents, $40.5 million of restricted cash and short-term securities representing a 4-month time deposit of $76.0 million as of January 1, 2023.

\*          \*          \*

***Anticipated Sources of Funds***

***We believe that our current cash, cash equivalents, along with cash expected to be generated from operations will be sufficient to meet our obligations over the next 12 months***.

21.    On April 8, 2024, the Company published a press release announcing its preliminary fourth quarter and fiscal year 2023 results, reporting preliminary revenue of $229 million and gross loss of $32 million. The press release also stated in relevant part:

Maxeon's CEO Bill Mulligan commented, "In the fourth quarter, ***Maxeon delivered financial results largely in line with our expectations***. Our U.S utility-scale business accounted for the majority of revenues in the fourth quarter, with stable ASPs."

\*          \*          \*

"The Maxeon team is highly focused on reducing manufacturing costs, OPEX rationalization and ***liquidity-management*** to enable a return to profitability. ***Our strategy continues to be to focus on designing and building premium, differentiated products and delivering a superior customer experience across a balanced portfolio of global DG and U.S. utility scale markets.*** The Company plans to file its annual 20-F report by April 30, 2024."

22.    On April 30, 2024, the Company submitted to the SEC a Form NT 20-F, stating that it could not timely file its 2023 annual report because the Company required "additional time to complete its financial statement preparation and review process" and, continued, stating in relevant part:

***Factors which have affected the timing of the preparation and review of the financial statements include the additional ongoing work required in connection with the assessment of the Company's ability to continue as a going concern***, including the ongoing analysis of the Company's strategic options with the assistance of external advisors.

23.    The above statements identified in ¶¶ 19-22 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Maxeon relied on the exclusive sales of certain products to SunPower; (2) that, following the

termination of the Master Supply Agreement, the Company was unable to "aggressively ramp sales"; (3) that, as a result, its revenue substantially declined; (4) that, as a result, the Company suffered a "serious cash flow" crisis; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

24.    On May 30, 2024, before the market opened, Maxeon announced its financial results for first quarter 2024, including $187.5 million revenue, a decline of over 41% year-over-year. The Company disclosed that it was "facing a serious cash flow challenge" as the result of, in part, the termination of the SunPower supply agreement. The Company revealed that, as a result, it was forced to "negotiate[] commitments for significant liquidity support" which will result in "substantial dilution to existing public shareholders, with TZE [TCL Zhonghuan Renewable Energy Technology Co. Ltd.] ultimately becoming a controlling shareholder."  Specifically, the Company issued a press release, stating in relevant part:

> Maxeon has been facing a very difficult market environment since the third quarter of last year, with challenging industry pricing conditions and demand disruptions in our DG business due to higher interest rates and policy changes, as well as ***project pushouts by two of our large-scale customers in the US***. These external factors led to underutilized manufacturing operations, increased product costs, and lower revenue and profit than planned. While the Company is making progress on our announced restructuring initiatives and we are seeing some positive trends in the market, ***we determined that Maxeon requires additional capital to support its continuing operations.*** After conducting a thorough analysis with the help of financial advisors, management and the board determined that the most viable financing option to support our immediate liquidity needs was from our largest shareholder, TCL Zhonghuan Renewable Energy Technology Co. Ltd. (TZE)."
>
> "TZE has agreed to invest $97.5 million via a debt investment and has committed to an additional $100 million equity investment, in each case subject to regulatory approvals. In addition, substantially all of the holders of the $200 million 2025 convertible notes have agreed to exchange their bonds and accrued interest into new bonds due in 2028, which are convertible into equity at the noteholders' option starting July 2nd and $137.2 million of which must be converted into equity upon TZE's equity investment. We believe that these transactions are necessary to provide sufficient liquidity to enable the Company to return to profitability. ***These transactions, however, will result in substantial dilution to existing public shareholders, with TZE ultimately becoming a controlling shareholder, subject to regulatory approvals.***"

*                    *                    *

On April 8, 2024, the Company issued a press release and furnished a Report on Form 6-K announcing its preliminary unaudited financial results for the fourth quarter and fiscal year ended December 31, 2023. ***Subsequent to the issuance of such preliminary financial information, the Company revised the presentation of gross loss, GAAP operating expenses, GAAP net loss attributable to the stockholders, non-GAAP gross loss, non-GAAP operating expenses and Adjusted EBITDA as follows***:

- ***Additional inventory reserve of $2.3 million to write down inventories to market value which affected gross loss, GAAP net loss attributable to the stockholders, non-GAAP gross loss and Adjusted EBITDA***

- Adjustment of estimate on employee compensation based on final payout which resulted in lower gross loss of $0.3 million, lower GAAP operating expenses of $0.5 million, lower GAAP net loss attributable to stockholders of $0.8 million, higher non-GAAP operating expenses and Adjusted EBITDA of $0.4 million

- Adjustment of uncertain tax position which resulted in higher GAAP net loss attributable to stockholders of $0.5 million.

25.     The same Press Release reported the Company's fiscal fourth quarter 2023 revenue, excerpted in relevant part:

| (In thousands, except shipments) | Fiscal Q1 2024 | Fiscal Q4 2023 | Fiscal Q1 2023 |
|---|---|---|---|
| Shipments, in MW | 488 | 653 | 774 |
| Revenue | $ 187,456 | $ 228,775 | $ 318,332 |
| Gross (loss) profit [1] | (14,871) | (34,461) | 53,625 |
| GAAP Operating expenses | 48,668 | 141,007 | 41,921 |
| GAAP Net (loss) income attributable to the stockholders[1] | (80,148) | (186,334) | 20,271 |
| Capital expenditures | 19,216 | 11,656 | 16,500 |

| | Other Financial Data[1] | | |
|---|---|---|---|
| (In thousands) | Fiscal Q1 2024 | Fiscal Q4 2023 | Fiscal Q1 2023 |
| Non-GAAP Gross (loss) profit | $ (12,888) | $ (9,675) | $ 54,142 |
| Non-GAAP Operating expenses | 38,520 | 36,654 | 38,056 |
| Adjusted EBITDA | (38,977) | (37,631) | 30,984 |

26.     On this news, the Company's share price fell 34.7%, or $1.08, to close at $2.03 on May 30, 2024, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Maxeon securities between November 15, 2023 and May 29, 2024, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are

Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

28. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Maxeon's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Maxeon shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Maxeon or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

31. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Maxeon; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

32.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### UNDISCLOSED ADVERSE FACTS

33.     The market for Maxeon's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Maxeon's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Maxeon's securities relying upon the integrity of the market price of the Company's securities and market information relating to Maxeon, and have been damaged thereby.

34.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Maxeon's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Maxeon's business, operations, and prospects as alleged herein.

35.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Maxeon's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and

other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

36.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

37.    During the Class Period, Plaintiff and the Class purchased Maxeon's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

38.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Maxeon, their control over, and/or receipt and/or modification of Maxeon's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Maxeon, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

39.    The market for Maxeon's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Maxeon's securities traded at artificially inflated prices during the Class Period.  On December 26, 2023, the Company's share price closed at a Class Period high of $7.55 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's

securities relying upon the integrity of the market price of Maxeon's securities and market information relating to Maxeon, and have been damaged thereby.

40.     During the Class Period, the artificial inflation of Maxeon's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Maxeon's business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of Maxeon and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

41.     At all relevant times, the market for Maxeon's securities was an efficient market for the following reasons, among others:

(a)     Maxeon shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Maxeon filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Maxeon regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Maxeon was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

42.     As a result of the foregoing, the market for Maxeon's securities promptly digested current information regarding Maxeon from all publicly available sources and reflected such information in Maxeon's share price. Under these circumstances, all purchasers of Maxeon's securities during the Class Period suffered similar injury through their purchase of Maxeon's securities at artificially inflated prices and a presumption of reliance applies.

43.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

44.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading,

and/or the forward-looking statement was authorized or approved by an executive officer of Maxeon who knew that the statement was false when made.

**FIRST CLAIM**

**Violation of Section 10(b) of The Exchange Act and**

**Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

45.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

46.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Maxeon's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

47.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Maxeon's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Maxeon's financial well-being and prospects, as specified herein.

49.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Maxeon's value and performance

and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Maxeon and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

50.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

51.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Maxeon's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain

such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

52.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Maxeon's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Maxeon's securities during the Class Period at artificially high prices and were damaged thereby.

53.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Maxeon was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Maxeon securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

54.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

56.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

57.     Individual Defendants acted as controlling persons of Maxeon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

59.     As set forth above, Maxeon and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

1    (c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

2  this action, including counsel fees and expert fees; and

3    (d)    Such other and further relief as the Court may deem just and proper.

4                                **JURY TRIAL DEMANDED**

5    Plaintiff hereby demands a trial by jury.

6  DATED:  June 27, 2024                **GLANCY PRONGAY & MURRAY LLP**

7                                By:    */s Pavithra Rajesh*
                                  Robert V. Prongay

8                                Charles Linehan
                                  Pavithra Rajesh

9                                1925 Century Park East, Suite 2100
                                  Los Angeles, California 90067

10                               Telephone: (310) 201-9150
                                  Facsimile: (310) 201-9160

11                               Email:  info@glancylaw.com

12                               **THE LAW OFFICES OF FRANK R. CRUZ**

13                               Frank R. Cruz
                                  2121 Avenue of the Stars, Suite 800

14                               Century City, CA 90067
                                  Telephone: (310) 914-5007

15

16                               *Counsel for Plaintiff Trevor Wayne*

17

18

19

20

21

22

23

24

25

26

27

28

## SWORN CERTIFICATION OF PLAINTIFF

### MAXEON SOLAR TECHNOLOGIES, LTD. SECURITIES LITIGATION

I, Trevor Wayne, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Maxeon Solar Technologies, Ltd. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Maxeon Solar Technologies, Ltd. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.


5/30/2024
_____                    _____
        Date                                          Trevor Wayne

**Trevor Wayne's Transactions in Maxeon Solar Technologies, Ltd. (MAXN)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 12/7/2023 | Bought | 46 | $4.4285 |
| 12/26/2023 | Sold | -40 | $7.5534 |
| 2/6/2024 | Bought | 130 | $4.2600 |
| 2/26/2024 | Bought | 130 | $4.0800 |
| 3/8/2024 | Bought | 120 | $3.7300 |
| 3/12/2024 | Bought | 125 | $3.2700 |
| 4/19/2024 | Bought | 110 | $1.8801 |
| 5/14/2024 | Sold | -22 | $3.5900 |