POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant*
*Preston A. Ross and Proposed Lead*
*Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| TREVOR WAYNE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MAXEON SOLAR TECHNOLOGIES, LTD., WILLIAM MULLIGAN, and KAI STROHBECKE,<br><br>Defendants. | Case No.: 3:24-cv-03869-EMC<br><br>MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF PRESTON A. ROSS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS<br><br>CLASS ACTION<br><br>Date:  October 10, 2024<br>Time:  1:30 p.m.<br>Judge:  Hon. Edward M. Chen<br>Courtroom:  5 – 17th Floor |

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     ARGUMENT .............................................................................................................5

        A.      ROSS SHOULD BE APPOINTED LEAD PLAINTIFF........................................5

                1.      Ross has the largest financial interest of any eligible competing
                        movant.................................................................................................5

                2.      Ross satisfies the requirements of Rule 23 .............................................6

        B.      ROSS'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED ..........8

        C.      THE COMPETING MOTIONS SHOULD BE DENIED ...................................8

                1.      Ross has the largest financial interest among the eligible competing
                        movants...............................................................................................8

                2.      Menon is inadequate within the meaning of Rule 23 and thus ineligible
                        for appointment as Lead Plaintiff ..........................................................9

                        a.      Menon's filing of separate, conflicting motions evidences his
                                inadequacy ................................................................................9

                        b.      Menon's submissions are riddled with errors and
                                inconsistencies .........................................................................12

III.    CONCLUSION .........................................................................................................16

PROOF OF SERVICE..........................................................................................................18

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF PRESTON A. ROSS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:24-cv-03869-EMC

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Camp v. Qualcomm Inc.*,
No. 18-CV-1208-AJB-BLM, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019) .......................... 13

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-2268 et al., 2018 WL 3093965 (S.D.N.Y. June 21, 2018)................................ 5, 6

*In re Baan Co. Sec. Litig.*,
186 F.R.D. 214 (D.D.C. 1999)............................................................................................ 10

*In re Boeing Co. Aircraft Sec. Litig.*,
No. 19-CV-02394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020) ...................................... 13, 16

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ............................................................................................ 5, 6

*In re Vicuron Pharms., Inc. Sec. Litig.*,
225 F.R.D. 421 (E.D. Pa. 2005)............................................................................................ 6

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
No. CIV A 07-177 FLW, 2007 WL 2683636 (D.N.J. Sept. 7, 2007).................................. 13

*Karinski v. Stamps.com, Inc.*,
No. CV 19-1828-R, 2019 WL 8013753 (C.D. Cal. June 5, 2019) ..................................... 2, 7

*Karp v. Diebold Nixdorf, Inc.*,
No. 19 CIV. 6180(LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) .............. 4, 12, 14, 16

*Knox v. Yingli Green Energy Holding Co.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) .......................................................................... 1, 5

*Lako v. Loandepot, Inc.*,
No. 821CV01449JLSJDE, 2022 WL 1314463 (C.D. Cal. May 2, 2022)......................... 4, 12

*McDermid v. Inovio Pharms., Inc.*,
467 F. Supp. 3d 270 (E.D. Pa. 2020) ................................................................................... 9

*Nayani v. LifeStance Health Grp., Inc.*,
641 F. Supp. 3d 57 (S.D.N.Y. 2022)................................................................................... 12

*Nicolow v. Hewlett Packard Co.*,
No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) .................................... 1, 5

*Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at \*4
        (C.D. Cal. Apr. 26, 2001) ............................................................................................................ 8

*Pardi v. Tricida, Inc.*,
        No. 21-CV-00076-LHK, 2021 WL 1381271 (N.D. Cal. Apr. 2, 2021) ............................. 3, 9

*Rodriguez v. DraftKings Inc.*,
        No. 21 CIV. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) .................... 4, 13, 15

*Schaffer v. Horizon Pharma Plc*,
        No. 16-CV-1763 (JMF), 2016 WL 3566238 (S.D.N.Y. June 27, 2016) ............................... 10

*Singer v. Nicor, Inc.*,
        No. 02 C 5168, 2002 WL 31356419 (N.D. Ill. Oct. 17, 2002) .............................................. 9

*Takara Trust v. Molex, Inc.*,
        229 F.R.D. 577 (N.D. Ill. 2005) ............................................................................................. 6

*Tomaszewski v. Trevena, Inc.*,
        383 F. Supp. 3d 409 (E.D. Pa. 2019) ................................................................................... 13

*Tsirekidze v. Syntax-Brillian Corp.*,
        No. CV-07-2204-PHX-FJM, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ....................... 3, 9, 12

*Vataj v. Johnson*,
        No. 19-CV-06996-HSG, 2020 WL 532981 (N.D. Cal. Feb. 3, 2020) ................................. 2, 6

*Villare v. ABIOMED, Inc.*,
        No. 19 CIV. 7319 (ER), 2020 WL 3497285 (S.D.N.Y. June 29, 2020) ............................... 10

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................................*passim*

Private Securities Litigation Reform Act of 1995 ..............................................................*passim*

Securities Exchange Act of 1934 ............................................................................................... 6

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................................*passim*

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF PRESTON A. ROSS
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO
COMPETING MOTIONS - 3:24-cv-03869-EMC

Movant Ross[1] respectfully submits this Memorandum of Points and Authorities in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 26); and in opposition to the competing motions of: (i) Anthony Kulesza ("Kulesza") (Dkt. No. 16); (ii) Jeyakumar VS Menon ("Menon") (Dkt. No. 20)[2]; and (iii) Mark Regan ("Regan") (Dkt. No. 30).

## I.    PRELIMINARY STATEMENT

This Action is a putative class action securities fraud lawsuit on behalf of investors in Maxeon securities. As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the Action; *and* that satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is Ross, who incurred a loss of approximately $37,460 in connection with his Class Period purchases of Maxeon securities. *See* Dkt. No. 27 at *5. Although the PSLRA does not define "financial interest," courts in the Ninth Circuit, including this District, recognize that the amount of financial loss is the most significant factor to be considered. *See Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (emphasizing loss in assessing financial interest); *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (same). The table below sets forth the respective financial interests of the competing movants:

---

[1] All capitalized terms herein are defined in Ross's moving brief, unless otherwise indicated. *See* Dkt. No. 26.

[2] As discussed herein, Menon filed two competing motions through different counsel. *See* Dkt. Nos. 12, 20. On August 27, 2024, Menon withdrew his first-filed motion. *See* Dkt. No. 34.

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF PRESTON A. ROSS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:24-cv-03869-EMC

| Movant | Loss |
|--------|------|
| Ross | $37,460 |
| Regan | $32,358 |
| Kulesza | $18,015 |
| ~~Menon~~ | ~~$124,434 *or* $124,129~~[3] |

As the above table reflects, Ross's loss is the largest of any eligible competing movant. Although one competing movant, Menon, claims a larger loss than Ross, Menon is ineligible for appointment as lead plaintiff because he is inadequate within the meaning of Rule 23, as discussed in detail below.  Accordingly, Ross possesses the largest financial interest in this litigation of any eligible movant.

In addition to his significant financial interest, Ross also satisfies the typicality and adequacy requirements of Rule 23.  Ross's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the claims of the other Class members. *See Vataj v. Johnson*, No. 19-CV-06996-HSG, 2020 WL 532981, at *3 (N.D. Cal. Feb. 3, 2020).  Ross is aware of no conflict between his interests and those of the Class, his losses incurred as a result of the Defendants' alleged fraud gives him a sufficient stake in the outcome of this Action to ensure vigorous advocacy, and, in Pomerantz, Ross has retained qualified and experienced counsel. *See Karinski v. Stamps.com, Inc.*, No. CV 19-1828-R, 2019 WL 8013753, at *1 (C.D. Cal. June 5, 2019).  Further demonstrating his adequacy, Ross has submitted a detailed Declaration providing the Court with biographical information about himself and attesting to, *inter alia*, his understanding of the significance of his motion and the responsibilities of a Lead

---

[3] Menon claimed one loss figure in his first motion and a different loss figure in his later-filed duplicative motion, both of which are presented here. *Compare* Dkt. No. 13-3 ("Rosen Loss Chart") at *2 (claiming total losses of $124,129.41), *with* Dkt. No. 21-3 ("Faruqi Loss Chart") at *2 (claiming total losses of $124,434.32).

2

Plaintiff appointed pursuant to the PSLRA, as well as his readiness to shoulder these responsibilities on behalf of the Class. *See* Dkt. No. 27 at *11-14.

In stark contrast, Menon, the only competing movant claiming a larger loss than Ross, is inadequate and thus ineligible for appointment as Lead Plaintiff, irrespective of his financial interest in this litigation.

*First*, Menon's submission of two separate, conflicting motions for lead plaintiff and lead counsel appointment, filed by two different law firms each seeking its own appointment as lead counsel to the exclusion of the other, shows that Menon either did not understand the significance of his motion or else failed to properly supervise counsel to prevent the duplicative submission of competing motions on his behalf. *See* Dkt. Nos. 12, 20. Courts routinely deny lead plaintiff motions under these circumstances because "[s]uch a blatant gaffe does not bode well for the adequacy of [the movant] to lead th[e] litigation." *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (finding group of lead plaintiff movants inadequate where one member of the group filed a second, competing motion); *see also Pardi v. Tricida, Inc.*, No. 21-CV-00076-LHK, 2021 WL 1381271, at *2 (N.D. Cal. Apr. 2, 2021) (finding a lead plaintiff movant "does not meet the adequacy requirement of Federal Rule of Civil Procedure 23(a)" where one member of that movant group "filed a competing individual motion with different counsel"). Menon's submission of two conflicting motions proposing different law firms as lead counsel clearly evidences his lack of diligence, experience, and oversight necessary to direct this complex securities class action and, standing alone, is sufficient grounds to deny his motion.

*Second*, Menon's submissions to the Court in support of his motions for appointment as lead plaintiff are riddled with inconsistencies and errors. Courts routinely treat such

3

inconsistencies and errors as fatal to an applicant's lead plaintiff motion, finding "[t]he slovenliness of [a movant]'s submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative class representative." *Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *6, *9 (S.D.N.Y. Nov. 12, 2021) (disqualifying movant because, *inter alia*, "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place"); *see also Lako v. Loandepot, Inc.*, No. 821CV01449JLSJDE, 2022 WL 1314463, at *5 (C.D. Cal. May 2, 2022) (expressing "serious concerns about the typicality of [a group]'s members and its ability to protect the interests of absent class members fairly and adequately" because it "failed to select and apply a rational and consistently applied methodology for calculating its losses").  Here, in his two competing motion submissions, Menon has provided conflicting information to the Court regarding the prices at which he paid for and sold his Maxeon shares, the number of accounts he used to complete these transactions, his total losses suffered from these transactions, and even his own experience as an investor.  Menon's errors are "disquiet[ing]" because they "str[i]k[e] at the core of the PSLRA's lead plaintiff inquiry", serving as yet another indicator of his inadequacy and an independent reason to deny his motion.  *Karp v. Diebold Nixdorf, Inc.*, No. 19 CIV. 6180(LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration*, No. 19 CIV. 6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019).

    For the reasons set forth herein, Ross respectfully submits that his motion should be granted in its entirety and that the competing motions should be denied.

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF PRESTON A. ROSS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:24-cv-03869-EMC

## II.    ARGUMENT

### A.    ROSS SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA creates a strong presumption that the Lead Plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant with the largest financial interest need only make a *prima facie* showing at this stage that it satisfies the typicality and adequacy requirements of Rule 23. *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002). Once this presumption is triggered, it may be rebutted only upon "proof" that the presumptive Lead Plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, the most adequate representative for the Class is Ross.

### 1.    Ross has the largest financial interest of any eligible competing movant

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." *Id.* § 78u-4(a)(3)(B)(iii). The PSLRA does not prescribe a particular method of calculating the size of a movant's financial interest in the relief sought by the class. *See id.* § 78u-4(a)(3)(B)(iii)(I)(bb); *Cavanaugh*, 306 F.3d at 730 n.4 ("[T]he court may select accounting methods that are both rational and consistently applied."). Courts in the Ninth Circuit, this District, and around the country recognize that the amount of financial loss is the most significant factor to be considered. *See Nicolow*, 2013 WL 792642, at *4 ("The weight of authority puts the most emphasis on the competing movants' estimated losses[.]"); *Knox*, 136 F. Supp. 3d at 1163 (finding "'courts consider the fourth [*Lax*] factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss'" (quoting *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007))); *Chahal*

5

*v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*, 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018) (equating financial interest with economic loss); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 421, 511 (E.D. Pa. 2005) (finding the amount of the financial loss is "the most significant" factor); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("[M]ost courts simply determine which potential lead plaintiff has suffered the greatest total losses.").

Under the foregoing analysis, no competing movant eligible for appointment as Lead Plaintiff in this Action has a larger financial interest than Ross. As the chart at p. 2 reflects, Ross's $37,460 loss is more than $5,000 larger than that claimed by Regan ($32,358), the eligible movant claiming the second-largest loss after Ross. Thus, Ross clearly possesses the largest financial interest in this litigation within the meaning of the PSLRA of any eligible movant seeking appointment as Lead Plaintiff.

Although one competing movant, Menon, has alleged a larger loss than Ross, Menon is inadequate within the meaning of Rule 23 and thus disqualified from consideration, as discussed in detail *infra* at Section II.C.2.

### 2.    Ross satisfies the requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Ross has also made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23. *See Cavanaugh*, 306 F.3d at 730-31.

First, Ross satisfies the typicality requirement of Rule 23(a)(3) because his claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Vataj*, 2020 WL 532981, at *3. Ross alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Maxeon, or by omitting to state

material facts necessary to make the statements they did make not misleading.  Moreover, Ross, like other Class members, purchased Maxeon securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Maxeon's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).  *Id.*

Second, Ross satisfies the adequacy requirement of Rule 23(a)(4) because his interests are aligned with those of the Class, he is incentivized to prosecute this litigation vigorously on behalf of the Class, and he has retained counsel for the Class that is qualified and competent.  *See Karinski*, 2019 WL 8013753, at *1.  Here, there is no evidence of antagonism or conflict between Ross's interests and those of the Class, Ross's $37,460 loss gives him a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, he has submitted a sworn Certification declaring his commitment to protect the interests of the Class (*see* Dkt. No. 27 at *7-9), and, in Pomerantz, he has retained counsel that is highly experienced in vigorously and efficiently prosecuting securities class actions like this Action (*see id.* at *16-26).  Ross has further demonstrated his adequacy by submitting with his motion papers a detailed Declaration that provides information about himself, including his age, city and state of residence, investment experience, and professional and educational background, and that attests to, *inter alia*, his understanding of the significance of his motion and the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, as well as his readiness to shoulder these responsibilities on behalf of the Class.  *See id.* at *11-14.

*****

7

Because Ross has the largest financial interest of any of the eligible competing lead plaintiff movants in the relief sought by the Class and otherwise satisfies the requirements of Rule 23, he is the presumptive "most adequate" plaintiff of the Class within the meaning of the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

To overcome the strong presumption entitling Ross to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is inadequate.  *Id.* § 78u-4(a)(3)(B)(iii)(II) (emphasis added).  No such proof exists in this case and any speculative arguments to the contrary should be flatly rejected.

### B.    ROSS'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with a lead plaintiff's selection only when necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *Osher*, 2001 WL 861694, at *4.

Here, Ross has selected Pomerantz as Lead Counsel for the Class.  As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.  *See* Dkt. No. 27 at *16-26.  Thus, the Court may be assured that by approving Ross's selection of counsel, the members of the Class will receive the best legal representation available.

### C.    THE COMPETING MOTIONS SHOULD BE DENIED

#### 1.    Ross has the largest financial interest among the eligible competing movants

Given that Ross has the largest financial interest in the relief sought by the Class of any eligible competing lead plaintiff movant, it is self-evident that no other eligible movant can satisfy

8

the PSLRA's first criterion for appointment as Lead Plaintiff. This fact alone mandates denial of the competing motions filed by Kulesza (Dkt. No. 16) and Regan (Dkt. No. 30).

**2.      Menon is inadequate within the meaning of Rule 23 and thus ineligible for appointment as Lead Plaintiff**

Menon, the only competing movant claiming a larger loss than Ross, is ineligible for appointment as Lead Plaintiff because he is inadequate within the meaning of Rule 23, as discussed in detail below.

**a.      Menon's filing of separate, conflicting motions evidences his inadequacy**

Menon's filing of separate, conflicting lead plaintiff motions (*see* Dkt. Nos. 12, 20) evidences his inadequacy to serve as a fiduciary on behalf of the Class of potentially hundreds or thousands of investors in this Action because it calls into question his understanding regarding the significance of his motions and his ability to adequately oversee and direct counsel. Indeed, courts routinely disqualify lead plaintiff movants under precisely these circumstances because "[s]uch a blatant gaffe does not bode well for the adequacy of [the movant] to lead th[e] litigation." *Tsirekidze*, 2008 WL 942273, at *4 (finding group of lead plaintiff movants inadequate where one member of the group filed a second, competing motion); *see also Pardi*, 2021 WL 1381271, at *2 (finding a lead plaintiff movant "does not meet the adequacy requirement of Federal Rule of Civil Procedure 23(a)" where one member of that movant group "filed a competing individual motion with different counsel"); *Singer v. Nicor, Inc.*, No. 02 C 5168, 2002 WL 31356419, at *2 (N.D. Ill. Oct. 17, 2002) ("The court views this 'mis-communication' as a more serious problem, however. [Movant]'s unknowing retention of two different law firms and filing of two motions for appointment as lead plaintiff reveal conflicts within [movant] that make it unsuitable to make decisions on behalf of the class."); *McDermid v.*

9

*Inovio Pharms., Inc.*, 467 F. Supp. 3d 270, 279-80 (E.D. Pa. 2020) (refusing to appoint lead plaintiff movant group where one of its members individually filed a dueling lead plaintiff motion with another law firm and noting that "the Inovio Group seems to concede that [movant]'s conduct renders him inadequate"). In so doing, courts recognize that they "fulfill a gatekeeping function in class action litigation." *Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *1 (S.D.N.Y. June 27, 2016) (internal quotation marks omitted); *see also In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 215 (D.D.C. 1999) ("Congress envisioned that courts still would play an independent, gatekeeping role to implement the PSLRA."). This is crucial because the Lead Plaintiff, "'once designated by the Court, is a fiduciary for the absent class members'" that "sues, not for himself alone, but also to advance and protect the interests of all who are similarly situated, whose interests in the 'redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity.'" *Villare v. ABIOMED, Inc.*, No. 19 CIV. 7319 (ER), 2020 WL 3497285, at *6 (S.D.N.Y. June 29, 2020) (quoting *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998), and *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949)).

Here, Menon filed two separate lead plaintiff motions with two different law firms (*see* Dkt. Nos. 12, 20)—thereby effectively filing competing motions against *himself*—while seeking conflicting relief regarding his choice of lead counsel. In one motion, Menon sought appointment as lead plaintiff and "approv[al of his] selection of The Rosen Law Firm, P.A. ('Rosen Law') as Lead Counsel." Dkt. No. 12 at 1. Yet in another motion filed only shortly thereafter on the same day, Menon again sought appointment as lead plaintiff, but instead sought "approv[al] . . . of Faruqi & Faruqi, LLP (the 'Faruqi Firm') as Lead Counsel for the Class[.]" Dkt. No. 20 at 1. On August 24, 2024, Menon executed a sworn Certification, "declar[ing] under penalty of perjury"

that he "ha[s] selected and retained Faruqi & Faruqi, LLP as counsel for purposes of prosecuting this action and claims against the defendants." Dkt. No. 21-2 ("Faruqi Certification") at *2. On August 24, 2024, Menon also signed a sworn Declaration, "declar[ing] under penalty of perjury" that, "[a]s part of my due diligence process, prior to our [*sic*] selection of the Faruqi Firm, I assessed the firm's qualifications and communicated with James M. Wilson, Jr., a partner at the Faruqi Firm about the case and duties and role of a lead plaintiff." Dkt. No. 21-4 at 2. However, *just two days later*, Menon appears to have changed tack and signed on with different counsel, "declar[ing] under penalty of perjury" in another sworn Certification, dated August 26, 2024, that he "authorize[s] the [Rosen Law] firm to file a lead plaintiff motion on [his] behalf" instead. Dkt. No. 13-2 ("Rosen Certification") at *2. Menon then apparently *changed tack yet again* and withdrew the motion he purportedly "authorize[d] the [Rosen Law] firm to file . . . on [his] behalf" *the very next day*, on August 27, 2024, with no explanation. *See* Dkt. No. 34.

There are various possible explanations for Menon's muddled and duplicative submissions, none of which portends well for the Class if Menon were to be appointed Lead Plaintiff. If Menon knew that two different law firms planned to file duplicative motions on his behalf, then the Court should have no assurance that Menon understands the significance of the instant motion practice, including the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA. Conversely, if Menon was unaware that two different firms planned to file competing motions on his behalf, then he plainly did not accurately communicate to his counsel his intentions with respect to this litigation—an equally troubling explanation, given that Menon will be required to closely supervise his chosen counsel if appointed Lead Plaintiff. Whatever the case may be, Menon's submission of two conflicting motions proposing different law firms as lead counsel clearly shows that he lacks the requisite diligence, experience, and oversight necessary

11

to direct this complex securities class action. *See Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 3d 57, 65 (S.D.N.Y. 2022) ("[W]hen Congress enacted the PSLRA, its concern was to 'curtail the vice of "lawyer-driven" litigation, i.e., lawsuits that, because of the huge potential fees available in contingent securities fraud actions, were initiated and controlled by the lawyers and appeared to be litigated more for their benefit than for the benefit of the shareholders ostensibly represented.'" (quoting *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Serv. and Securitization, LLC*, 616 F. Supp. 2d 461, 463 (S.D.N.Y. 2009))).  The fact that, with his very first submission to the Court, Menon has already raised substantial questions as to whether he is steering counsel or whether counsel is steering him "does not bode well for [his] adequacy . . . to lead this litigation capably and adequately" and, standing alone, is sufficient grounds to deny his motion for lead appointment. *Tsirekidze*, 2008 WL 942273, at *4.

### b.    Menon's submissions are riddled with errors and inconsistencies

Menon has further evidenced his inadequacy by providing conflicting information to the Court regarding: (i) the prices at which he bought and sold certain of his Maxeon shares during the Class Period; (ii) the number of accounts with which he transacted in Maxeon securities during the Class Period; (iii) his total losses suffered as a result of the fraud alleged in this Action; and (iv) his  experience as an investor.  Courts are correctly "disquieted by [such] errors" which "str[i]k[e] at the core of the PSLRA's lead plaintiff inquiry: determining which movant holds the largest financial stake in the litigation" and deny lead plaintiff motions on such grounds, finding the movant in question inadequate.  *Karp*, 2019 WL 5587148, at *6; *see also Lako*, 2022 WL 1314463, at *5 (expressing "serious concerns about the typicality of [a group]'s members and its ability to protect the interests of absent class members fairly and adequately" because it "failed to select and apply a rational and consistently applied methodology for calculating its losses");

*Rodriguez*, 2021 WL 5282006, at *6, *9 (finding "[t]he slovenliness of [movant]'s submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative class representative" and disqualifying said movant because, "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-CV-02394, 2020 WL 476658, at *5-6 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing).  This is especially true where, as here, the errors and inconsistencies primarily stem from a lead plaintiff movant's sworn Certification, providing an accurate copy of which is one of the most basic and fundamental of the PSLRA's requirements for seeking appointment as lead plaintiff in federal securities class actions.[4]  *See Camp v. Qualcomm Inc.*, No. 18-CV-1208-AJB-BLM, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (errors in sworn certification, transactions records, and loss calculations prohibit a movant from satisfying the adequacy and typicality requirements of Rule 23); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (disqualifying movant with the largest loss when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class"); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. CIV A 07-177 FLW, 2007 WL 2683636, at *7-8 n.8 (D.N.J. Sept. 7, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation").

---

[4] Pursuant to the PSLRA, lead plaintiff movants must provide a "sworn certification" that, i*nter alia*, "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint[.]"  15 U.S.C. § 78u-4(a)(2)(A)(iv).

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF PRESTON A. ROSS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:24-cv-03869-EMC

Here, the errors and inconsistencies in Menon's sworn Certifications and other submissions render him inadequate—regardless of however minor or inconsequential Menon may attempt to characterize them—because they "str[i]k[e] at the core of the PSLRA's lead plaintiff inquiry: determining which movant holds the largest financial stake in the litigation." *Karp*, 2019 WL 5587148, at *6. Despite the PSLRA's clear requirement that Menon's sworn certifications should "set[] forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint" (15 U.S.C. § 78u-4(a)(2)(A)(iv)), Menon's sworn Rosen Certification attests "under penalty of perjury" that he sold 4,800 Maxeon shares at $5.79 per share (*see* Dkt. No. 13-2 at *2-3), whereas his sworn Faruqi Certification attests "under penalty of perjury" that he sold these same 4,800 shares at $5.78 per share (*see* Dkt. No. 21-2 at *2-3). Likewise, Menon's sworn Rosen Certification attests "under penalty of perjury" that he purchased 100 Maxeon shares at $3.99 per share (*see* Dkt. No. 13-2 at *2-3), whereas his sworn Faruqi Certification attests "under penalty of perjury" that he purchased these same 100 shares at $3.995 per share (*see* Dkt. No. 21-2 at *2-3). Regardless of which sworn Certification, if either, accurately set forth these transactions, at least one of them is unquestionably false. Given these various inconsistencies, it is hardly surprising that Menon's different motions also provided different loss figures to the Court to assess his candidacy for lead plaintiff appointment. *Compare* Dkt. No. 13-3 at *2 (claiming total losses of $124,129.41), *with* Dkt. No. 21-3 at *2 (claiming total losses of $124,434.32).

Further muddying the accuracy of Menon's Class Period transactions in Maxeon securities, Menon's Rosen Certification and Loss Chart only provide settlement dates for his various transactions in Maxeon securities (*see* Dkt. Nos. 13-2 at *3, 13-3 at *2), whereas his Faruqi Certification and Loss Chart provide different, actual trade dates for these same

transactions (*see* Dkt. Nos. 21-2 at *3, 21-3 at *2). Moreover, Menon's Rosen Certification and Loss Chart indicate that he transacted in Maxeon securities during the Class Period in only a single account (*see* Dkt. Nos. 13-2 at *3, 13-3 at *2 (compiling all transactions together)), whereas Menon's Faruqi Certification and Loss Chart both specify that Menon transacted in Maxeon securities through two accounts during the Class Period (*see* Dkt. Nos. 21-2 at *3, 21-3 at *2 (separating transactions over two accounts)). Menon's two motions are even inconsistent with respect to his experience as an investor, with one motion claiming that he has "approximately 16 years of investing experience" (Dkt. No. 12 at 7), while the other claims, in a sworn Declaration signed by Menon, that he has approximately 18 years investing experience (*see* Dkt. No. 21-4 ¶ 5 ("I have been investing in the stock market since 2006.")). As with his inconsistent Certifications, at least one of these damages analyses must be incorrect. Presumably Menon knows whether he invested in Maxeon securities via one account or via two accounts, and whether he has been investing in the securities markets for approximately 16 years or for 18 years. The presence of such errors in his motion papers—errors which ought to have been immediately recognizable as such to Menon—can only indicate that Menon did not thoroughly review one or both sets of motion papers before they were filed.

In sum, "[t]he slovenliness of [Menon]'s submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative class representative" and, "[h]ad [Menon] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place." *Rodriguez*, 2021 WL 5282006, at *6, *9. "One of two things happened here: either [Menon] reviewed [his] loss charts [and sworn Certifications and other submissions] and neglected to correct them despite errors that should have been obvious to [him] based on [his]

own trading, or [he] didn't review th[ose submissions] at all." *Boeing*, 2020 WL 476658, at \*5. Menon's curious silence as to these issues, as well as his failure to provide the Court or competing movants with an explanation for these errors and inconsistencies for up to ***two weeks*** after the filing of his duplicative motions, further evidences a lack of diligence and candor that calls his fitness to serve as a fiduciary on behalf of a class of potentially hundreds or thousands of investors into serious question. *See Karp*, 2019 WL 5587148, at \*6 ("[D]espite the relative importance of this error, the Court notes that it took the Aroras nearly two weeks to supply corrected figures. Taken together, these issues indicate to the Court a 'certain carelessness about detail that undermines the adequacy' of the Aroras as a lead plaintiff in a complex securities class action." (quoting *Bhojwani v. Pistiolis*, No. 06 Civ. 13761(CM)(KNF), 2007 WL 9228588, at \*3 (S.D.N.Y. July 31, 2007))).

## III.    CONCLUSION

For the foregoing reasons, Ross respectfully requests that the Court issue an Order: (1) appointing Ross as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz as Lead Counsel for the Class.

Dated: September 9, 2024                                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)

16

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Preston A. Ross and Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Lead Plaintiff Movant Preston A. Ross*

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF PRESTON A. ROSS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:24-cv-03869-EMC

## PROOF OF SERVICE

I hereby certify that on September 9, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF PRESTON A. ROSS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:24-cv-03869-EMC