John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-233-0508
jjasnoch@scott-scott.com

*Attorneys for Lead Plaintiff Movant*
*Mark Regan*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| TREVOR WAYNE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> MAXEON SOLAR TECHNOLOGIES, LTD., WILLIAM MULLIGAN, and KAI STROHBECKE, <br><br> Defendants. | Case No. 3:24-cv-03869-EMC <br><br> **MARK REGAN'S OPPOSITION TO COMPETING LEAD PLAINTIFF AND LEAD COUNSEL MOTIONS; AND, IN THE ALTERNATIVE, REQUEST FOR LIMITED DISCOVERY** <br><br> Hon. Edward M. Chen <br><br> DATE: October 10, 2024 <br> TIME:  1:30 P.M. <br> COURTROOM:  5 |

## I.    SUMMARY OF ARGUMENT

In this securities class-action governed by the Private Securities Litigation Reform Act (the "PSLRA"), there are three competing motions for appointment as lead plaintiff and approval of lead counsel before the Court.[1]    Under the PSLRA, the Court should appoint the movant with the largest financial interest as long as that movant is also adequate and typical within the meaning of Rule 23.  *See* 15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(cc).   Pursuant to this test, Mark Regan (hereinafter "Regan") (ECF No. 30) should be appointed to lead this case because he has the largest financial interest of any movant that is also adequate.  Regan has incurred a significant loss as a result of the wrongdoing alleged herein, has no conflicts with the putative class, and has retained experienced counsel to assist him in prosecuting this matter.

By contrast, none of the three competing movants has a more significant loss than Regan or satisfies Rule 23's adequacy and typicality requirements.   One movant, Jeyakumar Menon ("Menon"), is clearly not adequate because he filed two conflicting lead plaintiff motions with two different law firms. Menon has apparently retained two law firms to file dueling lead plaintiff motions on his behalf, supported by contradictory sworn certifications signed by Menon.  When his counsel realized the problem after the lead plaintiff deadline, Menon withdrew one of his motions without providing any explanation as to what had occurred or why he had authorized the separate lead plaintiff motions.  This conduct by Menon raises serious issues about his adequacy and ability to monitor counsel that warrant denial of his motion.

Another movant, Preston Ross, also has serious adequacy issues.  Specifically, Ross apparently failed to disclose to the Court his litany of arrests, including for serious misconduct.  This lack of candor raises acute concerns about Ross's candor and adequacy to serve as lead plaintiff that warrant denial of his motion.

---

[1]    Unless otherwise defined herein, all capitalized terms shall maintain the same meaning as those set forth in Mark Regan's Motion.  ECF No. 30.  Five lead plaintiff motions were originally filed on August 26, 2024.  ECF No. 12 (filed by Jeyakumar Menon ("Menon")); ECF No. 16 (filed by Anthony Kulesza ("Kulesza")); ECF No. 20 (also filed by Menon); ECF No. 26 (filed by Preston A. Ross ("Ross"); and ECF No. 30 (filed by Regan)).  Since then, Menon has withdrawn his motion made in ECF No. 12. ECF No. 34.

1

Finally, movant Anthony Kulesza's ("Kulesza") motion for appointment as lead plaintiff and of lead counsel should be denied because his loss is substantially smaller than Regan's loss.

Accordingly, the Court should grant Regan's motion for appointment as lead plaintiff and of lead counsel and deny all competing motions.

## II. BACKGROUND

### A. Menon's Dueling Lead Plaintiff Motions

Menon filed two conflicting motions to be appointed lead plaintiff of the action on August 26, 2024. ECF Nos. 12 & 20.

Menon first filed a motion seeking appointment of himself as lead plaintiff and appointment of Rosen as lead counsel. ECF No. 12. This first motion was supported only by a PSLRA certification signed on August 26, 2024. ECF No. 13-2. Approximately one hour after his first motion, Menon filed a second motion, again seeking appointment of himself as lead plaintiff, but this time requested that a different firm, Faruqi, be appointed lead counsel. ECF No. 20. This motion was supported by a PSLRA certification signed on August 24, 2024, two days before the certification submitted in connection with Menon's first motion. ECF No. 21-3. In support of this second motion, Menon also submitted a sworn declaration also signed on August 24, 2024. ECF No. 21-5.

The claimed losses of the competing movants is set forth below:

| Movant | Claimed Loss |
|---|---|
| Menon | $124,434.32 |
| Menon 2 | *Withdrawn* |
| Ross | $37,460 |
| Regan | $32,358.90 |
| Kulesza | $18,015.22 |

*Compare* ECF Nos. 21-4, 34, 27, 31-4, 17-4.

**B.    Menon Drops One of His Two Motions**

Just one day after he filed the two lead plaintiff motions, on August 27, 2024, Menon withdrew the first motion.  ECF No. 34.  Menon did not explain the circumstances of the duplicative filings, nor explain why he was proceeding with Faruqi rather than Rosen as lead counsel.  Rather, the withdrawal simply states that "Movant Jeyakumar Menon ("Movant") hereby withdraws the Motion for Appointment as Lead Plaintiff and Approval of Counsel." *Id.*

**III.   ARGUMENT**

The PSLRA leadership analysis is "neither overly complex nor ambiguous."[2]  *In re Mersho*, 6 F. 4th 891, 899 (9th Cir. 2021).   First, the court identifies the movant with the largest financial interest and determines whether that movant has made a *prima facie* showing of adequacy and typicality.  Second, the court considers whether any competing movant has rebutted the *prima facie* showing of adequacy and typicality.  *Id.*  If the movant with the largest financial loss fails to demonstrate adequacy at either of these stages, the court moves on to consider the movant with the next largest financial loss.  *See Id.*

**A.    Menon is Not Adequate Because He Has Demonstrated an Inability to Manage Counsel and Has Submitted Inconsistent Sworn Statements to this Court**

Menon's leadership motion fails because Menon has filed dueling, contradictory leadership motions and sworn documents which evidence an inability to manage counsel and direct this litigation in the best interests of the class.  Accordingly, Menon has failed to make a *prima facie* showing of adequacy. Alternatively, Menon's filings rebut the *prima facie* showing of adequacy by demonstrating that he is not equipped to oversee this matter.

To assess adequacy, the court must evaluate whether a movant will "adequately represent [the] class by answering two questions: (1) do the movant and its counsel have any conflicts of interest with other class members and (2) will the movant and its counsel prosecute the action vigorously on behalf of the class?"  *Mersho*, 6 F.4th at 899-900.  This analysis should be searching and careful because the class will be entirely dependent upon the lead plaintiff's "diligence, wisdom and integrity" to reach a resolution. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949).  "Under the PSLRA, the district court

---

[2] Unless otherwise stated, all emphasis is added and citations are omitted.

3

must essentially do this analysis twice. At step two, it will consider whether the movant has made a *prima facie* showing of adequacy. At step three, it will consider whether competing movants have offered proof that the presumptive lead plaintiff will not adequately represent the class. The district court has latitude as to what information it will consider in determining typicality and adequacy." *Mersho*, 6 F.4th at 899-900.

Applying these standards, several courts have found that the filing of two dueling lead plaintiff motions is disqualifying.   For example, in *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008), the District of Arizona considered a motion from a group whose "principal member" was initially included as part of a different lead plaintiff group.  *Id.*, at *4.  The individual tried to correct the issue, stating in a "sworn declaration . . . that he sent his lead-plaintiff certification to the wrong firm 'in error.'"  *Id*.  But the court held that "***such a blatant gaffe does not bode well for the adequacy of [the movant] to lead th[e] litigation***" and rejected the twice-filing movant on adequacy grounds.  *Id*.

Similarly, in *Singer v. Nicor, Inc.*, a lead plaintiff movant filed "two timely motions for appointment" with two different law firms.  2002 WL 31356419, at *2 (N.D. Ill. Oct. 17, 2002).  As is the case here, the movant withdrew one motion and attempted to proceed with the other, asserting that the "conflicting initial filings were simply the result of a 'mis-communication,' when a colleague of its principal and managing partner 'inadvertently signed a certification which authorized the law firm of Bernstein Liebhard & Lifshitz, LLP' to represent the company, when the law firm of Schiffrin & Barroway also had been authorized to do so by the principal."  *Id.*  The court held that the two filings were a "serious problem" that revealed conflicts within the movant and made the movant "unsuitable to make decisions on behalf of the class."  *Id.* (holding that the filing of two motions raised "serious concerns regarding [his] capability of representing the interests of the class").

In *Pardi v. Tricida, Inc.*, Judge Koh rejected a movant group that included an individual that had also filed a solo lead plaintiff motion (which was later withdrawn).  No. 21-CV-00076-LHK, 2021 WL 1381271, at *2 (N.D. Cal. Apr. 2, 2021).  Finding the group inadequate, Judge Koh found that the

4

conflicting motions "highlighted [the] lack of cohesion" of the entire movant group, relying on *Tsirekidze*.[3] *Id.*

Relatedly, many courts have found that serious inaccuracies in lead plaintiff papers are disqualifying because such errors raise concerns about movant's ability to aggressively pursue the litigation or effectively oversee its counsel. *See, e.g.*, *Camp v. Qualcomm Inc.*, No. 18-cv-1208, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019), *adhered on reconsideration*, *Camp v. Qualcomm Inc.*, No. 3:18-cv-1208, 2019 WL 3554798, at *2 (S.D. Cal. Aug. 5, 2019) (finding movant was not preliminarily adequate due to multiple errors and mistakes in certification); *Micholle v. Ophthotech Corp.*, No. 17-CV-210, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. CIV A 07-177, 2007 WL 2683636, at *8 n.8 (D.N.J. Sept. 7, 2007) (finding movant inadequate due in part to "misinformation" in signed certification); *see also Nager v. Websecure, Inc.*, No. CIV.A. 97-10662, 1997 WL 773717, at *1 n.1 (D. Mass. Nov. 26, 1997) (while some "inaccuracy" in a movant's certification "may be explainable," it still "casts sufficient doubt on [movant's] adequacy as a representative plaintiff").

Under the foregoing caselaw, Menon is plainly inadequate. The record shows that Menon submitted his transaction data, in addition to signed PSLRA certifications, to two different firms on two different days. ECF Nos. 13-4 & 21-4. The certifications, which are sworn under penalty of perjury, directly contradict each other. In one certification, dated August 26th, Menon swears that he "authorize[s]" the Rosen law firm "to file a lead plaintiff motion" on his behalf. ECF No. 13-3, ¶1. In the other certification, which was completed two days earlier, Menon swears that he has selected Faruqi to "prosecut[e] this action and claims" on his behalf. ECF No. 21-3, ¶2. Menon also submitted a sworn

---

[3] Indeed, in the unusual circumstance where a movant does file dueling lead plaintiff motions, it typically withdraws both motions, reflecting an understanding that such a movant cannot satisfy the PSLRA's adequacy requirement. *See, e.g.*, *Lopez v. AgEagle Aerial Sys., Inc.*, No. 2:21-CV-1810, 2021 WL 2377343 (C.D. Cal. June 7, 2021) (duplicate movant Iesada Nariyoshi withdrew one motion and filed a notice of non-opposition for the other at ECF Nos. 31 & 35); *Gronich v. Omega Healthcare Invs., Inc.*, 17 Civ. 8983, 2018 WL 1626078, at *1 (S.D.N.Y. Mar. 27, 2018) (duplicate movant Glenn Fausz withdrew both motions); *Torres v. Berry Corp.*, No. 3:20-CV-03464, 2022 WL 18830845 (N.D. Tex.) (duplicate movant Paul Morris filed non-opposition notices at ECF Nos. 18-19); *see also Alperstein v. Sona Nanotech Inc.*, Case No. 2:20-cv-11405, 2021 WL 4704710 (C.D. Cal. Mar. 16, 2021) (one motion withdrawn and one abandoned by duplicate movant Steven Schulze, *see* ECF Nos. 19, 23 & 35).

5

declaration, dated August 24th, in support of his application with Faruqi that contains factual inaccuracies. ECF No. 21-5.   In the declaration, Menon swears that he has "directed the Faruqi firm to prosecute this action" and that he will "continue to supervise lead counsel and actively oversee the prosecution of this action for the benefit of the class." ECF No. 21-5, ¶8.   But contrary to his statement, Menon selected Rosen to pursue the action two days later and does not appear to have understood the import of the documents he signed with the Faruqi firm.  Menon also swears:

> I understand and appreciate a Lead Plaintiff's obligation under the PSLRA to select lead counsel and to monitor the actions of counsel to ensure the action is prosecuted efficiently. I have fulfilled this responsibility by selecting and retaining counsel with a proven history of handling this type of complex litigation. In this case, I have selected Faruqi & Faruqi, LLP (the "Faruqi Firm") to serve as lead counsel.
>
> ECF No. 21-5, ¶7.

Again, these sworn representations were incorrect.  Menon clearly did not "understand" his obligations to "monitor the actions of counsel."  Rather, he allowed his two sets of counsel to file opposing leadership motions on his behalf.  Two days after signing his declaration with Faruqi, Menon chose to submit his trading data and signed PSLRA certification to the Rosen Firm. ECF Nos. 13-4 & 13-3, respectively.  Nor did Menon explain the reason for his duplicative lead plaintiff filings at the first possible opportunity.  Indeed, he withdrew his filing with the Rosen law firm without any explanation whatsoever.

Given these issues, there is serious doubt as to whether Menon can review, understand, and approve a complex amended complaint or other filings in this matter or effectively oversee his counsel to protect the interests of the Class.

### B.  The Court Should Deny Ross's Motion Because His Failure to Disclose His Criminal and Violent Past Raises Issues About His Candor with the Court

Based upon Scott+Scott's investigation of Ross's background, he does not satisfy Rule 23's adequacy requirement.  Specifically, Ross has a troubling history of repeated violence and reckless behavior—all of which he failed to disclose to the Court—raising issues about Ross's candor and the quality of his judgment.  Ross's failure to disclose to the Court his litany of arrests and a civil action evidencing his repeated violent tendencies raises concerns about Ross's candor and adequacy to serve as

6

Lead Plaintiff. Indeed, courts have denied movants' motions to be appointed lead plaintiff because the movants' failure to reveal their criminal history raised concerns about the movants' candor and, therefore, their adequacy.

For example, in *Sneed v. AcelRx Pharmaceuticals, Inc.* (No. 21-cv-04353-BLF, 2021 WL 5964596 at *4 (N.D. Cal. Dec. 16, 2021)), this Court ultimately denied movant Paul Dupré's motion due to his lack of candor to his attorney and this Court regarding his past misconduct. Specifically, this Court determined that it had "serious concerns about Dupré's candor to his attorney and this Court regarding his misconduct," in part because Dupré had failed to disclose his misconduct in his motion papers. *Id.* Similarly, in *Clifton v. Willis* (No. 22-cv-03161, 2024 WL 1508832 (D. Col. Mar. 5, 2024)), the court denied movant Igor Chernyak's motion to be appointed lead plaintiff, finding that he was inadequate. Specifically, the court held that, "[m]ost significantly, Mr. Chernyak has displayed a lack of candor with the Court . . . [because] Mr. Chernyak's Motion and attached documents do not mention or reference his criminal history. If not for the [other movants'] investigation, the Court may have never learned of Mr. Chernyak's past legal issues." *Id.*, at *4. In fact, even though it was "unclear to the Court whether Mr. Chernyak's counsel was aware of his history when the Motion was filed," the court found Mr. Chernyak's lack of candor "troubling." *Id.*

Here, Scott+Scott's investigation of Ross's background has revealed a troubling history of criminal activity that evidences violent tendencies and reckless behavior, calling into question the quality of Ross's judgment and his ability to oversee this action and his counsel. Specifically:

- In January 2017, Ross was arrested for aggravated battery, a second-degree felony, by the Polk County Sheriff's Office, according to Polk County court records and records maintained by the Florida Department of Law Enforcement. According to victim Dawn Nguyen, who housesat for Ross, Ross and Ngyuen were engaged in a verbal altercation at Ross's residence concerning the "power in the home being off." Ross allegedly grabbed Nguyen by the neck, until she escaped to another room in the home; Ross then pursued Nguyen and proceeded to grab her by the neck a second time. Nguyen escaped again and fled to her vehicle, at which time Ross pursued her again and attempted to take her car keys from her. Marks on Nguyen's neck were observed by police and photographed. *See* Polk

7

County, Florida Sheriff's Office Affidavit, dated January 19, 2017, attached to the Jasnoch Decl. as Exhibit A.

- In January 1996, Ross was cited for a violation of a license to carry a concealed weapon. *See State of Florida vs. Preston Ross*, No. 96-CM-001797-A, Docket Summary, Polk County, Florida January 24, 1996), attached to the Jasnoch Decl. as Exhibit B.

Scott+Scott's investigation has also revealed a civil action brought by another of Ross's alleged assault victims, in which he accuses Ross of "repeat violence." *See Lance Berges vs. Preston Ross*, 1999DR000499REVI00, Polk County Civil Court, March 11, 1999), attached to the Jasnoch Decl. as Exhibit C. These troubling incidents not only evidence Ross's apparent violent tendencies, but his poor judgement as well.

Critically, the Court would not have known about Ross's past misconduct but for Scott+Scott's investigation. As in *Sneed* and *Clifton*, Ross's failure to disclose this relevant information about the quality of his judgment is disturbing and raises questions about Ross's candor with this Court and his competing movants. This Court should follow *Sneed* and *Clifton* and find that Ross is inadequate to serve as Lead Plaintiff because of his lack of candor and questionable judgment. *See Clifton*, 2024 WL 1508832 (D. Col. Mar. 5, 2024); *Sneed*, 2021 WL 5964596 (N.D. Cal. Dec. 16, 2021).

### C. Regan is Adequate and Typical

In his opening papers, Regan established that he satisfies the "preliminary" Rule 23 inquiry. *See* ECF Nos. 30, 31-3, and 31-5. Regan is clearly typical of the putative Class. Like all members of the Class, Regan purchased Maxeon securities during the Class Period, has claims that arise from the alleged misleading statements, and suffered economic injuries thereby. Regan is also adequate because he has no conflicts of interest with the other members of the Class, has sufficient interest in the outcome of the case, and is subject to no unique defenses. *Id.*

Regan has also demonstrated himself to be an adequate representative by retaining competent and experienced counsel to prosecute this action on behalf of himself and the Class. Scott+Scott is an international law firm that specializes in securities class action cases throughout the country and has

8

significant resources to litigate this case. Scott+Scott consists of over 220 team members, including over 100 highly experienced attorneys. Scott+Scott also includes a team of paralegals, legal assistants, and other support staff including in-house investigators and an e-discovery litigation support group. Scott+Scott has a large presence in California and its San Diego office has 20 attorneys.

Scott+Scott has a long track record of successfully litigating securities class-actions in this District and other state and federal courts across the country. In 2023, acting as lead counsel, Scott+Scott settled *In re Micro Focus Int'l plc Sec. Litig.*, Lead Case No. 18-cv-01549 (CA Super. Ct. San Mateo Cnty.), for $107.5 million. In addition, Scott+Scott has litigated, and continues to litigate, many securities class actions across the country. *See* ECF No. 31-6. Recently, Scott+Scott was appointed lead counsel in: *In re SentinelOne, Inc. Secs. Litig.*, No. 4:23-cv-02786 (N.D. Cal.); *Strezsak v. Ardelyx Inc.*, No. 4:21-cv-05868 (N.D. Cal.); *Abadilla v. Precigen, Inc.*, No. 5:20-cv-06936 (N.D. Cal.) ($13 million settlement); *In re: SanDisk LLC Secs. Litig.*, No. 3:15-cv-01455 (N.D. Cal.) ($50 million settlement); *City of Birmingham Relief and Retirement System v. Acadia Pharmaceuticals Inc.*, No. 3:1-cv-00762 (S.D. Cal.). Scott+Scott's resources and experience will serve the putative Class well.

## IV. CONCLUSION

For the foregoing reasons, Regan opposes the lead plaintiff motions of movants Menon and Ross and respectfully requests that the Court grant his motion and enter an Order: (1) appointing Regan as Lead Plaintiff; (2) approving his selection of Scott+Scott as Lead Counsel for the Class; (3) denying all competing Lead Plaintiff motions; and (4) granting such other relief as the Court may deem just and proper.

Dated: September 9, 2024

SCOTT+SCOTT ATTORNEYS AT LAW LLP

*/s/ John T. Jasnoch*

John T. Jasnoch (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
jjasnoch@scott-scott.com

Thomas L. Laughlin, IV (*Pro hac vice*)
Matthew A. Peller (*Pro hac vice*)
Nicholas S. Bruno (*Pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building

9

230 Park Ave., 17th Floor
New York, NY 10169
Telephone: 212-223-6444
tlaughlin@scott-scott.com
mpeller@scott-scott.com
nbruno@scott-scott.com

*Counsel for Lead Plaintiff Movant and Proposed Lead Counsel*

**THE SCHALL LAW FIRM**
Brian J. Schall
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile:  310-388-0192
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Movant Mark Regan*

10

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2024, I caused the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

<i>/s/ John T. Jasnoch</i><br>
John T. Jasnoch (CA 281605)

MARK REGAN'S OPPOSITION TO COMPETING LEAD PLAINTIFF AND LEAD COUNSEL MOTIONS;
AND, IN THE ALTERNATIVE, REQUEST FOR LIMITED DISCOVERY CASE NO. 3:24-cv-03869-EMC