Lisa T. Omoto SBN 303830
E-mail: lomoto@faruqilaw.com
**FARUQI & FARUQI, LLP**
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: 424-256-2884
Facsimile: 424-256-2885

James M. Wilson, Jr. (appearance *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com

Robert W. Killorin (appearance *pro hac vice*)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email: rkillorin@faruqilaw.com

*Attorneys for Proposed Lead Plaintiff*
*Jeyakumar VS Menon*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR WAYNE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MAXEON SOLAR TECHNOLOGIES, LTD., WILLIAM MULLIGAN, and KAI STROHBECKE,<br><br>Defendants. | Case No. 3:24-cv-03869-EMC<br><br>**JEYAKUMAR VS MENON'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS**<br><br><u>**CLASS ACTION**</u><br><br>Judge:  Hon. Edward M. Chen<br>Date:    October 10, 2024<br>Time:   1:30 p.m.<br>Courtroom:   5 – 17th Floor |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .......................................................................................................................... 4

I.    ROSS AND REGAN FAIL TO OFFER ANY PROOF THAT MENON IS
      INADEQUATE............................................................................................................ 4

      A.    The Filing Of The Other Now-Withdrawn Motion Demonstrates Interest And
            Zeal To Be Involved And Is Not Proof Of Inadequacy ......................................... 4

      B.    The Few Differences Between Menon's Declaration And The Withdrawn
            Motion Are Inconsequential And Do Not Rebut The Presumption In Menon's
            Favor ...................................................................................................................... 8

II.   MENON SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS.............. 12

III.  MENON'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD
      BE APPROVED ........................................................................................................ 14

IV.   CONCLUSION.......................................................................................................... 15

**JEYAKUMAR VS MENON'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER
SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD
COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 3:24-cv-03869-EMC**

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Alperstein v. Sona Nanotech Inc.*,
    Case No. 2:20-cv-11405-MCS-MAA,
    2021 WL 4704710 (C.D. Cal. Mar. 16, 2021) ....................................................................7

*Armour v. Network Assocs., Inc.*,
    171 F. Supp. 2d 1044 (N.D. Cal. 2001) ............................................................................8

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) .....................................................................................13

*Camp v. Qualcomm Inc.*,
    No. 18-cv-1208-AJB-BLM,
    2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ....................................................................11

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ...........................................................................................12

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ..........................................................................................5, 8

*In re Century Aluminum Co. Sec. Litig.*,
    No. C 09-1001 SI, 2009 WL 2905962 (N.D. Cal. Sept. 8, 2009) ...................................13

*Constance Sczesny Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) ......................................................................................8

*In re Countrywide Fin. Corp. Sec. Litig.*,
    273 F.R.D. 586 (C.D. Cal. 2009) ....................................................................................13

*In re Emulex Corp., Sec. Litig.*,
    210 F.R.D. 717 (C.D. Cal. 2002) ......................................................................................5

*Feyko v. Yuhe Int'l Inc.*,
    No. CV 11-05511 DDP, 2012 WL 682882 (C.D. Cal. Mar. 2, 2012) .............................13

*In re Heritage Bond Litig.*,
    No. MDL 02-ML-1475 DT, 2004 WL 1638201 (C.D. Cal. July 12, 2004) ....................13

*Karp v. Diebold Nixdorf, Inc.*,
    No. 19 Civ. 6180(LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) .....................10, 11

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015) ........................................................................2, 5, 6

ii

*In re KIT Digital, Inc. Sec. Litig.*,
    293 F.R.D. 441 (S.D.N.Y. 2013) ...................................................................................8

*Kokkinis v. Aegean Marine Petroleum Network Inc.*,
    No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010 (S.D.N.Y. May 19, 2011)........................13

*Lako v. Loandepot, Inc.*,
    No. 8:21-cv-01449-JLS-JDE, 2022 WL 1314463 (C.D. Cal. May 2, 2022) ...........................11

*Lopez v. AgEagle Aerial Sys., Inc.*,
    No. 2:21-cv-01810-CAS (Ex), 2021 WL 2377343 (C.D. Cal. June 7, 2021).........................7

*McDermid v. Inovio Pharms., Inc.*,
    467 F. Supp. 3d 270 (E.D. Pa. 2020) ...........................................................................2, 6

*Micholle v. Ophthotech Corp.*,
    No. 17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)..................................11

*In re Milestone Sci. Sec. Litig.*,
    183 F.R.D. 404 (D.N.J. 1998)......................................................................................5

*Miller v. Ventro Corp.*,
    No. 01-CV-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ......................................13

*In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*,
    693 F.2d 847 (9th Cir. 1982) ......................................................................................5

*Pardi v. Tricida Inc.*
    No. 21-CV-00076-LHK, 2021 WL 1381271 (N.D. Cal. Apr. 2, 2021) ...............................2, 7

*Puente v. ChinaCast Educ. Corp.*,
    No. 12-CV-04621-JFW, 2012 WL 3731822 (C.D. Cal. Aug. 22, 2012)..................................5

*Read v. Amira Nature Foods Ltd.*,
    No. 15-cv-00957-FMO-PJW, slip op. (C.D. Cal. May 18, 2015) .......................................2, 6

*Reitan v. China Mobile Games & Entm't Group, Ltd.*,
    68 F. Supp. 3d 390 (S.D.N.Y. 2014).............................................................................6

*Rodriguez v. DraftKings Inc.*,
    No. 21 Civ. 5739 (PAE), 202s1 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ..........................3, 11

*Singer v. Nicor Inc.*,
    No. 02 C 5168, 2002 WL 31356419 (N.D. Ill. Oct. 17, 2002) ...........................................2, 7

*Strougo v. Brantley Cap. Corp.*,
    243 F.R.D. 100 (S.D.N.Y. 2007) ..................................................................................8

**JEYAKUMAR VS MENON'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 3:24-cv-03869-EMC**

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (C.D. Cal. 2005) ..................................................................................12

*In re the Boeing Co. Aircraft Securities Litigation*,
    No. 19-cv-02394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020),.................................11

*Tomaszewski v. Trevena, Inc.*,
    383 F. Supp. 3d 409 (E.D. Pa. 2019) .........................................................................11

*Torres v. Berry Corp.*,
    No. 3:20-CV-03464-S, 2022 WL 18830845 (N.D. Tex. Nov. 9, 2022) ....................7

*Tsirekidze v. Syntax-Brillian Corp.*,
    No. CV-07-2204-PHX-FJM, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ............2, 7

*W. Palm Beach Firefighters' Pension Fund v. Altisource Portfolio Sols. S.A.*,
    Case 14-81156, slip op. (S.D. Fla. Dec. 5, 2024) .......................................................6

*Weisz v. Calpine Corp.*,
    No. 4:02-CV-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) ........................12

*Wenderhold v. Cylink Corp.*,
    188 F.R.D. 577 (N.D. Cal. 1999)..................................................................................5

**Statutes**

15 U.S.C. § 78u-4 ...............................................................................................4, 8, 12, 14

**Other Authorities**

Fed. R. Civ. P. 23(a)(4)..........................................................................................................13

Anne Cullen,
    *More Judges Are Demanding Diversity Among Class Counsel*,
    Law360 (July 16, 2020) ...............................................................................................15

Ralph Chapoco,
    *Calls for Lawyer Diversity Spread to Complex Class Litigation*,
    Bloomberg Law (July 30, 2020) .................................................................................15

**JEYAKUMAR VS MENON'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 3:24-cv-03869-EMC**

Jeyakumar VS Menon ("Menon") respectfully submits this reply to the oppositions filed by movants Preston A. Ross ("Ross") and Mark Regan ("Regan") and in further support of his motion for an Order: (1) appointing Menon as Lead Plaintiff in the above-captioned action; (2) approving Menon's selection of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel for the Class; and (3) granting such other relief as the Court may deem just and proper.[1]

## PRELIMINARY STATEMENT

Of the four Maxeon shareholders who originally moved to be appointed Lead Plaintiff in this Action, Menon clearly is the presumptive Lead Plaintiff under the PSLRA. His losses of $124,434.32 far exceed the losses of the other movants and he demonstrated through his sworn declarations that he meets Rule 23's typicality and adequacy requirements.

No movant disputes that Menon has reported far larger losses than any of the other movants. Indeed, the movant Anthony Kulesza, with far lesser losses than Menon, did not oppose Menon's appointment and has already withdrawn his motion. ECF No. 43.

The other two remaining movants are Ross (with losses of only $37,460.00) and Regan (with losses of only of $32,358.90). They have chosen to take a long shot and to oppose Menon's motion based on spurious speculation and immaterial differences that appeared in a motion filed by another law firm that has been withdrawn. ECF No. 34. None of Ross's and Regan's arguments come close to satisfying the PSLRA's stringent requirement of proof of inadequacy to rebut the presumption in favor of Menon. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Ross and Regan both rest their claim to be appointed Lead Plaintiff on the legally unsupportable position that Menon is incapable of leading this class action because another law

---

[1] All terms not otherwise defined herein shall have the same meaning as those terms in the Notice of Motion and Motion of Jeyakumar VS Menon for Appointment as Lead Plaintiff and Approval of Lead Counsel; Memorandum of Points and Authorities in Support Thereof ("Opening Brief"). ECF No. 20. All references to "Ex. __" are exhibits to the Declaration of James M. Wilson, Jr. in Further Support of Motion of Jeyakumar VS Menon for Appointment as Lead Plaintiff and Approval of Lead Counsel and in Opposition to Competing Motions, filed herewith. All citations and internal quotation marks are omitted and all emphases are added unless otherwise noted.

1

**JEYAKUMAR VS MENON'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 3:24-cv-03869-EMC**

firm also filed a motion for lead plaintiff on his behalf and then quickly withdrew from representation of him.  First, this argument is moot – the law firm in question (the Rosen Law Firm) withdrew the motion within hours of having filed it, once Menon made clear his choice of attorneys. ECF No. 34.  Ross and Regan claim that even though withdrawn, the fact that the other motion was filed in the first place evidences Menon's lack of interest in the case and/or inability to manage counsel. Not so. Indeed, if anything Menon has demonstrated his active involvement in this case, his high interest in performing due diligence, having interviewed multiple law firms prior to the PSLRA mandated filing deadline.  None of the cases cited by Ross or Regan are on point in this case – in those cases a member of a group (*McDermid v. Inovio Pharms., Inc.,* 467 F. Supp. 3d 270, 279-80 (E.D. Pa. 2020), *Pardi v. Tricida Inc.* No. 21-CV-00076-LHK, 2021 WL 1381271, at \*2 (N.D. Cal. Apr. 2, 2021)), entity (*Singer v. Nicor Inc.*, No. 02 C 5168, 2002 WL 31356419, at \*2 (N.D. Ill. Oct. 17, 2002)), or of a family (*Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at \*4 (D. Ariz. Apr. 7, 2008)) had also separately filed an individual competing motion for lead plaintiff.  In those cases, even when the individual withdrew their motion, there was evidence of dysfunction and conflict within the group's, entity's or family's motion that undermined the claim of adequacy. Indeed, in situations like the one here, where a movant filed with another firm which then withdrew the motion, courts have rejected the argument that a dual filing precluded the preliminary finding of adequacy. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 537, 541 (S.D.N.Y. 2015) (Judge McMahon stated, "Tai [presumptive lead] answers that, in his zeal to be Lead Plaintiff, he made a regrettable mistake that he will not repeat. Frankly, I view this as a tempest in a teacup." – the court went on to appoint that movant co-lead plaintiff); *see also Read v. Amira Nature Foods Ltd.,* No. 15-cv-00957-FMO-PJW, slip op. at 8, 9-10 (C.D. Cal. May 18, 2015) (attached hereto as Ex. 1).

Accordingly, Ross and Regan's arguments that another law firm's filing and hasty withdrawal of an obsolete Lead Plaintiff motion should be disqualifying is not sound and should

**JEYAKUMAR VS MENON'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 3:24-cv-03869-EMC**

be rejected.

Ross then goes on to try an even more spurious approach.  Ross's argument that Menon's Lead Plaintiff Motion is "riddled with errors and inconsistencies" (Memorandum of Points and Authorities: (1) in Further Support of Motion of Preston A. Ross for Appointment as Lead Plaintiff and Approval of Lead Counsel; and (2) in Opposition to Competing Motions (the "Ross Opp."  12-15) suffers from a similar lack of merit and demonstrates an inappropriate level of zeal by way of hyperbole. The "errors" Ross identifies, such as the apparent rounding of certain data for two of Menon's transactions – the sale of 4,800 shares at $5.78 reported in the Faruqi Firm filing versus $5.79 per share reported in the Rosen Law Firm filing, and the purchase of 100 shares at $3.995 reported in the Faruqi Firm filing versus $3.99 reported in the Rosen Law Firm filing per share, and the apparent combining of transaction data from Menon's two accounts by the other law firm, do not in any way reflect incorrect information and appear to be immaterial differences resulting from different law firms policies regarding managing and calculating data downloads from stock exchange reporting services.  *Id.* at 14.  These immaterial differences in no way undermine the accuracy of his sworn declaration, which contains complete and perfectly accurate transactional data. Indeed, these insignificant differences are far removed from the extensive inaccuracies and mistakes found to disqualify movants in the cases cited by Ross. *See e.g., Rodriguez v. DraftKings Inc.*, No. 21 Civ. 5739 (PAE), 2021 WL 5282006, at *6, *9 (S.D.N.Y. Nov. 12, 2021) (presumptive lead plaintiff's numerous mistakes and corrections regarding voluminous trading, including short selling, arguably left it impossible to determine how much he had actually lost).

Indeed, Ross makes the outlandish claim that either the Faruqi Firm certification or the one filed with the other firm (the Rosen Law Firm), must be false as the total losses reported in the Faruqi Firm Opening Motion were $124,434.32 and the total losses reported in the Rosen loss chart were - 124,129.41- a difference of $304.91.  However this discrepancy would be nothing more than the natural result of the PSLRA mandated 90-day rolling average calculation

3

being performed a few days apart.  The PSLRA caps a shareholder's damages by using the "mean trading price" of an issuer's security "during the 90-day period beginning on the date on which the information correcting the misstatement or omissions that is the basis for the action is disseminated to the market." 15 U.S.C. § 78u-4(e)(1).  For accuracy, it is customary for Lead Plaintiff movants performing damage calculations that fall within that 90-day period to use the 90-day rolling average at the time of filing or reasonably close thereto.   The 90-day look back average price used by the Faruqi Firm of $0.6099 was calculated on the very day of the initial filing on August 26, 2024, as shown on the chart itself. The lookback 90-day look back average price calculated by the Rosen Law Firm would simply have been computed a few days earlier as it is shown to use a rolling average of $0.61725. *Compare* Faruqi Opening Motion, ECF No. 21-3, using a 90-day look back price of $0.6099 as of August 26, 2024, *with* Rosen Opp. Motion, ECF No. 13-3, using a 90-day look back price of $0.61725.

The difference in the time the look back average was calculated substantially accounts for the relatively small discrepancy in the papers regarding the over 38,150 damaged shares Menon held.  That discrepancy is inconsequential, as are the factional rounding errors alluded to and are the sign of a movant grasping at straws.

Menon clearly meets the PSLRA's requirements to serve as Lead Plaintiff on behalf of Maxeon shareholders in this case. Menon respectfully asks this Court to grant his Motion to be appointed Lead Plaintiff and approve his selection of the Faruqi Firm to act as Lead Counsel.

## ARGUMENT

I. **ROSS AND REGAN FAIL TO OFFER ANY PROOF THAT MENON IS INADEQUATE**

A. **The Filing Of The Other Now-Withdrawn Motion Demonstrates Interest And Zeal To Be Involved And Is Not Proof Of Inadequacy**

Ross and Regan argue that Menon filed two "conflicting" and "contradictory" motions and sworn statements that evidence his inability to manage counsel and direct this case. Mark Reagan's Opposition to Competing Lead Plaintiff and Lead Counsel Motions; and, in the

4

Alternative, Request for Limited Discovery (the "Regan Opp.") 3-4; Ross Opp. 3, 9-12. These assertions are not only incorrect but are based on pure speculation, which is insufficient to rebut the presumption in favor of Menon.

In determining adequacy, courts assess whether a movant has interests antagonistic to the class, and whether his counsel have the necessary capabilities and qualifications. *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002). Legal representation is "adequate" when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive. *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982). No movant has disputed that Menon's chosen counsel the Faruqi Firm is competent to serve as lead counsel and class counsel.

Courts recognize that "[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998).

At this stage, "a wide-ranging analysis" of these requirements "is not appropriate" and "should be left for consideration on a motion for class certification." *Puente v. ChinaCast Educ. Corp.*, No. 12-CV-04621-JFW (PLAx), 2012 WL 3731822, at *3 (C.D. Cal. Aug. 22, 2012); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) ("The initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy."). "[N]othing more than a preliminary showing is required" to satisfy this inquiry. *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D. Cal. 1999).

The filing of two separate lead plaintiff motions, followed by the withdrawal of one, by an individual under circumstance like those in this case is rejected as a basis to disqualify a presumptive lead plaintiff. Indeed, in *Khunt*, the court viewed such attacks against a presumptive

5

lead plaintiff on grounds that he had moved with two separate law firms, one of which was quickly withdrawn, as a "tempest in a teacup" and went on to appoint that movant as co-lead plaintiff. *See Khunt*, 102 F. Supp. 3d at 537 (S.D.N.Y. 2015); *see also W. Palm Beach Firefighters' Pension Fund v. Altisource Portfolio Sols. S.A.*, Case 14-81156 CIV-WPD, ECF Nos. 24 (attached as Ex. 2; docket sheet listing motions and withdrawal attached as Ex. 3) (S.D. Fla. Dec. 5, 2024) (court appointed lead plaintiff movant who filed two competing motions for lead plaintiff using two separate firms on the same day and then withdrew one of the motions); *Reitan v. China Mobile Games & Entm't Group, Ltd.,* 68 F. Supp. 3d 390, 400 n.6 (S.D.N.Y. 2014) (court found "no support for [competing movant's] claim that the duplicative lead plaintiff motions … would bar [other movant] from consideration.").

Indeed, a district court in the Ninth Circuit addressed a situation similar to this one, where an entity moved for lead plaintiff with two separate laws firms. In quickly dismissing competing movants' adequacy challenges, the court in *Read* explained:

> Based on the evidence before the court, the court **will not assume** that [lead plaintiff movant's] **failure to recall** . . . **that he had signed a similar certification** . . . exhibits a **lack of understanding** of [its] role as a fiduciary to the proposed class. . . . Finally, a client's choice of counsel is an important prerogative, and [competing movants] have not provided any explanation why the court should inquire or interfere with [lead plaintiff's] choice of counsel in this litigation.

Ex. 1 at 8.

The cases Regan and Ross cite to are inapposite not only because they involved situations where a single member of a larger group of investors moved separately with another law firm, but also because other factors, not present here, undermined the movant's adequacy. For example, in *McDermid* (Ross Opp. 9-10), an individual member of an investor group, moved separately with another firm. 467 F. Supp. 3d at 279-80. The group of investors removed the individual from the group which the court found indicative of "a lack of cohesion." *Id.* at 280. The court also found the group was subject to unique defenses in that the "falsity of [defendant's] representations" was revealed prior to approximately sixty percent of the group's

6

purchases. *Id.* In *Singer* (Regan Opp. 4; Ross Opp. 9), two separate individuals from the same entity had retained different counsel, which led the court to question the conflicts existing within the entity. *See* 2002 WL 31356419, at *2.

In *Tsirekidze* (Regan Opp. 4; Ross Opp. 9), the court declined to consider one individual member of a three-member investor group who filed a separate lead plaintiff motion with another law firm because the "willingness to abandon the group only suggests how loosely it was put together." 2008 WL 942273, at *4. The individual investor also had the second largest financial interest and his trading history revealed that he was a "high-volume day trader." *Id.* That member's signing with another firm was not the basis for disqualifying the group.

Moreover, in *Pardi* (Regan Opp. 4-5; Ross Opp. 9), the court found a group of investors to be inadequate where one of its members moved separately with another law firm because their group's own declaration "candidly admit[ted] that the members . . . did not 'learn of each other's existence' until speaking with their counsel . . . ." 2021 WL 1381271, at *2 (N.D. Cal. Apr. 2, 2021). The court found this factor to be evidence of the group's "lack of cohesion." *Id.*

Regan cites to docket entries in a string of other cases in a footnote in which he claims a movant filed multiple motions with different law firms and later withdrew from consideration entirely. *See* Regan Opp. 5 n.3 citing *Lopez v. AgEagle Aerial Sys., Inc.*, No. 2:21-cv-01810-CAS (Ex), 2021 WL 2377343 (C.D. Cal. June 7, 2021), Notices of Withdrawal and Non-Opposition attached as Exs. 4 & 5; *Torres v. Berry Corp.*, No. 3:20-CV-03464-S, 2022 WL 18830845 (N.D. Tex. Nov. 9, 2022), Notices of Non-Opposition attached as Exs. 6 & 7; *Alperstein v. Sona Nanotech Inc.*, Case No. 2:20-cv-11405-MCS-MAA, 2021 WL 4704710 (C.D. Cal. Mar. 16, 2021), Notice of Withdrawal attached as Ex. 8. None of the withdrawals in those cases disclose the basis for withdrawing other than that the withdrawing movants do not have the largest financial interest. Nevertheless, Regan incredulously leaps to the unsupported conclusion that those withdrawals were done "reflecting an understanding that such a movant cannot satisfy the PSLRA's adequacy requirement." Regan Opp. 5 n.3. Such bald speculation of

7

what happened in those cases, even if relevant here which they are not, is uniformly rejected as a basis to rebut the PSLRA presumption. The PSLRA provides that the movant with the largest financial interest will only be defeated upon "proof" of inadequacy or atypicality. 15 U.S.C. § 78u4(a)(3)(B)(iii)(II). The statutory reference to "proof" excludes challenges based on speculation. *See In re KIT Digital, Inc. Sec. Litig.,* 293 F.R.D. 441, 446 (S.D.N.Y. 2013) ("[S]tatus as the presumptively most adequate lead plaintiff 'may be rebutted only upon proof by a member of the purported plaintiff class' that [the presumptive lead plaintiff] will not fairly and adequate represent the class or protect its interests. 15 U.S.C. § 78u4(a)(3)(B)(iii)(II)."); *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) (finding speculative assertions about a movant's adequacy insufficient to rebut lead plaintiff presumption). Regan and Ross offered no proof at all to rebut the presumption in favor of Menon's appointment as Lead Plaintiff. *Cendant*, 264 F.3d at 269; *Strougo v. Brantley Cap. Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007) ("Speculation and conjecture from one interested party is not enough to prove a nefarious collaboration . . . ."); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324–25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the presumptive lead plaintiff] would be uniquely subject.").

Regan's and Ross's argument that Menon is inadequate based on the filing – and withdrawal – of a second motion should be rejected out of hand.

> **B.    The Few Differences Between Menon's Declaration And The Withdrawn Motion Are Inconsequential And Do Not Rebut The Presumption In Menon's Favor**

Ross argues that Menon's filings contain the following inaccuracies  that render him inadequate: (i) the prices at which he bought and sold certain of his Maxeon shares during the Class Period; (ii) the number of accounts with which he transacted in Maxeon securities during the Class Period; (iii) his total losses suffered as a result of the fraud alleged in this Action; and

8

(iv) his experience as an investor. Ross Opp. 12. None of these differences between the motions reflect inaccuracies or errors that render Menon's Declarations false much less disqualifying, and his experience as an investor is sound and makes him well qualified to serve a Lead Plaintiff.

The "errors" Ross identifies regarding the prices at which he bought and sold Maxeon stock only pertain to two transactions: a sale of 4,800 shares at $5.78 versus $5.79 per share, and the purchase of 100 shares at $3.99 versus $3.995 per share. Ross Opp. 14. These differences in two transactions are inconsequential and did not materially impact Menon's losses. Indeed, it appears the differences for these two transactions are not errors at all and presumably reflect a different format for downloading transaction data or a different system for rounding up or down, not an error in calculation. Ross identifies no such similar discrepancies for any of Menon's other transactions.

Furthermore, the total difference between reported losses between the two methodologies is not significant and is based on the use by each law firm of different 90-day look back price under the PSLRA. Had Ross been forthright with the Court, he would have acknowledged that this, but he failed to do so. Instead, he opted to make a baseless claim that the reported losses may be false. Menon's counsel calculated his losses to be $124,434.32 and the firm that filed another motion for him calculated $124,129.41. Part of that difference was the result of selecting a different date for calculation in which the average 90-day "look back price" to be used was different. Importantly, Ross does not argue these minor differences impacted Menon's status of having the largest financial interest in the outcome of the case.

Ross identifies other supposedly fatal errors in Menon's declarations. He correctly notes that the Faruqi firm calculated estimated losses based on trades dates, while the other law firm provides settlement dates for Menon's transactions, without any explanation whatsoever of why the distinction matters for the Court's consideration of adequacy. Ross Opp. 14-15. Indeed, Ross does not claim that information for the trade dates and settlement dates was inaccurate and only claimed it was different. *Id*. Ross also notes that the other law firm reported Menon's

9

transactions together without reflecting that these transactions were affected through two of his wholly owned accounts like the Faruqi Firm did. Ross Opp. 15. Again here, Ross offers no explanation why this would be relevant at all and does not argue that the total number of transactions in either motion was inaccurately reported.

Ross then attempts to besmirch Menon by claiming that he inaccurately reported his investment experience based on inconsequential differences in the two motions. In the withdrawn motion it appears he estimated his investment experience at 16 years based exclusively on statements made the lawyers in a brief. In the Faruqi Firm filed Opening Brief, Menon estimated that he had approximately 18 years of investment experience in his signed statement. Ross Opp. 15. Ross completely skirts past a fundamental difference between the two filings, to wit: in the withdrawn motion, it was the attorneys who reported Menon's investing experience in their legal brief, not Menon. Those attorneys did not submit a sworn declaration from Menon describing his investment experience and there is no evidence that Menon reviewed and approved the memorandum of law that that law firm submitted. The Faruqi Firm submitted a sworn declaration from Menon attesting to his investment experience. Ex. D to Declaration of Lisa T. Omoto in Support of Motion of Jeyakumar VS Menon for Appointment as Lead Plaintiff and Approval of Lead Counsel ("Opening Decl.") (ECF No. 21-4). At bottom, this supposed discrepancy in investment experience appears to be attributable to a dismissed attorney who drafted that legal brief, not Menon. Ross fails to include this distinction in his argument.

Ross is the only movant harping on these inconsequential differences between the two filings. He seeks to overstate their significance apparently in an desperate attempt to have Menon disqualified. But this case is nothing like the cases cited Ross dug up where courts disqualified a lead plaintiff movant based on significant errors in their sworn submissions to the court.

For example, in *Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180(LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019), cited by Ross at 16, the court held that the mistake in

10

reported losses was no "slight error".  Rather, the initial losses that a movant took two weeks to correct represented a 34% difference.  *Karp*, 2019 WL 5587148, at *6.  In *Rodriguez*, 2021 WL 5282006, at *9, cited by Ross at 15, the movant's certifications contained "significant errors and inconsistencies" which movant "missed…due to the volume of transactions involved." The movant's certifications omitted his profits from option transactions, millions of dollars' worth of DraftKings common stock trades and short selling activities.  *Id.* at *5.  The disqualified movant was a "serial in-and-out trader" of DraftKings stock such that "the concern with such trading is that it could indicate that [movant] traded based on daily market volatility rather than reliance on defendants' alleged misrepresentations."  *Id.* at *7.

In *In re the Boeing Co. Aircraft Securities Litigation*, No. 19-cv-02394, 2020 WL 476658, at *5-6 (N.D. Ill. Jan. 28, 2020), cited by Ross at 15-16, the movant's loss charts he supplied with his declaration were "patently incorrect."  Those charts indicated that the movants sold none of the Boeing shares they purchased during the class period before filing their lead plaintiff motion, but their "trading records reveal that [movants] sold some $7.5 million of those shares before [movants] filed their loss charts." *Id.*

In *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019), cited by Ross at 13, the movant overstated losses by over $500.00 because he "combined certain trades and averaged the per-share prices" and "misstated the date on which some of the common stock shares were purchased."

In *Lako v. Loandepot, Inc.*, No. 8:21-cv-01449-JLS-JDE, 2022 WL 1314463, at *5 (C.D. Cal. May 2, 2022), cited by Ross at 12, the movants updated their loss calculation multiple times by changing the methodology by which they calculated losses. *See Camp v. Qualcomm Inc.*, No. 18-cv-1208-AJB-BLM, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (Ross Opp. 13) (movant was disqualified based on "significant errors in the transaction records and loss calculations accompanying [movant's] motion); *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at *8 (S.D.N.Y. Mar. 13, 2018) (cited in Regan Opp. 5) (movant

11

adjusted his total loss number from $4,140,587 to $1,659,767 because his "certification reflected his tax basis and corresponding tax losses for the shares pursuant to Internal Revenue Service wash rules, not the actual purchase or sale price."; he also listed buy dates that were on weekends during non-trading hours).

At bottom, none of the discrepancies found by Ross are sufficient to prove that Menon is inadequate under Rule 23 and his arguments should be rejected.

## II.    MENON SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

As described in his Opening Brief, Menon has met all of the PSLRA requirements to be appointed Lead Plaintiff in this case.

Menon timely filed a motion to be appointed lead plaintiff. *See* Opening Brief 5-6. Further, as demonstrated in his opening motion papers, Menon has the largest financial interest in the outcome of the case and otherwise satisfies Rule 23. *Id*. at 6-9. Neither Ross nor Regan dispute that Menon has the largest losses.

The PSLRA also requires that the lead plaintiff satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  When assessing a potential Lead Plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *see also Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 671 (C.D. Cal. 2005) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.").

Menon's claims are clearly typical of the Class's claims. Menon acquired Maxeon securities during the Class Period, suffered damages as a result of the false and misleading statements made by Defendants, and possesses claims against Defendants under the federal securities laws. Because the factual and legal bases of Menon's claims are similar to those of the Class's claims, he necessarily satisfies the typicality requirements. *See Weisz v. Calpine Corp.*, No. 4:02-CV-1200, 2002 WL 32818827, at *9 (N.D. Cal. Aug. 19, 2002) (finding movants typical when they "acquired

12

securities during the Class Period, at prices allegedly inflated by the defendants' misconduct, and sustained damages as a result."); *In re Heritage Bond Litig*., No. MDL 02-ML-1475 DT, 2004 WL 1638201, at *7 (C.D. Cal. July 12, 2004) ("Courts have held that if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences.").

Menon will also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The requirement of adequacy is satisfied on proof of (1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation. *See Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL 34497752, at *12 (N.D. Cal. Nov. 28, 2001) ("The Ninth Circuit has held that representation is 'adequate' when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive."); *Feyko v. Yuhe Int'l Inc*., No. CV 11-05511 DDP (PJWx), 2012 WL 682882, at *3 (C.D. Cal. Mar. 2, 2012) (The adequacy "prong is satisfied where the lead plaintiff's attorneys are qualified and where its interests are not antagonistic to those of the class."); *In re Countrywide Fin. Corp. Sec. Litig*., 273 F.R.D. 586, 603 (C.D. Cal. 2009) ("The two key inquiries [of adequacy] are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class.").

As evidenced by the representations in Menon's certification, *see* Opening Decl., Ex. B (ECF No. 21-2), Menon's interests are perfectly aligned with—and by no means antagonistic to—the Class. *See In re Century Aluminum Co. Sec. Litig.*, No. C 09-1001 SI, 2009 WL 2905962, at *4 (N.D. Cal. Sept. 8, 2009) (movant's certification evidenced adequacy to serve as lead plaintiff); *Kokkinis v. Aegean Marine Petroleum Network Inc.*, No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010, at *2 (S.D.N.Y. May 19, 2011) (same); *see also Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) (same).  Contemporaneously with the filing of the instant motion, Menon has submitted a Declaration with additional information

13

about himself, his work and educational background, and experience investing, clearly demonstrating his adequacy to represent class members. Opening Decl., Ex. D ¶¶ 2-5 (ECF No. 21-4). He has been investing in the stock market since 2006, managing his own investments. *Id*. at ¶ 5.

## III.   MENON'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), Menon is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval.

Menon has selected the Faruqi Firm to be Lead Counsel for the Class.  The Faruqi Firm is a minority-owned and woman-owned[2] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Opening Brief 9-12; Opening Decl., Ex. E, Faruqi Firm resume (ECF No. 21-5).

Further, the Faruqi Firm currently serves as lead counsel in several prominent securities class actions. *See, e.g., Clifton v. Willis*, No. 1:22-cv-03161-DDD-JPO (D. Colo.) (appointed sole lead counsel for the class of NewAge, Inc. shareholders); *Lim v. Hightower*, No. 4:23-cv-01454-BYP (N.D. Ohio) (appointed sole lead counsel for the class of Lordstown Motors Corp. shareholders); *Alms v. Luminar Techs., Inc.*, No. 6:23-cv-982-JSS-LHP (M.D. Fla.) (appointed sole lead counsel for the class); *Wang v. Ampio Pharms., Inc.*, No. 22-cv-02105-WJM-MEH (D. Colo.) (appointed sole lead counsel for the class); *Hawes v. Argo Blockchain plc*, No. 1:23-cv-07305-CM (S.D.N.Y.) (appointed sole lead counsel for the class); *In re Revance Therapeutics, Inc. Sec. Litig.*, No. 3:21-cv-09585-AMO (N.D. Cal.) (appointed sole lead counsel for the class); and *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.) (appointed sole lead counsel for the class).

Not only does the firm have the experience and expertise necessary to obtain significant

---

[2]   *See* Opening Decl., Ex. F (ECF No. 21-6).

**JEYAKUMAR VS MENON'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 3:24-cv-03869-EMC**

successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[3]  Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel.  Currently, approximately 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years.  *See* https://www.faruqilaw.com/our-attorneys.

## IV.    CONCLUSION

Accordingly, Menon respectfully requests that the Court: (1) appoint Menon as Lead Plaintiff for the Action; (2) approve his selection of the Faruqi Firm as Lead Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated:  September 16, 2024

Respectfully submitted,

By: /s/ *James M. Wilson, Jr.*
        James M. Wilson, Jr.

James M. Wilson, Jr. (appearance *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: jwilson@faruqilaw.com

Robert W. Killorin (appearance *pro hac vice*)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email: rkillorin@faruqilaw.com

---

[3]    *See* Anne Cullen, *More Judges Are Demanding Diversity Among Class Counsel*, Law360 (July 16, 2020), https://www.law360.com/articles/ 1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, *Calls for Lawyer Diversity Spread to Complex Class Litigation*, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/ XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

15

**JEYAKUMAR VS MENON'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 3:24-cv-03869-EMC**

Lisa T. Omoto SBN 303830
**FARUQI & FARUQI, LLP**
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: 424-256-2884
Facsimile: 424-256-2885
E-mail: lomoto@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff*
*Jeyakumar Menon and [Proposed] Lead*
*Counsel for the putative Class*

16

**JEYAKUMAR VS MENON'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 3:24-cv-03869-EMC**