# EXHIBIT A

2024 WL 4351311
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

GARY DAVID, individually and on behalf of all others similarly situated, Plaintiff,

v.

BRITISH AMERICAN TOBACCO P.L.C., JACK MARIE HENRY
DAVID BOWLES, TADEU MARROCO, and JAVED IQBAL, Defendants.

24-CV-517 (AMD)(MMH)
|
Filed 09/30/2024

MEMORANDUM AND ORDER

MARCIA M. HENRY United States Magistrate Judge

**\*1** Plaintiff Gary David, on behalf of himself and others similarly situated, brought this securities class action against Defendants British American Tobacco p.l.c. ("BAT"), Jack Marie Henry David Bowles, Tadeu Marroco, and Javed Iqbal, alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4 *et seq.* (*See generally* Compl., ECF No. 1.)[1] Five movants requested appointment as lead plaintiff and of their respective attorneys as lead counsel, pursuant to Section 21D(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA. The Honorable Ann M. Donnelly referred the motions for decision. Two of the five movants subsequently withdrew their motions, which the Court denied as moot. (*See* ECF Nos. 9, 12, 21, 23; Apr. 15, 2024 Order.) A third movant filed a notice of non-opposition.

Before the Court are the remaining motions of Brian Peters; co-movants Brett Doyle and Logix LLC (together, "Doyle"); and Jean Lee to be appointed as lead plaintiff, and to appoint their chosen counsel as lead counsel. (Peters Mot., ECF No. 6; Doyle Mot., ECF No. 14; Lee Mot., ECF No. 18.) For the reasons stated below, Lee's motion is **granted**; Lee is appointed lead plaintiff, and Pomerantz is appointed lead counsel. Doyle and Peters's motions are **denied**.

## I. BACKGROUND

### A. Factual Allegations

As alleged, BAT is a multi-national tobacco company that sells cigarettes and other tobacco-related products, such as vaping products, chewing tobacco, snus, and heated tobacco products. (Compl., ECF No. 1 ¶ 7.) BAT is incorporated in the United Kingdom, and its primary U.S. office is in Winston-Salem, North Carolina. (*Id.* ¶ 9.) In January 2017, BAT acquired Reynolds American Inc. ("Reynolds"), valuing Reynolds at approximately $86 million, and took control of the Camel, Newport, and Natural American Spirit cigarette brands (collectively, "Premium American Cigarette Brands"). (*Id.* ¶ 8.) Bowles was BAT's Chief Executive Officer from January 2019 to May 2023. (*Id.* ¶ 11.) Marroco has served as the Chief Executive Officer of BAT since May 2023, and was formerly BAT's Finance Director from August 2019 to May 2023. (*Id.* ¶ 10.) Iqbal, BAT's Director for Digital and Information, has been the Interim Finance Director since May 2023. (*Id.* ¶ 12.)

According to the Complaint, between February 9, 2023 and July 26, 2023, BAT issued statements on its website and filed regulatory reports with the U.S. Securities and Exchange Commission ("SEC") containing materially false and misleading statements about BAT's cigarette value share, the market risks that were decreasing the long-term value of its brands, and BAT's

2024 WL 4351311

inability to prevent reduction of the Premium American Cigarette Brands' value. (*Id.* ¶¶ 18–38.) The statements announced BAT's 2022 performance, its vision for 2023, and its midyear report for 2023. (*Id.* ¶¶ 18–19, 21, 23, 35, 37.) BAT's 2022 annual SEC report included signed certifications in which Bowles and Marroco attested to the accuracy of financial reporting, the disclosure of any material changes to BAT's internal control over financial reporting, and the disclosure of all fraud. (*Id.* ¶ 25.) In sum, David alleges that these various statements failed to disclose that:

**\*2** (1) British American Tobacco materially understated the risks and potential likelihood of an impairment to its [Premium American Cigarette Brands] as a result of various longstanding headwinds and; (2) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

(*Id.* ¶ 39.)

On December 6, 2023, BAT issued a press release announcing that it was taking a £25 billion (approximately $31.5 billion U.S. dollars) impairment on the Premium American Cigarette Brands. (*Id.* ¶ 40.) On the same date, Marroco discussed the impairment on a trading update call, admitting longstanding challenges in the U.S. market. (*Id.* ¶ 44.) Also on that date, *The Wall Street Journal* and *Reuters* each published articles about the cigarette market, including the admission that BAT's U.S. market performance "had been hindered by smokers switching to cheaper, nonpremium brands and a rise in illegal disposable vapes" and that the "U.S. cigarette brands will be worthless within decades." (*Id.* ¶¶ 45–46 (emphasis removed).) BAT's share price fell nearly 8.88% that day. David alleges that these admissions and revelations caused a precipitous drop in BAT's stock value, leading to losses and damages to David and other members of the putative class. (*Id.* ¶¶ 47–48.)

### B. Procedural History

David filed this action on January 24, 2024, seeking to recover compensable damages caused by Defendants' alleged violations of the Exchange Act. (*See generally* Compl., ECF No. 1.) The purported class consists of "persons or entities who purchased or otherwise acquired publicly traded BAT securities between February 9, 2023 and December 6, 2023, inclusive." (*Id.* ¶ 1.) On the same day that David filed the Complaint, notice for the class action was posted on *Business Wire*. (Rosenfeld Decl. A, ECF No. 16-1 at 2–3.)

Thereafter, on March 25, 2024, five individual or groups of putative class members moved to be appointed as lead plaintiff(s) and for the Court to approve their chosen counsel as lead counsel: (1) Peters and his counsel Levi & Korsinsky, LLP (ECF Nos. 6–8); (2) Dean Trautmann and his counsel Glancy Prongay & Murray LLP (ECF Nos. 9–11); (3) Jean H. Lee and her counsel The Rosen Law Firm ("Rosen Law") (ECF Nos. 12–13); (4) Brett A. Doyle and Logix LLC and their counsel Robbins Geller Rudman & Dowd LLP (ECF Nos. 14–16); and (5) Jean Lee (the same person as Jean H. Lee) and her counsel Pomerantz LLP ("Pomerantz") (ECF No. 18)[2]. As discussed herein, Lee submitted two motions with two separate law firms because she "erroneously thought that signing up with two law firms would better secure and serve [her] application[.]" (Lee Supp. Decl., ECF No. 24-2 ¶ 5.) The next day, upon advice of her current counsel Pomerantz, Lee directed Rosen Law to withdraw her motion. (*Id.* ¶ 7.) On March 28, 2024, Rosen Law withdrew the motion. (Not., ECF No. 21.) On the same day, Peters filed a "non-opposition" notice, stating that he does not oppose the competing motions because "he does not possess the 'largest financial interest in the relief sought by the class' as required by the PSLRA." (Peters Non-Opp'n, ECF No. 22.) Subsequently, Trautmann notified the Court of the withdrawal of his motion. (ECF No. 23.)

**\*3** Doyle and Lee then filed oppositions to each other's motions, replies in support of their own motions, and supplemental letters. (ECF Nos. 24–25, 32–33.) Accordingly, only Doyle and Lee's competing motions remain before the Court.

## II. DISCUSSION

### A. Appointment of Lead Plaintiff

The PSLRA directs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" in securities class actions. 15 U.S.C. § 78u-4(a)(3)(B)(i). Congress, in enacting the PSLRA, sought to "prevent lawyer-driven litigation, and to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Somogyi v. Organogenesis Holdings Inc.*, No. 21-CV-6845 (DG)(MMH), 2022 WL 3654646, at *2 (E.D.N.Y. Aug. 25, 2022) (citation omitted).

In determining which individual or group is best suited to serve as lead plaintiff(s), courts adopt a two-step inquiry. *Darish v. N. Dynasty Minerals Ltd.*, Nos. 20-CV-5917 (ENV)(RLM) & 20-CV-6126 (ENV)(RLM), 2021 WL 1026567, at *5 (E.D.N.Y. Mar. 17, 2021); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 111–12 (E.D.N.Y. 2012). *First*, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice ...;

> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). *Second*, if the Court is satisfied that there is a presumptively adequate lead plaintiff, it may then determine whether this presumption of adequacy has been rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

### 1. Notice and Timely Filing

Under the PSLRA, a plaintiff who files a securities class action must publish:

> in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported class—(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

*Id.* § 78u-4(a)(3)(A)(i). Even though none of the parties have objected to the adequacy of the notice in this case, "in deciding a motion for the appointment of lead plaintiff under the PSLRA, courts have an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA." *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886 (LDH)(SJB), 2020 WL 8225336, at *3 (E.D.N.Y. Dec. 22, 2020) (citing *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05-CV-1898 (SAS), 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005)).

**\*4** The Court finds that the notice meets the PSLRA's requirements. The notice was filed in *Business Wire* on January 24, 2024, the same date as the Complaint. (Rosenfeld Decl. Ex. A, ECF No. 16-1 at 2–3.) The notice summarizes the allegations in the Complaint, defines the relevant class period, and advises any potential lead plaintiffs to "move the Court no later than March 25, 2024." (*Id.*) Courts in this circuit frequently find that publication of the required notice in *Business Wire* serves as sufficient notice for the purposes of the PSLRA. *See, e.g., White v. Nano-X Imaging Ltd.*, Nos. 20-CV-4355 (WFK)(MMH) & 20-CV-4528 (RRM)(MMH), 2022 WL 3973838, at *5 (E.D.N.Y. Aug. 10, 2022) (noting that *Business Wire* is "a widely-circulated, national, business-[oriented] news reporting wire service"), *adopted by* 2022 WL 3867750 (E.D.N.Y. Aug. 30, 2022); *Glick v. Arqit Quantum Inc.*, 666 F. Supp. 3d 222, 229 (E.D.N.Y. 2023) ("*Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published."). Further, all three remaining movants filed the instant motions on March 25, 2024, in response to the notice, by the relevant deadline. 15 U.S.C. § 78u-4(a)(3)(A)(i); *Chitturi*, 2020 WL 8225336, at *3.

Accordingly, the Court finds that publication of the notice is sufficient, and that movants' applications are timely.

### *2. Largest Financial Interest*

The second requirement to support the most adequate plaintiff presumption is whether the movant "in the determination of the court, has the largest financial interest in the relief sought by the class[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). While the PSLRA does not enumerate the factors courts must consider when assessing whether a movant has the largest financial interest, courts in this circuit generally look to:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Yang v. Trust for Advised Portfolios*, No. 21-CV-1047 (FB)(MMH), 2022 WL 970772, at *3 (E.D.N.Y. Mar. 31, 2022) (citing *In re Gentiva Sec. Litig.*, 281 F.R.D. at 112). "Most crucial to the Court's determination is the fourth factor—the approximate financial loss suffered." *Parot v. Clarivate Plc*, No. 22-CV-1371 (ARR)(RLM), 2022 WL 1568735, at *5 (E.D.N.Y. May 18, 2022); *Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, No. 22-CV-9174 (JPC)(SLC), 2023 WL 1879525, at *3 (S.D.N.Y. Feb. 10, 2023) ("[C]ourts have consistently held that the fourth [factor], the magnitude of the loss suffered, is most significant.") (citation omitted).

The Court finds that Lee has the largest financial interest. Lee alleges that, during the class period: "(1) Lee purchased 109,702 BAT American Depository Receipts ("ADRs"); (2) expended $3,854,314 on her purchases of BAT ADRs; (3) retained 37,201 of her BAT ADRs; and, (4) as a result of the disclosure of Defendants' alleged fraud, incurred losses of approximately $170,200 in connection with her Class Period transactions in publicly traded BAT securities." (Lee Mem., ECF No. 18-2 at 12; Lieberman Decl. Ex. A, ECF No. 18-4 at 2–3.) Peters concedes that he does not possess the largest financial interest. (Peters Non-Opp'n, ECF No. 22 at 2.) While Doyle objects to Lee's motion based on the inconsistencies found in her two separately-filed motions, he acknowledges that Lee claims a larger loss. (*See* Doyle Opp'n Mem., ECF No. 25 at 2.)

Accordingly, the Court finds that Lee has the largest financial interest in the litigation of any putative lead plaintiff.

### 3. Rule 23 Requirements

**\*5** The Court must also determine whether the proposed lead plaintiff "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see Darish*, 2021 WL 1026567 at *6. "In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements—typicality and adequacy—are satisfied." *Yang*, 2022 WL 970772, at *3 (quoting *Chitturi*, 2020 WL 8225336, at *5); *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 30 (E.D.N.Y. 2019) (noting a requirement of "only ... a preliminary showing of typicality and adequacy at this stage of the litigation") (internal quotations omitted).

"Lead plaintiffs' claims are typical where each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-CV-4420 (PAE), 2020 WL 5548856, at *5 (S.D.N.Y. Sept. 16, 2020) (internal quotations omitted). "Courts in this circuit have clarified, however, that a lead plaintiff's claims need not be identical to the claims of the class, and that similarity of legal theory may control even in the face of differences of fact." *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 350 (E.D.N.Y. 2018) (cleaned up). Lee meets this requirement because she alleges that, like all members of the purported class, her claims arise from purchasing publicly-traded BAT securities during the class period at prices that have been artificially inflated by Defendants' misrepresentations and omissions, and she was damaged upon the disclosure of those misrepresentations and omissions that drove BAT's share price downward. (Lee Mem., ECF No. 18-2 at 14.) "That 'is all that is required to demonstrate typicality

2024 WL 4351311

at this stage.' " *In re Hebron Tech. Co.*, 2020 WL 5548856, at \*5 (quoting *In re Petrobas Sec. Litig.*, 104 F. Supp. 3d 618, 624 (S.D.N.Y. 2015)).

"The adequacy requirement is satisfied where '(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the [proposed lead plaintiff] and class [have] a sufficient interest in the outcome of the case to ensure vigorous advocacy.' " *Yang*, 2022 WL 970772, at \*4 (quoting *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-864 (SLT)(RER), 2011 WL 3511057, at \*4 (E.D.N.Y. May 31, 2011), *adopted by* 2011 WL 3511045 (E.D.N.Y. Aug. 10, 2011)).

Lee also meets the adequacy standard. *First*, Lee's selected counsel, Pomerantz, has demonstrated that it is qualified and has substantial experience litigating securities fraud cases and serving as lead counsel. (*See* Lieberman Decl. Ex. E, ECF No. 18-8 at 3–6 (listing multiple cases in which Pomerantz was appointed sole and/or co-lead counsel in securities fraud litigations).) *Second*, "[c]ourts find that a plaintiff's interests are not antagonistic to the class where, as here, the case is 'based on alleged violations of the Securities Act where class members are relying on the same statements or omissions as the factual basis of their claims, and where the financial losses are tied to the drop in value' as a result of the false or misleading statements." *Skeels v. Piedmont Lithium Inc.*, No. 21-CV-4161 (LDH) (PK), 2022 WL 1236797, at \*6 (E.D.N.Y. Feb. 4, 2022) (quoting *Xiangdong Chen v. X Fin.*, No. 19-CV-6908 (KAM)(SJB), 2020 WL 2478643, at \*4 (E.D.N.Y. May 13, 2020)). *Third*, Lee indicates her willingness to "zealously and efficiently" litigate the claims on behalf of the class members to achieve the best possible result for the class. (*See* Lieberman Decl. Ex. D (Lee Decl.), ECF No. 18-7 ¶¶ 4–5.) Lee is a sophisticated investor who, after sustaining significant financial losses, considered her duties as lead plaintiff and is willing to accept them. (*See id.* ¶¶ 2–6.) Because Lee has the largest financial stake in the outcome of this litigation, she will be motivated to vigorously pursue recovery on behalf of all class members. *Atanasio*, 331 F.R.D. at 30. Lee has made a sufficient showing at this stage of her adequacy to represent the proposed class.

 **\*6** Therefore, because Lee has the largest financial interest and satisfies the PSLRA Rule 23 requirements, she is entitled to the PSLRA rebuttable presumption as the most adequate lead plaintiff. *Id.*

## 4. Rebuttal of the Presumption

The presumption in favor of the most adequate plaintiff "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see Glick*, 666 F. Supp. 3d at 231.

Doyle argues that Lee is incapable of adequately representing the class because (1) Lee filed two separate motions using two different law firms; and (2) Lee's certifications as to her purported loss amount have been inconsistent. (Doyle Opp'n Mem., ECF No. 25 at 3–8.)

The Court is not persuaded. "The goal of the PSLRA was not to select individuals for lead plaintiff who make no mistakes." *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 399 (S.D.N.Y. 2014) (permitting untimely second motion for appointment as lead plaintiff, even after movant withdrew previous motion, because withdrawal "may have been a procedural miscalculation"). Retaining two separate law firms to file separate motions for the same plaintiff is not a sufficient basis for disqualification. It shows "nothing other than that [the movant] is an eager—if perhaps a little *over* eager—lead plaintiff." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536–37 (S.D.N.Y. 2015) (finding the "competing initial filings" to "raise some questions," but ultimately allowing the presumptive adequate plaintiff to proceed because the mistake was a "strategic miscue," rather than a "gaffe").[3] In fact, Lee acknowledged that she made a mistake due to her eagerness because she "erroneously thought that signing up with two law firms would better secure and serve [her] application[.]" (Lee Supp. Decl., ECF No. 24-2 ¶ 5.) Moreover, upon discovering her mistake, she promptly directed Rosen Law to withdraw one of her motions.

(*Id.* ¶ 7; Not., ECF No. 21.) Therefore, "in keeping with the policy intentions of the PSLRA," the Court will overlook Lee's initial error. *Reitan,* 68 F. Supp. 3d at 399.

The Court also disagrees that discrepancies in Lee's loss estimates in her two certifications eviscerate her adequacy as lead plaintiff. (*See* Doyle Opp'n Mem., ECF No. 25 at 5–8; Doyle Reply, ECF No. 32 at 3–4.) Even if Lee erred in the certification submitted in her now-withdrawn motion, "minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement." *Khunt,* 102 F. Supp. 3d at 539–40 (collecting cases that show minor miscalculations of losses suffered by the presumptively most adequate plaintiff or technical deficiencies in the certifications were not basis for disqualification). Courts disfavor movants for such mistakes when the loss estimates are egregiously inflated and thus exhibit "a certain carelessness about detail that undermines the adequacy of the [movant] as a lead plaintiff in a complex securities class action." *See, e.g.*, *Karp v. Diebold Nixdorf, Inc.*, No. 19-CV-6180 (LAP), 2019 WL 5587148, at \*6 (S.D.N.Y. Oct. 30, 2019) (finding movant inadequate where "exaggerated loss totals originally submitted by the [movant]" represented "an error of some 34%" that movant took two weeks to correct), *adhered to on recons.*, 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019); *see also Rodriguez v. DraftKings Inc.*, Nos. 21 Civ 5739 (PAE) & 21 Civ. 6497 (PAE), 2021 WL 5282006, at \*9 (S.D.N.Y. Nov. 12, 2021) (finding movant inadequate whose PSLRA certification, *inter alia*, "overstates and clouds his losses" and whose loss chart "inadvertently treats certain sales as purchases," thus "obfuscating [his] actual trading activity"). In contrast, Lee's two certifications, although they reflect different loss amounts, do not demonstrate an effort to exaggerate, obfuscate, or overstate her loss. In fact, the loss estimate in Pomerantz's submission *sub judice* is *less than* the withdrawn estimate submitted by Rosen Law.[4] Lee also promptly explained the reason for the discrepancy, stating that she "inadvertently provided Rosen Law with only one of [her] two accounts" and she "did not intend to deceive anyone with her submissions." (Lee Supp. Decl., ECF No. 24-2 ¶ 6; Lee Opp'n Mem., ECF No. 24 at 13.) A thorough review of the two loss charts reveals that the discrepancy may stem from differences in the rounding of the prices per share for the sales and the inclusion of a second account held by Lee. (*Compare* Jean H. Lee Mot., Ex. 3, ECF No. 13-3, *with* Lieberman Decl., Ex. A, ECF No. 18-4 at 2–3). Viewed as a whole, Lee's errors were not so "numerous and varied" that they call into doubt Lee's adequacy to be lead plaintiff. *Cf. Rodriguez,* 2021 WL 5282006, at \*9. Moreover, the discrepancy in Lee's loss estimate calculation does not "[strike] at the core of the PSLRA's lead inquiry: determining which movant holds the largest financial stake in the litigation." *Karp,* 2019 WL 5587148, at \*6. Lee's financial interest still far surpasses the losses claimed by Doyle. (*Compare* Lee Mem., ECF No. 18-2 at 12 (loss of $170,200) *with* Doyle Mem., ECF No. 15 at 4 (loss of $68,813)). These facts undermine Doyle's argument that Lee's inconsistent certifications render her inadequate to serve as lead plaintiff.

 **\*7**  For these reasons, the cases Doyle relies on to contest Lee's adequacy (*see* Doyle Opp'n Mem., ECF No. 25 at 3–4) are distinguishable. For instance, in *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at \*4 (D. Ariz. Apr. 7, 2008), the court disqualified a movant was not only because of his "blatant gaffe" of filing a motion when he was already a member of a competing movant-investor group in the same case, but also because he failed to meet the typicality prong of Rule 23 and had a lower financial interest. These scenarios do not exist here, where Lee is a solo movant with the greatest financial interest who easily satisfies the typicality prong of Rule 23. Similarly, in *Pardi v. Tricida, Inc.*, No. 21-CV-00076-LHK, 2021 WL 1381271, at \*2 (N.D. Cal. Apr. 2, 2021), the evidence showed that the investor group could not "function cohesively" as lead plaintiff because of intergroup dynamics. No such evidence exists here. In *Singer v. Nicor, Inc.*, No. 02-CV-5168, 2002 WL 31356419, at \*2 (N.D. Ill. Oct. 17, 2002), the court found "little confidence in the accuracy" of the movant's claimed losses when one firm estimated $643,325.41, while another firm estimated $96,934 for the same movant (*i.e.*, a $500,000 discrepancy). In contrast, the relatively minor discrepancy between Lee's two loss estimates is only $11,707.30 (*i.e.*, $181,907.30 – $170,200). Finally, *McDermid v. Inovio Pharms., Inc.*, 467 F. Supp. 3d 270, 279–80 (E.D. Pa. 2020) concerned a possible collusion among law firms to create one investor group to act as lead plaintiff after one member had already filed dueling motions. In contrast, nothing in the record before this Court suggests any such collusion between Rosen Law and Pomerantz.

For these reasons, Doyle has not submitted sufficient evidence to rebut the presumption that Lee is the most adequate plaintiff.[5]

### B. Approval of Lead Counsel

Case 3:24-cv-03869-EMC    Document 53-1    Filed 10/04/24    Page 8 of 9
GARY DAVID, individually and on behalf of all others similarly..., Slip Copy (2024)
2024 WL 4351311

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "The lead plaintiff's right to select and retain counsel is not absolute." *Glick*, 666 F. Supp. 3d at 233 (citation omitted). However, "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice ... if necessary to protect the interests of the class." *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 211 (E.D.N.Y. 2019); *see also Brady*, 324 F. Supp. at 352 ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention.") (internal quotations omitted). "In assessing a plaintiff's selection and retention to represent a purported class, courts give significant weight to counsel's experience." *Darish*, 2021 WL 1026567, at *8; *Reitan*, 68 F. Supp. 3d at 401 ("When making the decision to approve proposed lead counsel, courts in the Second Circuit have emphasized the counsel's experience.").

Lee argues that Pomerantz is "highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors." (Lee Opp. Mem., ECF No. 24 at 15.) In support of the application, Lee includes her chosen counsel's detailed resume describing the firm's experience with securities class actions. (Lieberman Decl. Ex. E, ECF No. 18-8 at 3–6.) "Courts in this Circuit have previously approved the Pomerantz Firm as lead plaintiffs' counsel in securities class actions on a number of occasions." *Elstein v. Net1 UEPS Techs., Inc.*, 13-CV-9100 (ER), 2014 WL 3687277, at *8 (S.D.N.Y. July 23, 2014); *see also Armstrong v. Med. Properties Tr., Inc.*, No. 23-CV-8597, 2024 WL 3784445, at *5 (S.D.N.Y. Aug. 13, 2024) ("Pomerantz is highly experienced in securities litigation and is capable of adequately and effectively representing the class."). "Having reviewed the firm's submissions as to its pertinent background and experience, including its experience litigating securities class actions, the Court finds that it is well qualified to serve as lead counsel." *Turpel v. Canopy Growth Corp.*, 704 F. Supp. 3d 456, 472 (S.D.N.Y. 2023) (appointing Pomerantz as lead counsel). The Court therefore approves Lee's selection of Pomerantz as lead plaintiff's counsel.

## III. CONCLUSION

 **\*8** For the foregoing reasons, Lee's motion for appointment as lead plaintiff and approval of lead plaintiff's counsel at ECF No. 18 is **granted**, Lee is appointed lead plaintiff, and Pomerantz is appointed lead counsel. Doyle and Peters's motions at ECF Nos. 14 and 6 are **denied**.

**SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 4351311

Footnotes

1    All citations to documents filed on ECF refer to the ECF document number and pagination unless otherwise indicated.

2    The Honorable Ann M. Donnelly referred the motions to the undersigned for decision. (Apr. 4, 2024 Order.)

3    Doyle attempts to distinguish *Khunt* because there, the two separate motions were filed on behalf of "related but different movants." (*See* Doyle Reply, ECF No. 32 at 3 & n.3), However, this distinction is immaterial because the individual movant and his company were still "controlled by the same person." *Id.* at 536. Therefore, the holding in *Khunt* is still persuasive.

4    Specifically, Rosen Law estimated Lee's incurred loss to be "approximately $181,907.30," (Jean H. Lee Mot., ECF No. 13 at 5; *id.* Exs. 2–3, ECF Nos. 13-2 & 13-3), while Pomerantz estimates her incurred loss to be "approximately $170,200." (Lee Mem., ECF No. 18-2 at 12; Lieberman Decl. Ex. A, ECF No. 18-4 at 2–3; *id.* Ex. C, ECF No. 18-6.)

5    By letter dated September 11, 2024, Doyle alerted the Court to *Wayne v. Maxeon Solar Techs., Ltd.*, No. 3:24-cv-03869 (EMC) (N.D. Cal.), a securities class action in which Pomerantz opposes a motion for appointment as lead plaintiff for similar reasons as Doyle opposes Lee's motion in this action—*i.e.*, because that movant filed two conflicting motions using different law firms. (Doyle Supp. Not., ECF No. 35 at 2.) The Court remains unpersuaded. As Pomerantz explains, as of the date of Pomerantz's response, the movant

2024 WL 4351311

in *Wayne* did not clarify the reasons for their mistake. (Lee Ltr., ECF No. 36 at 1.) In contrast, Lee explained in a detailed declaration her misunderstanding that led to the two motions being filed and promptly rectified the mistake. (*See* § II.B.4, *supra*.)

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---