ANNA ERICKSON WHITE (CA SBN 161385)
AWhite@mofo.com
RYAN M. KEATS (CA SBN 296463)
RKeats@mofo.com
LARA ANDERS (CA SBN 340017)
LAnders@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
MAXEON SOLAR TECHNOLOGIES, LTD.,
WILLIAM MULLIGAN, and KAI
STROHBECKE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEYAKUMAR VS MENON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MAXEON SOLAR TECHNOLOGIES, LTD., WILLIAM MULLIGAN, and KAI STROHBECKE,<br><br>Defendants. | Case No.:  3:24-cv-03869-EMC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**<br><br><u>CLASS ACTION</u><br><br>Judge:       Hon. Edward M. Chen<br>Date:        April 10, 2025<br>Time:        1:30 p.m.<br>Courtroom: 5, 17th Floor |

REPLY ISO DEFENDANTS' MOTION TO DISMISS
sf-6579931

CASE NO. 3:24-cv-03869-EMC

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  PLAINTIFF FAILS TO PLEAD A MATERIALLY FALSE OR MISLEADING STATEMENT ........................................................................................................ 1

    A.   The Forward-Looking Statements Are Not Actionable. .......................................... 1

    B.   The Statements of Corporate Optimism Are Not Actionable. ................................ 3

    C.   Plaintiff Fails to Show That Any Challenged Statement Was False........................ 4

        1.   Plaintiff Fails to Plead Falsity of the SunPower Statements........................ 4

        2.   Plaintiff Fails to Plead the Falsity of the Liquidity Statements. .................. 6

        3.   Plaintiff Fails to Plead Falsity of the Opinion Statements. ........................... 9

III. PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ................... 9

    A.   The CW Allegations Do Not Support Any Scienter Inference. ............................... 9

    B.   Plaintiff Fails to Plead Scienter Based on Access to Information. ........................ 11

    C.   The Core Operations Theory Does Not Apply. ...................................................... 12

    D.   The Temporal Proximity Allegations Do Not Support Scienter............................ 13

    E.   The Corporate Reshuffling Allegations Do Not Support Scienter......................... 14

    F.   Plaintiff Does Not Offer a Cogent and Compelling Theory of Fraud.................... 14

IV.  PLAINTIFF FAILS TO PLEAD CONTROL PERSON CLAIMS .................................. 15

V.   CONCLUSION .................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Amgen Inc. Sec. Litig.*,
No. CV072536PSGPLAX, 2014 WL 12585809 (C.D. Cal. Aug. 4, 2014) ........................... 11

*In re Amgen Inc. Sec. Litig.*,
544 F. Supp. 2d 1009 (C.D. Cal. 2008) ................................................................................. 8

*In re Amylin Pharms., Inc. Sec. Litig.*,
No. 01CV1455 BTM (NLS), 2003 WL 21500525 (S.D. Cal. May 1, 2003) .......................... 8

*In re Apple Inc. Sec. Litig.*,
No. 19-CV-02033-YGR, 2020 WL 2857397 (N.D. Cal. June 2, 2020) .................................. 4

*Berson v. Applied Signal Technology, Inc.*,
527 F.3d 982 (9th Cir. 2008) ............................................................................................... 12

*Brendon v. Allegiant Travel Co.*,
412 F. Supp. 3d 1244 (D. Nev. 2019) .................................................................................. 14

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ................................................................................................. 4

*In re Cadence Design Sys., Inc. Sec. Litig.*,
692 F. Supp. 2d 1181 (N.D. Cal. 2010) ................................................................................. 6

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.*,
856 F.3d 605 (9th Cir. 2017) ............................................................................................ 7, 14

*In re Countrywide Fin. Corp. Derivative Litig.*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ................................................................................. 6

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ............................................................................................... 2

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ............................................................................................. 11

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
81 F.4th 918 (9th Cir. 2023) ............................................................................................... 11

*In re Extreme Networks, Inc. Sec. Litig.*,
No. 15-CV-04883-BLF, 2018 WL 1411129 (N.D. Cal. Mar. 21, 2018) .............................. 11

*Hall v. Rent-A-Ctr., Inc.*,
No. 4:16CV978, 2017 WL 6398742 (E.D. Tex. Oct. 19, 2017) ........................................... 14

*Hatamian v. Advanced Micro Devices, Inc.*,
  87 F. Supp. 3d 1149 (N.D. Cal. 2015) ............................................................................... 8

*In re LDK Solar Sec. Litig.*,
  584 F. Supp. 2d 1230 (N.D. Cal. 2008) ............................................................................. 6

*In re LendingClub Sec. Litig.*,
  254 F. Supp. 3d 1107 (N.D. Cal. 2017) ............................................................................ 15

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016) ....................................................................................... 5, 6

*Loritz v. Exide Techs.*,
  No. 2:13-CV-2607-SVW-EX, 2014 WL 4058752 (C.D. Cal. Aug. 7, 2014) ...................... 6

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ......................................................................................... 12

*In re MF Global Holdings Ltd. Sec. Litig.*,
  982 F. Supp. 2d 277 (S.D.N.Y. 2013) ................................................................................ 7

*Monachelli v. Hortonworks, Inc.*,
  225 F. Supp. 3d 1045 (N.D. Cal. 2016) ........................................................................ 8, 10

*Mulderrig v. Amyris, Inc.*,
  492 F. Supp. 3d 999 (N.D. Cal. 2020) .............................................................................. 13

*Mulligan v. Impax Lab'ys, Inc.*,
  36 F. Supp. 3d 942 (N.D. Cal. 2014) ................................................................................. 4

*In re Myriad Genetics, Inc. Sec. Litig.*,
  No. 219CV00707DBBDBP, 2021 WL 977770 (D. Utah Mar. 16, 2021) ............................ 14

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ............................................................................................. 9

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) .......................................................................................... 11

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ........................................................................................................... 9

*In re Plantronics, Inc. Sec. Litig.*,
  No. 19-CV-07481-JST, 2022 WL 3653333 (N.D. Cal. Aug. 17, 2022) .............................. 13

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) .................................................................................. 2, 4, 11

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021) .......................................................................................... 14

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017)..................................................................................... 3

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014)........................................................................ 12, 13, 14

*Roberti v. OSI Sys., Inc.*,
    No. CV 13-9174-MWF VBKX, 2015 WL 1985562 (C.D. Cal. Feb. 27, 2015)..................... 14

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001)...................................................................................... 9

*Shenwick v. Twitter, Inc.*,
    282 F. Supp. 3d 1115 (N.D. Cal. 2017) ............................................................... 12, 13

*Siracusano v. Matrixx Initiatives, Inc.*,
    585 F.3d 1167 (9th Cir. 2009), *aff'd*, 563 U.S. 27, 131 S. Ct. 1309, 179 L. Ed.
    2d 398 (2011) ...................................................................................................... 14, 15

*In re Snap Inc. Sec. Litig.*,
    No. 217CV03679SVWAGR, 2018 WL 2972528 (C.D. Cal. June 7, 2018)............................. 7

*In re SunPower Sec. Litig.*,
    No. C 09-5473 RS, 2011 WL 7404238 (N.D. Cal. Dec. 19, 2011) ........................................ 14

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)........................................................................................ 7

*Warshaw v. Xoma Corp.*,
    74 F.3d 955 (9th Cir. 1996)..................................................................................... 3, 4

*Williams v. Duke Energy Int'l, Inc.*,
    681 F.3d 788 (6th Cir. 2012)..................................................................................... 7

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)........................................................................... 10, 12, 14

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiff's Opposition fails to salvage a Complaint that offers only vague speculation and the kind of fraud by hindsight allegations that, for decades, have been insufficient in the Ninth Circuit.  Plaintiff's claims rely on the allegations of two CWs.  As the Motion showed, the CWs' vague references to "concerns" and what "may have been considered" do not contradict any challenged statement, much less plead what any Defendant knew when the statements were made.

Plaintiff argues that the statements about SunPower were false because Maxeon was already in breach of the Supply Agreement's non-circumvention provision and therefore knew Maxeon would be unable to ramp sales following termination of that agreement.  But Plaintiff still does not even describe the terms of the non-circumvention provision's prohibitions, plead any facts showing that anyone at Maxeon ever breached them, or demonstrate how those unspecified breaches meant that Maxeon knew it would be unable to ramp sales in the future.  As for Maxeon's liquidity statements, the Opposition continues to baldly assert that Defendants knew Maxeon would not generate sufficient cash flows to meets its obligations over the next twelve months.  Still missing, however, are any facts supporting that assertion, such as the assumptions (e.g., projected cash flows, anticipated expenses) underlying the analysis.

Plaintiff also fails to offer any compelling theory of fraud, which is an independent ground for dismissal.  Instead, the Opposition concedes that Plaintiff fails to allege any motive and comes nowhere close to clearing the high hurdle for pleading a strong inference of fraudulent intent in the absence of one.  The Complaint should be dismissed.

## II.     PLAINTIFF FAILS TO PLEAD A MATERIALLY FALSE OR MISLEADING STATEMENT

### A.     The Forward-Looking Statements Are Not Actionable.

Plaintiff does not dispute that Statements 1, 4, and 6 are forward-looking.  (Opp. 15.)  As the Motion showed, those forward-looking statements are protected by the Reform Act's Safe Harbor for two independent reasons:  (1) they were accompanied by meaningful cautions; and (2) Plaintiff does not plead facts supporting a strong inference that the statements were made with

actual knowledge of their falsity. (MTD 10-11.)  The Opposition fails to overcome either prong.

As to the first prong of the Safe Harbor, Plaintiff argues that Maxeon's cautionary language was boilerplate, the disclosed risks were already occurring, and Maxeon repeated the same risk disclosures in its earlier SEC filings. (Opp. 15-16.)  Those attacks lack merit.

First, Maxeon's disclosures were far from boilerplate.  Maxeon's cautions addressed challenges arising from the termination of Maxeon's contract with SunPower, customer demand volatility, and liquidity constraints. (MTD 11; App'x B.)  Those cautions are more detailed and specific than what is required.  For example, the Ninth Circuit has found the following cautions to be sufficient to protect forward-looking statements about projected revenue, sales growth, and qualitative statements about future performance:  "Actual results may differ materially from those expressed or implied," and "ability to continue increasing sales performance worldwide could cause variance in the results."  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059-60 (9th Cir. 2014); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010).

Second, Plaintiff's argument that Maxeon's detailed risk factors failed to disclose that certain risks were already occurring is directly contradicted by the plain language of the risk factors. They cautioned that, "our revenues ***have been*** and will continue to be materially negatively impacted" as a result of the termination of the Supply Agreement; "cash flows ***have been***, and may continue to be, negatively impacted"; "global solar cell and panel production capacity and supply ***have been materially*** increasing"; and "the solar industry ***has experienced*** and may continue to experience periods of structural imbalance between supply and demand[.]"  (App'x B at 3, 4, 6 (emphasis added).)[1]

Third, contrary to Plaintiff's argument, Maxeon's Class Period filings did not merely repeat the cautionary language from its earlier May and June 2023 disclosures.  For example, Maxeon's November 15, 2023 Form 6-K included additional cautions about the risks to its business given the termination of the Supply Agreement. (Ex. 5 at 26-27.)  It also updated Maxeon's cautions about

---

[1] Plaintiff's authorities are inapposite. (Opp. 15.)  Unlike here, those cases involved risk factors that were challenged in the complaint, which contained particularized facts showing that the risk factor statements were themselves false or misleading when made.

the risks to its revenues, revised them to reflect recent developments in market conditions, and reiterated that Maxeon "currently lack[ed] the visibility to reasonably quantify our expected long-term capital requirements and our ability to fully meet our long-term liquidity needs" and "can make no assurance that it will be able to successfully obtain additional financing." (Ex. 5 at 27, 28, 31.) In other words, as the Motion showed, Maxeon updated investors throughout the Class Period and cautioned them about the risks. (MTD 2-6.)

As to the second prong of the Safe Harbor, Plaintiff obliquely claims Defendants knew that the statements were false or misleading when made. (Opp. 16-17.) But Plaintiff fails to plead any facts supporting a strong inference that any Defendant had actual knowledge of their falsity, as required. That is an independent ground for dismissal of those statements. (MTD 11.)

### B.    The Statements of Corporate Optimism Are Not Actionable.

The Opposition fails to overcome Defendants' showing that Statements 1 and 5 are inactionable corporate optimism. (MTD 11-12.)

First, Defendants showed that Mr. Mulligan's vague and subjective statement, "In the fourth quarter, Maxeon delivered financial results largely in line with our expectations," is inactionable. (MTD 11-12.) In response, Plaintiff argues that context matters and points to two utility-scale contract delays that occurred in early 2024. (Opp. 5, 13-14.) But the context here is that Maxeon's Q4 2023 results were, in fact, "largely in line" with guidance for that quarter. (*Compare* Ex. 5 at 6 *with* Ex. 7 at 6.) Also, investors could compare those reported results to the earlier guidance and decide for themselves whether results were in line with expectations. And alleged ***delays in early 2024*** say nothing about ***results for Q4 2023***.

Plaintiff's authorities are inapposite. In *QSI*, the Ninth Circuit found that the statements regarding prospective sales in the pipeline "went beyond 'feel good' optimistic statements" where defendants provided "a concrete description of the past and present state of the pipeline," compared those results to previous quarters, and detailed what proportion of the markets they believed were undeveloped. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017). In *Warshaw*, defendants responded to an analyst report detailing adverse clinical study data for their pharmaceutical product by attacking the report as "scientifically wrong," "irresponsible," and

asserting that "everything is going fine." *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). And in *Impax*, the court held that the statements about significant manufacturing and quality control improvements were actionable because they "contain[ed] factual representations at their core—that Defendants had responded to the FDA Warning Letter by instituting various changes to the manufacturing and/or quality control procedures or processes." *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 967 (N.D. Cal. 2014).

Second, Mr. Mulligan's statement that eliminating the markup SunPower had historically added to Maxeon's products would "enable our plans to aggressively ramp sales in the U.S." is also inactionable corporate optimism. (MTD 11-12.)  In response, Plaintiff merely asserts that there were "significant obstacles" to success. (Opp. 14.)  But there always are.  What's more, Maxeon's detailed risk factors cautioned investors about the obstacles. (*See, e.g.*, App'x B at 3.)

Plaintiff's authority involved more definite statements.  In *Apple*, the defendants referenced sales data to claim that sales had "got off to a really great start" and indicated there was no evidence of "wait" in the data when addressing concerns about customers delaying upgrades to devices.  Just days later, the defendants then cut production lines for those products. *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *15 (N.D. Cal. June 2, 2020).

### C.    Plaintiff Fails to Show That Any Challenged Statement Was False.

As the Motion showed, Plaintiff fails to plead with particularity contemporaneous statements or conditions showing the false or misleading nature of the statements when made. (MTD 12.)  In response, Plaintiff emphasizes that he is relying on an omissions theory.  (Opp. 7 n.3.)  But the securities laws "prohibit[] '*only* misleading and untrue statements, not statements that are incomplete.'" *Intuitive Surgical*, 759 F.3d at 1061 (citing *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).  Plaintiff fails to plead any such statements.

#### 1.    Plaintiff Fails to Plead Falsity of the SunPower Statements.

Defendants showed that the Complaint's allegations are insufficient to plead the falsity of Statements 1 and 2.  (MTD 12-15.)  In response, the Opposition ignores many of the Motion's arguments and fails to demonstrate that the CW allegations plead the falsity of either statement.

First, the Motion demonstrated that the CWs were not in positions to possess information

about Maxeon's interactions with SunPower and that the vague allegations they offer are unreliable. (MTD 13.)   In response, the Opposition rehashes the Complaint's allegations about the CWs' positions and calls Defendants' arguments (which are supported by binding Ninth Circuit authority) "confounding." (Opp. 8-10.)  But Plaintiff fails to show that either CW has knowledge of anyone at Maxeon interacting with anyone at SunPower in violation of the Supply Agreement's non-circumvention provision.  Those failures are fatal.  (MTD 13.)

Second, Defendants showed that the CW allegations are not indicative of falsity because Plaintiff fails to allege the terms of the non-circumvention provision or any conduct inconsistent with those (unspecified) terms. (MTD 13-14.)  The Opposition offers only silence in response.

Third, Plaintiff tries to overcome the insufficient CW allegations by asserting that they are "corroborated" by "SunPower itself." (Opp. 7, 9.)  But recitations of SunPower's mere assertions (as part of a dispute with Maxeon) that the non-circumvention provision had been breached does not demonstrate that either challenged statement (made months later) was false.

Finally, Plaintiff fails to meaningfully distinguish Defendants' on-point and binding authority. (MTD 13-15.)  Plaintiff offers only the conclusory responses that "the CWs here *were* in a position to personally know the information alleged" and that their statements "*do* contradict Mulligan's[.]" (Opp. 8 n.4.)  As discussed above and in the Motion, they weren't and don't.

Plaintiff's authorities once again demonstrate the insufficiency of his allegations.  In *Lloyd*, the plaintiff alleged that the defendant bank holding company made misstatements about the likelihood that loans to its largest borrower would be repaid.  In support of falsity, plaintiff relied (among other things) on a witness statement from the borrower's COO that included details of meetings at which the defendant CEO learned facts and made statements inconsistent with the challenged statements. *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1204 (9th Cir. 2016).  The court found those allegations to be reliable because they were "specific in time, context, and details, and involved important communications from a chief executive officer to his Board." *Id.* at 1208.  By contrast, here, Plaintiff relies on lower-level employees who lack firsthand knowledge and offer vague statements such as that "Maxeon employees would still have conversations with customers 'under the rug.'" (¶ 65.)  The Reform Act requires more.  (MTD 12-15.)

Plaintiff's remaining authorities involve allegations with even more indicia of reliability than those in *Lloyd*. In *Cadence*, plaintiffs submitted a declaration revealing the CW's identity, setting forth his standing as a consultant to Cadence's customers, and establishing that he had access to reliable information about the activities at issue. *In re Cadence Design Sys., Inc. Sec. Litig.*, 692 F. Supp. 2d 1181, 1189, n.2, 1190 (N.D. Cal. 2010). And in *LDK*, plaintiffs quoted details from emails sent by the defendant company's controller in which he provided facts that directly contradicted the challenged accounting and inventory statements. *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1242-43 (N.D. Cal. 2008). Plaintiff offers no such allegations here.[2]

### 2. Plaintiff Fails to Plead the Falsity of the Liquidity Statements.

As the Motion demonstrated, Plaintiff's challenges to Maxeon's liquidity statements are foreclosed by directly-on-point authorities that the Opposition fails to overcome. (MTD 15-16.) In response, the Opposition fails to demonstrate the falsity of any of Statements 3-7.

First, Plaintiff concedes that Statement 3 is "technically true." (Opp. 9.) Yet Plaintiff still argues that Maxeon somehow misled investors about the impact of its contract liabilities on its cash flows given the amounts of those contract liabilities to be recognized in later quarters. Plaintiff's argument ignores that Maxeon disclosed both the current amounts of those contract liabilities and the amounts of those liabilities, net of that current portion, which would be amortized in future quarters. (Ex. 5 at 11.)

Second, Plaintiff fails to demonstrate the falsity of Maxeon's November 15, 2023 belief that it would have sufficient cash to meet its obligations for the next twelve months. (Stmt. 4.) Plaintiff concedes that he lacks any facts about the inputs to the liquidity analysis, such as Maxeon's

---

[2] Plaintiff also argues that the vague statements offered by the two CWs are reliable because they corroborate one another. Again, the authorities Plaintiff cites in support involve categorically different allegations from those alleged here. In *Loritz v. Exide Techs.*, 2014 WL 4058752, at *9-*11 (C.D. Cal. Aug. 7, 2014), plaintiff alleged statements from more than a dozen confidential witnesses, many of whom demonstrated that the company had systems in place for reporting environmental compliance issues up the chain of command such that defendants would have been made aware of the company's dangerously high arsenic emissions and groundwater pollution. And *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1051 (C.D. Cal. 2008) involved statements from numerous CWs from offices throughout the company at various seniorities (including senior executives) who all similarly attested that Countrywide was pushing through loans without adherence to its underwriting standards.

projected cash flows, anticipated operating expenses, or expected capital expenditures.  (Opp. 11.)  Instead, the Opposition rehashes the Complaint's allegations that cash flow allegedly "was considered 'bad' by the summer of 2023"; that "lenders express[ed] concern . . . as late as September 2023"; and that Maxeon "was nearing the peak of the prepayment amortization schedule."  (Opp. 10.)  But the Reform Act requires particularized facts that contradict the challenged statements, not vague "considerations" and "concerns" expressed months earlier.

Plaintiff's authorities are, once again, inapposite.  In *Vivendi*, the plaintiffs alleged statements from an employee present at meetings during which the defendant CFO commented that Vivendi was "running out of cash" and "nearing bankruptcy," along with details of correspondence between the CFO and CEO discussing the potential liquidity crisis.  *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 235 (2d Cir. 2016).  Thereafter, the company issued a press release in response to commentators who said Vivendi needed a quick cash injection, arguing that "owing to its strong free cash flow," Vivendi was "confident of its capacity to meet its anticipated obligations over the next year."  *Id.* at 237.  Just two days later, Vivendi negotiated for hundreds of millions of dollars in financing.  *Id.*  Plaintiff alleges nothing like that here.[3]

Third, Plaintiff also fails to demonstrate the falsity of Maxeon's April 8, 2024 statement that Q4 2023 results were largely in line with expectations.  (Stmt. 5.)  Plaintiff points to two customer delays in early 2024 and asserts that Maxeon's cash had become "dire" by March 2024.  (Opp. 11-12.)  But those events *occurred in 2024* and say nothing about whether Maxeon's *results for the period ending December 31, 2023* were in line with expectations.  What's more, Plaintiff does not and cannot challenge Maxeon's Q4 2023 financial results.  Those unchallenged metrics

---

[3] Plaintiff's remaining authorities offer even less support.  The Ninth Circuit *affirmed dismissal* in *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.*, Inc., 856 F.3d 605, 623 (9th Cir. 2017).  Entirely inapposite is *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012), in which the court addressed a RICO claim not subject to the Reform Act.  *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *6 (C.D. Cal. June 7, 2018) addressed statements that expressly discussed "litigation-related risks facing the Company" but omitted a pending litigation.  The court held that, because the statement was materially misleading on its face, plaintiffs were not required to disclose the details of defendants' analysis about what they were required to disclose under the accounting standards.  In *In re MF Global Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 290 (S.D.N.Y. 2013), falsity was supported by allegations of fraudulently recorded deferred taxes and investments increased to levels that violated the company's own trading limits.

squarely foreclose his claims, as held in *Verifone* and *Hortonworks*.  (MTD 15-16.)

The Opposition fails to meaningfully distinguish *Verifone* and *Hortonworks*.  Plaintiff argues "every allegation [in *Verifone*] relied on a failure to disclose a forecast of future sales." (Opp. 13.)  But that's not right.  Rather, plaintiffs' allegations in that case included defendants' alleged failure to disclose that results had been boosted by atypical one-time orders and that orders had slowed.  (MTD at 15.)[4]  As for *Hortonworks*, Plaintiff says his allegations are different because Maxeon failed to disclose "then-known, relevant, and material facts."  (Opp. 13.)  But the *Hortonworks* plaintiffs said the same in their failed attempt to avoid dismissal.  *Monachelli v. Hortonworks, Inc.*, 225 F. Supp. 3d 1045, 1054-55 (N.D. Cal. 2016) (allegations that defendants "omit[ed] facts and circumstances that could have shed light on the strain its rapid growth was having on its cash sources" including that they "did not disclose that they were 'planning a secondary offering that would be announced and . . . filed with the SEC in *just six weeks.*'").

Plaintiff also misplaces his reliance on the district court decisions in *Hatamian* and *Amylin*. (Opp. 11 n.6, 12.)  In *Hatamian v. Advanced Micro Devices, Inc.*, 87 F. Supp. 3d 1149, 1159-60, n.6 (N.D. Cal. 2015), defendants' statements were contradicted by, among other things, an expert with 25 years-experience in the industry who analyzed data inconsistent with the statements, defendants' subsequent admissions, and allegations from CWs.  The plaintiffs in *In re Amylin Pharms., Inc. Sec. Litig.*, 2003 WL 21500525, at *9-10 (S.D. Cal. May 1, 2003) pled details of adverse clinical trial data and details from minutes of a meeting with the FDA that contradicted the challenged statements.  Here, Plaintiff pleads no similarly detailed allegations.

Fourth, Plaintiff fails to demonstrate the falsity of Maxeon's April 30, 2024 statements. Plaintiff does not even offer argument about Statement 6 much less point to facts showing that the Maxeon team was not "highly focused on reducing manufacturing costs, OPEX rationalization and

---

[4] Contrary to the Ninth Circuit's binding decision in *Verifone*, Plaintiff argues that a district court decision allows him to premise a securities fraud claim on the disclosure of accurate historical data. (Opp. 11 n.6 (citing *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1020 (C.D. Cal. 2008)).) Of course, that is not right.  Rather, in *Amgen*, defendants' representations that the company marketed its pharmaceuticals "for their approved indications" were contradicted by detailed allegations about "a sophisticated and multifaceted scheme to improperly push [those products] for unapproved indications and populations."  *Amgen*, 544 F. Supp. 2d at 1020, 1034.

liquidity management to enable a return to profitability." As for Statement 7, Plaintiff argues Maxeon already knew it would be unable to continue as a going concern but fails to identify contemporaneous facts in support of that claim. He also says nothing contradicting Defendant's statement that one of the reasons its annual report was delayed was because of "ongoing work required in connection with the assessment of the Company's ability to continue as a going concern, including the ongoing analysis of the Company's strategic options." (Stmt. 7; Opp. 12.)

### 3.    Plaintiff Fails to Plead Falsity of the Opinion Statements.

As the Motion showed, Plaintiff fails to demonstrate the falsity of the two challenged opinions. (MTD 16-17.) In response, Plaintiff concedes Statement 4 is an opinion. (Opp. 10.) As for Statement 5, Plaintiff asserts only that Maxeon "expressed 'certainty' about the [] financial results it delivered during that quarter." (Opp. 12.) That argument fails based on the plain language of the statement, and Plaintiff offers no authority that even suggests otherwise.

Plaintiff still fails to show the objective or subjective falsity of either statement. (MTD 16-17.) As discussed above, Plaintiff fails to demonstrate objective falsity. As for subjective falsity, Plaintiff fails to identify any fact, let alone any "particular (and material) fact," regarding any Defendant's state of mind, the basis for their opinions, or their inquiry into the facts. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015).

### III.    PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

As the Motion demonstrated, Plaintiff's Section 10(b) claim fails for the additional, independent reason that Plaintiff fails to plead a strong inference of scienter. (MTD 17-22.) The Reform Act's "exacting pleading obligation" for scienter "has teeth." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020). Plaintiff must allege "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (quotation marks omitted). The Opposition fails to demonstrate that any of the Complaint's allegations, individually or when considered holistically, support an inference of scienter.

### A.    The CW Allegations Do Not Support Any Scienter Inference.

The Opposition concedes that Plaintiff must establish the CW's reliability and personal

knowledge, and that the CW allegations must themselves be indicative of scienter. (MTD 18-19; Opp. 18.) The Opposition fails to meet that standard for either of the two CWs.

**CW-1.** With respect to CW-1's allegations about SunPower, the Opposition argues only that CW-1 had direct contact with each Individual Defendant. (Opp. 19.) Yet Plaintiff still does not point to any allegation in the Complaint indicating that either Mr. Mulligan or Mr. Strohbecke were ever aware of any of the vague hearsay that CW-1 alleges about SunPower.

As for CW-1's allegations regarding liquidity, Plaintiff argues that the Individual Defendants "were presented with *a series of financing options from lenders who expressed their doubt about Maxeon's ability to continue as a going concern.*" (Opp. 18 (citing ¶ 112).) That is not what the Complaint alleges. Rather, the allegations are that "lenders expressed concern" (without identifying which ones or to whom) and that "Strohbecke [was] very involved in discussing issues, such as financing from lenders and from these conversations '*a lot of options were presented to Kai and Bill.*'" (¶ 112.) Missing is any allegation that lenders expressed their concerns to either Mr. Mulligan or Mr. Strohbecke or that anyone at Maxeon ever raised those concerns with them.[5] Nor, in any event, do vague "concerns" demonstrate that Maxeon's liquidity analysis was inaccurate or that either Mr. Mulligan or Mr. Strohbecke knew that to be the case.[6] And, as the Opposition concedes, Plaintiff fails to plead any details about the analysis that Maxeon actually performed. (Opp. 18-19.) As Defendants showed, that is fatal. (MTD 18.)

**CW-2.** As discussed in the Motion and in Section II above, CW-2's allegations fail to plead facts demonstrating that any challenged statement was false at the time it was made. What's more, Plaintiff now concedes that "CW-2 did not have direct contact with Defendants." (Opp. 19.) Binding authority ignored in the Opposition shows that CW-2's lack of knowledge about what

---

[5] It is also insufficient for Plaintiff to vaguely allege that Mr. Strohbecke was included "on all correspondences regarding the various matters CW-1 worked on," (¶ 40), without any details about the contents of any such correspondence. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).

[6] As for Maxeon's May 2024 announcement about securing funding from TZE (Opp. 18), on-point authority cited in the Motion demonstrates that subsequent financing announcements do not render false the earlier liquidity predictions, much less demonstrate that they were made with fraudulent intent. (MTD 16 (citing *Hortonworks*, 225 F. Supp 3d at 1054-55).)

Defendants knew renders his allegations insufficient.  (MTD 19.)

Plaintiff's authority is inapposite.  The court in *In re Extreme Networks, Inc. Sec. Litig.*, 2018 WL 1411129, at *27 (N.D. Cal. Mar. 21, 2018) found CW allegations indicative of scienter where two of the CWs alleged details of "personal conversations" with the individual defendant during which they discussed facts inconsistent with the challenged statements.  Here, by contrast, Plaintiff fails to plead any details about any such discussions with either Individual Defendant.

### B.    Plaintiff Fails to Plead Scienter Based on Access to Information.

As the Motion demonstrated, Plaintiff cannot plead scienter based on generalized allegations about access to information.  Rather, Plaintiff must plead details about the reports and data to which defendants had access and that contradict the challenged statements.  (MTD 19.)  In response, Plaintiff concedes the Complaint lacks such details and claims they are not required.  (Opp. 20 n.10.)  The Ninth Circuit disagrees, as *Lipton* and *Intuitive Surgical* show.  (MTD 19.)

Plaintiff's authorities demonstrate what is required, and it is missing here.  In *NVIDIA*, the company understated revenue from crypto miners by over $1 billion.  *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918 (9th Cir. 2023).  The plaintiff's scienter allegations were supported by allegations from CWs who established that the defendant personally reviewed the company's sales data both through its centralized databased and during sales meetings that were described as being as detailed as "proctology exams."  *Id.* at 937-939.

The allegations were even more specific in *In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005).  In *Daou*, CWs supported allegations that the defendants personally directed the company's revenue recognition, financial reporting, and public statements; that those defendants not only knew that the company's reported financial results were based on fraudulent accounting but that they personally directed GAAP violations to artificially inflate revenues; and that executives manually made upward adjustments to revenue in violation of GAAP.  *Id.* at 1023.[7]

---

[7] In *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1231-32 (9th Cir. 2004)*,* plaintiffs alleged "hard numbers," "specific allegations regarding large portions of [defendant's] sales data," quoted the defendant CEO as saying, "[w]e know exactly how much we have **sold** in the last hour around the world," and cited admissions about his personal involvement in many of the lost or delayed deals that were alleged to account for a considerable portion of the company's earnings shortfall.  And plaintiffs in *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809,

Here, Plaintiff does not and cannot point to any allegation in the Complaint that pleads the details of any conversation or correspondence showing that Mr. Mulligan or Mr. Strohbecke received any adverse information whatsoever.

### C.    The Core Operations Theory Does Not Apply.

Plaintiff then seeks a pass on pleading scienter by invoking the core operations theory. (Opp. 21-22.)  As Defendants showed, the allegations here come nowhere close.  (MTD 20.)

First, as discussed above, Plaintiff lacks specific admissions or statements from CWs that establish either of the Individual Defendant's detailed involvement in the minutia of the relevant facts, as required.  (MTD 20.)  Instead, the Opposition rehashes the Complaint's generalized allegations about Mr. Mulligan's and Mr. Strohbecke's roles, public statements about Maxeon's operations, focus on cash and capital management, and participation in financing discussions with lenders.  (Opp. 21-22.)  Those vague allegations are even less specific than those rejected by the Ninth Circuit in *Espy, Plumley,* and *Zucco*.  Indeed, the Ninth Circuit has long held that "corporate management's general awareness of the day-to-day workings of the companies does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud."  *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008).  The Opposition points to no such additional allegations.

Second, the Opposition fails to demonstrate that this is among the rare circumstances where it would be "absurd to suggest" that management was unaware of the relevant facts.  (Opp. 21.)  Plaintiff's authorities once again demonstrate the gulf between what is required and what is alleged here.  In *Reese*, it was the state of the pipeline after hundreds of thousands of gallons of oil spilled into the Alaskan tundra, which led the company to shut down operations in the region defendant directly oversaw.  *Reese v. Malone*, 747 F.3d 557, 563 & 574 (9th Cir. 2014).  In *Berson v. Applied Signal Technology, Inc.*, stop-work orders turned a factory into a "ghost town."  527 F.3d 982, 988 n.5., 989 (9th Cir. 2008).  And in *Twitter*, the defendant CEO described the misrepresented metric

at *10 (C.D. Cal. Aug. 4, 2014) pled details about a meeting attended by the individual defendants, the purpose of which was to review the data about patient survival that contradicted defendants' statements about the drug's safety.

as one of the company's five major growth drivers and publicly emphasized the importance of that metric to investors and analysts. *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1145-46 (N.D. Cal. 2017).[8] Plaintiff alleges no such facts here.

Third, the core operations inference also adds nothing to the holistic scienter analysis. The Opposition claims that "Maxeon's core operations during the Class Period" about which Defendants must have been aware were "replacing lost business from SunPower (26.7% of its prior year revenues!) by approaching dealers directly"; its "Utility-Scale business"; and "the management of cash flow and liquidity[.]" (Opp. 22.) But it is not the prominence of the SunPower business, Utility-Scale business, or the importance of Maxeon's cash flows that Plaintiff must demonstrate were core operations. Rather, for the inference to apply, it must be that the adverse facts contradicting the challenged statements were themselves of such prominence. (MTD 20.) Unlike the adverse inspection data in *Reese* and the stop work orders in *Berson*, Plaintiff fails to allege any such facts, much less the required prominence.

### D.   The Temporal Proximity Allegations Do Not Support Scienter.

Plaintiff concedes that temporal proximity alone is insufficient to support an inference of scienter. (Opp. 24 n.14.) Yet the only response Plaintiff offers in the Opposition is a list of the months that elapsed between the time of the challenged statements and the alleged corrective disclosures. Under binding Ninth Circuit authority, that is insufficient. (MTD 21.)

*Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014), cited in the Opposition, proves Defendants' point. In *Reese*, plaintiffs alleged contemporaneous data showing "objectively high corrosion rates" in the defendants' oil pipelines that contradicted the defendants' statements. *Id.* at 569-70. They cited the results of investigations and a ***criminal guilty plea*** showing that the company ignored "red flags" in the corrosion data before one of the largest oil spills in history. *Id.* at 565-66, 570-71. Even still, the Ninth Circuit found that temporal proximity was insufficient on its own.

---

[8] CW allegations detailing meetings with defendants at which they discussed undisclosed sales practice that led to millions in channel inventory reductions supported scienter in *In re Plantronics, Inc. Sec. Litig.*, 2022 WL 3653333, at *3, *4, *18 (N.D. Cal. Aug. 17, 2022). Widespread accounting violations led to a revenue misstatement that had a "devastating impact" on the company in *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1026 (N.D. Cal. 2020).

*Id.* at 575.  Here, there are no such facts that contribute to the holistic analysis.[9]

**E.      The Corporate Reshuffling Allegations Do Not Support Scienter.**

The Opposition fails to plead specific facts showing that Mr. Strohbecke's resignation was related to any alleged fraud rather than due to other personal or business reasons, as required.  (MTD 21 (citing *Align*, 856 F.3d at 622; *Zucco*, 552 F.3d at 1002).)

Once again, Plaintiff's authorities are inapposite.  In *SunPower*, the plaintiffs' allegations included statements from former employees that defendants were fired for misconduct related to the restatement.  *In re SunPower Sec. Litig.*, 2011 WL 7404238, at *4 (N.D. Cal. Dec. 19, 2011).  In *Hall*, the resignations were followed by company admissions that "operational challenges were exacerbated under the previous management regime" and that the departures signaled "a change aimed at improving shareholder value[.]"  *Hall v. Rent-A-Ctr., Inc.*, 2017 WL 6398742, at *34 (E.D. Tex. Oct. 19, 2017) (quotation marks omitted).  In *Allegiant*, the company's announcement tied the COO's resignation to "areas for improvement" in the wake of local news stories reporting the company's safety issue "horror stories," and misuse of FAA rules.  *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1262 (D. Nev. 2019).  And in *Myriad*, the court found that even three executive departures and a demotion "do little to bolster the scienter inference."  *In re Myriad Genetics, Inc. Sec. Litig.*, 2021 WL 977770, at *22 (D. Utah Mar. 16, 2021).

**F.      Plaintiff Does Not Offer a Cogent and Compelling Theory of Fraud.**

As the Motion demonstrated, where the complaint pleads no plausible motive for the alleged fraud, the plaintiff faces a substantial hurdle in establishing scienter.  (MTD at 21-22.)  In response, Plaintiff concedes that the Complaint pleads no motive and ignores the Ninth Circuit's binding decision in *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097 (9th Cir. 2021).

Instead, Plaintiff argues only that the lack of motive is not dispositive.  But the authorities that Plaintiff cites illustrate the type of allegations required to clear that hurdle, and they are missing here.  For example, in *Matrixx*, the court found an inference of defendants' scienter where the

_____

[9] In *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *11 (C.D. Cal. Feb. 27, 2015), unlike here, plaintiff's temporal proximity allegations were supported by a subsequent admission that defendants had become aware, months earlier, of facts contradicting their statements.

adverse effects of one of the company's main pharmaceutical products were the subject of multiple lawsuits and of press reports to which the company had issued responses. *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1182 (9th Cir. 2009), *aff'd*, 563 U.S. 27, 131 S. Ct. 1309, 179 L. Ed. 2d 398 (2011). In *LendingClub*, one defendant had engaged in self-dealing to inflate the assets of the company's subsidiaries in advance of its IPO. As to the other defendant, the company admitted material weaknesses in internal controls that fell "squarely within her oversight." *In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1121-22 (N.D. Cal. 2017). Here, Plaintiff fails to plead any similar allegations to overcome the lack of motive.

Plaintiff's fraud theory remains uncompelling. In the Opposition, Plaintiff argues that "upon the heels of losing [Maxeon's] largest customer" Defendants "artificially inflated the stock price by touting . . . growth strategies they knew had already failed," misrepresented the company's liquidity, and made statements about "the Company's future ability to meet its capital requirements they knew were objectively unattainable." (Opp. 24.) But Plaintiff still offers no theory (much less a compelling one) for why Mr. Mulligan or Mr. Strohbecke would risk civil liability and criminal charges to achieve temporary stock price inflation if they knew Maxeon's sales strategies had already failed and it would soon be unable to meet its capital requirements.

The opposing, nonculpable inferences are more compelling. Following a dispute with its largest customer, Maxeon tried to ramp sales to new customers at the same time the solar industry was facing significant challenges. Two large deals were subsequently delayed and payments from earlier long-term contracts peaked, so Maxeon turned to its largest shareholder for liquidity. Maxeon updated investors in its balanced and transparent disclosures throughout the Class Period, which the Opposition ignores. Plaintiff fails to plead a strong inference of fraudulent intent.

### IV.    PLAINTIFF FAILS TO PLEAD CONTROL PERSON CLAIMS

The failure to plead a primary violation is fatal to the control person claims. (MTD at 22.)

### V.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

DATED: March 6, 2025

*/s/ Ryan M. Keats*

Anna Erickson White
Ryan M. Keats
Lara Anders
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
MAXEON SOLAR TECHNOLOGIES,
LTD., WILLIAM MULLIGAN, and KAI
STROHBECKE