YI-CHIN HO (CA SBN 204834)
yichin.ho@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1999 Avenue of the Stars, 9th Floor
Los Angeles, CA 90067
Telephone: +1 (213) 613-2800
Facsimile: +1 (213) 613-2950

SHAHZEB LARI (*Pro Hac Forthcoming*)
Shahzeb.Lari@hugheshubbard.com
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

KATHERINE TAYLOR (*Pro Hac Forthcoming*)
Katherine.Taylor@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I Street, N.W., Suite 600
Washington, D.C. 20006
Telephone: (202) 721-4600
Facsimile: (202) 721-4646

Attorneys for Defendants
MAXEON SOLAR TECHNOLOGIES, LTD.,
WILLIAM MULLIGAN, and KAI
STROHBECKE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEYAKUMAR VS MENON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> MAXEON SOLAR TECHNOLOGIES, LTD., WILLIAM MULLIGAN, and KAI STROHBECKE, <br> Defendants. | CASE NO. 3:24-CV-03869-EMC <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> <u>CLASS ACTION</u> <br><br> Judge:  Hon. Edward M. Chen <br> Date:  October 23, 2025 <br> Time:  1:30 p.m. <br> Courtroom:  5, 17th Floor |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................1

II. PLAINTIFF FAILS TO PLEAD A MATERIALLY FALSE OR MISLEADING STATEMENT ..........................................................................................................................1

    A.    Forward-Looking Statements (Statements 2, 3, 4, 5 And 7) Are Not Actionable .......................................................................................................................2

    B.    Statements 1, 3, 4, 5 And 7 Are Inactionable Statements Of Corporate Optimism ........................................................................................................................3

    C.    Plaintiff Fails To Show That Any Challenged Statement Was False ...........................5

        1.    Plaintiff Fails To Show Statements 3, 4, 5, And 6 Were False When Made ....................................................................................................................5

        2.    Plaintiff Fails To Show Statements 1 And 2 Were False When Made ..............6

        3.    Plaintiff Fails To Show Statements 7, 8 And 9 Were False When Made ..........7

III. PLAINTIFF'S ALLEGATIONS DO NOT SUPPORT A STRONG INFERENCE OF SCIENTER ..........................................................................................................................8

    A.    The CW1 Allegations Do Not Support An Inference Of Scienter................................9

    B.    Plaintiff Fails To Plead Scienter Based On Access To Information............................10

    C.    The Core Operations Doctrine Is Inapplicable .............................................................11

    D.    Plaintiff's Remaining Scienter Arguments Are Unavailing .......................................12

IV. PLAINTIFF FAILS TO PLEAD LOSS CAUSATION .......................................................13

V. CONCLUSION.....................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Affirm Holdings, Inc. Sec. Litig.*,
   2024 WL 3955453 (N.D. Cal. Aug. 26, 2024) ...........................................................................9

*In re Align Tech., Inc. Sec. Litig.*,
   2021 WL 1176642 (N.D. Cal. Mar. 29, 2021)..........................................................................4, 5

*In re Amgen Inc. Sec. Litig.*,
   2014 WL 12585809 (C.D. Cal. Aug. 4, 2014)........................................................................10, 15

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008) ....................................................................................................11, 13

*Brendon v. Allegiant Travel Co.*,
   412 F. Supp. 3d 1244 (D. Nev. 2019)........................................................................................13

*Cement & Concrete Workers v. Hewlett Packard Co.*,
   964 F. Supp. 2d 1128 (N.D. Cal. 2013) ....................................................................................4

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*,
   875 F. Supp. 2d 359 (S.D.N.Y. 2012).........................................................................................4

*City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*,
   814 F. Supp. 2d 395 (S.D.N.Y. 2011).........................................................................................4

*In re Cloudera, Inc.*,
   121 F.4th 1180 (9th Cir. 2024) ..................................................................................................15

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ....................................................................................................3

*In re CV Therapeutics, Inc.*,
   2004 WL 1753251 (N.D. Cal. Aug. 5, 2004) .........................................................................12

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ....................................................................................................10

*DeKalb Cnty. Pension Fund v. Roblox Corp.*,
   2025 WL 948124 (N.D. Cal. Mar. 28, 2025).............................................................................14

*In re Dermtech, Inc. Sec. Litig.*,
   2024 WL 4941026 (S.D. Cal. Dec. 2, 2024)..............................................................................12

*Espy v. J2 Glob., Inc.*,
   99 F.4th 527 (9th Cir. 2024) ......................................................................................................10

*In re Eventbrite, Inc. Sec. Litig.*,
  2020 U.S. Dist. LEXIS 74651 (N.D. Cal. Apr. 28, 2020) ..........................................................8

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 487 (S.D.N.Y. 2013)...........................................................................................2

*In re Facebook, Inc. Sec. Litig.*,
  87 F.4th 934 (9th Cir. 2023) .......................................................................................................14

*Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*,
  501 F. Supp. 3d 735 (N.D. Cal. 2020) ........................................................................................14

*Flynn v. Sientra, Inc.*,
  2016 WL 3360676 (C.D. Cal. June 9, 2016) .................................................................................2

*Howard v. Everex Systems, Inc.*,
  228 F.3d 1057 (9th Cir. 2000) .....................................................................................................12

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
  554 F. Supp. 2d 1083 (C.D. Cal. 2008) ...............................................................................3, 4, 5

*Inchen Huang v. Higgins*,
  2019 WL 1245136 (N.D. Cal. Mar. 18, 2019)............................................................................15

*In re InterMune, Inc.*,
  2004 WL 1737264 (N.D. Cal. July 30, 2004)...............................................................................4

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
  998 F.3d 397 (9th Cir. 2021) .......................................................................................................14

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008). ..............................................................................................14, 15

*Monachelli v. Hortonworks, Inc*,
  225 F. Supp. 3d 1045 (N.D. Cal. 2016) ........................................................................................7

*Mulderrig v. Amyris, Inc.*,
  492 F. Supp. 3d 999 (N.D. Cal. 2020) ........................................................................................11

*Mulligan v. Impax Lab'ys, Inc.*,
  36 F. Supp. 3d 942 (N.D. Cal. 2014) .....................................................................................4, 12

*In re Myriad Genetics, Inc.*,
  2021 WL 977770 (D. Utah Mar. 16, 2021) .................................................................................13

*In re Nektar Therapeutics Sec. Litig.*,
  34 F.4th 828 (9th Cir. 2022) ...................................................................................5, 6, 14, 15

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) .........................................................................................................9

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ...........................................................................................10

*In re NVIDIA Corp. Securities Litigation*,
  768 F. 3d 1046 (9th Cir. 2014) ..........................................................................................11

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) .............................................................................................14

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) .......................................................................................10, 11

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) .............................................................................................4

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014) .........................................................................................12, 13

*Robb v. Fitbit Inc.*,
  216 F. Supp. 3d 1017 (N.D. Cal. 2016) ................................................................................9

*Roberti v. OSI Systems, Inc.*,
  2015 WL 1985562 (C.D. Cal. Feb. 27, 2015).......................................................................13

*S. Ferry LP #2 v. Killinger*,
  687 F. Supp. 2d 1248 (W.D. Wash. 2009).............................................................................10

*In re Secure Computing Corp. Sec. Litig.*,
  184 F. Supp. 2d 980 (N.D. Cal. 2001) ................................................................................13

*Shnayder v. Allbirds, Inc.*,
  2025 WL 1745596 (N.D. Cal. June 23, 2025) ........................................................................9

*Slayton v. Am. Exp. Co.*,
  604 F.3d 758 (2d Cir. 2010)................................................................................................3

*Sneed v. AcelRx Pharms.*,
  2022 WL 4544721 (N.D. Cal. Sept. 28, 2022) .....................................................................10

*Steamfitters Loc. 449 Pension Plan v. Molina Healthcare*,
  2018 WL 6787349 (C.D. Cal. Dec. 13, 2018) .....................................................................10

*In re U.S. Aggregates, Inc. Sec. Litig*,
  2003 WL 252138 (N.D. Cal. Jan. 24, 2003).........................................................................12

*Webb v. Solarcity Corp.*,
  884 F.3d 844 (9th Cir. 2018) .............................................................................................12

*Zucco Partners, LLC*,
  552 F.3d 981 (9th Cir. 2009) .....................................................................................9, 12, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The primary difference between the previously dismissed CAC and the SAC is Plaintiff's new claim that Defendants failed to disclose that the Company's financial difficulties were going to necessitate financing from its largest shareholder (TZE) which, in turn, would potentially jeopardize Maxeon's receipt of the DOE Loan meant to help finance a facility in Albuquerque, New Mexico.[1] However, as set forth in the Motion, this claim is riddled with critical pleading deficiencies, including that the SAC does not plead any facts indicating that Defendants knew—at the time the challenged statements were made in November 2023 and April 2024—that Maxeon would have to obtain financing from TZE or that this would derail the DOE Loan, or that the statements were otherwise false (indeed, the April 2024 statements do not mention or implicate TZE, the DOE Loan or the Albuquerque facility at all); and Plaintiff concedes that the Company was still actively working on the DOE Loan throughout the putative Class Period (*i.e.*, the allegedly undisclosed failure of the DOE Loan did not occur). Plaintiff's Opposition sidesteps these pleading failures. It restates the conclusory allegations rebutted in the Motion but fails to explain how those allegations establish the purported fraud regarding the DOE Loan at the heart of the SAC.

Instead, Plaintiff refocuses his attention on his claims that Defendants misrepresented the Company's liquidity—the same claims that were previously dismissed by the Court. Although Plaintiff asserts that the SAC corrects the defects in these claims previously identified by the Court, a review of the Court's Order and the SAC's new allegations establishes that Plaintiff has failed to remedy the flaws in his previously dismissed liquidity claims. Plaintiff's other arguments against the independently dispositive grounds for dismissal identified in the Motion are equally cursory. Accordingly, the SAC should be dismissed with prejudice.

### II.   PLAINTIFF FAILS TO PLEAD A MATERIALLY FALSE OR MISLEADING STATEMENT

---

[1]   Unless otherwise defined, capitalized terms have the same meaning as in Defendants' motion to dismiss (the "Motion" or "MTD," ECF 100). "Opposition" or "Opp." refer to Plaintiff's opposition to the Motion (ECF 105).

**A.    Forward-Looking Statements (Statements 2, 3, 4, 5 And 7) Are Not Actionable**

Plaintiff does not seriously contest that Statements 2, 3, 4, 5, and 7 are forward-looking, but asserts that those statements were not accompanied by meaningful cautionary language and were made with actual knowledge of their falsity. MTD 6-9; Opp. 14. Neither argument has any merit.

*First*, Plaintiff contends that the Company's cautionary language was not meaningful because it failed to disclose that the warned-of risks were "already occurring." Opp. 14.[2] This ignores the express language of Maxeon's disclosures, which made clear that the Company was already experiencing negative liquidity and market conditions and that these conditions could become worse. For instance, Maxeon cautioned: (i) "[o]ur cash flows ***have been, and may continue to be***, negatively impacted by increases in working capital requirements as a result of supply chain disruptions" (Ex. 4 at 14); (ii) "[o]ur revenues ***have been and will continue to be*** materially negatively impacted in the short term" (Ex. 9 at 26-27); and (iii) "[t]he solar industry ***has experienced and may continue to experience*** periods of structural imbalance between supply and demand, and such periods result in unpredictability" (Ex. 9 at 27-28; Ex. 4 at 8).

Plaintiff's suggestion that Defendants knew—at the time the cautionary language was issued—that lenders' concerns about Maxeon's financial condition and their insistence on shareholder guarantees would derail the DOE Loan (Opp. 14) is equally unsupported. MTD 10-15; *infra* Sec. II(B)–(C). Indeed, even under Plaintiff's theory, the lenders' focus on shareholder guarantees was not raised until "September/October 2023." ¶ 67. But the Company warned that it may not receive the DOE Loan or additional financing from other sources a year earlier, in August 2022. *See* Appx. B at 1–4 (listing cautionary language regarding DOE Loan from August 18, 2022 onwards). More fundamentally, the Company and the DOE were actively discussing the loan throughout the Class Period; *i.e.*, the failure of the DOE Loan ***never*** occurred during the relevant period. MTD at 2; ¶ 118

Similarly, Plaintiff's assertion that the Company's cautionary language did not change over

---

[2]    The cases relied on by Plaintiff do not address the PSLRA Safe Harbor but rather address claims asserting that a company's risk factors were false. *See Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *10 (C.D. Cal. June 9, 2016); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 514-15 (S.D.N.Y. 2013). The SAC does not challenge Maxeon's risk factor disclosures.

time (Opp. 15) is false.[3] For example, Maxeon's disclosures about the possibility of its not obtaining the DOE Loan evolved as discussions with the DOE progressed, becoming increasingly more detailed. *See* Appx. B at 1-6 (showing progression of risk disclosures regarding DOE Loan from August 18, 2022 to May 30, 2024). Likewise, Maxeon updated the risks posed to its revenues by its reliance on SunPower as its relationship with SunPower deteriorated. *See id.* at 6-8 (showing progression of risk disclosures regarding SunPower from March 7, 2023 to November 15, 2023).

*Second*, Plaintiff's cursory assertion that the Safe Harbor does not apply because Defendants knew the statements were false and misleading when made (Opp. 15-16) is baseless. "[I]f a forward-looking statement is identified as such and accompanied by meaningful cautionary statements, then the state of mind of the individual making the statement is irrelevant." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010). Because Maxeon's cautionary language was meaningful, Defendants' purported knowledge has no bearing. Regardless, the SAC does not factually allege actual knowledge of falsity against any Defendant. *See supra* Sec. II(A); MTD 9; 16-20.

**B.      Statements 1, 3, 4, 5 And 7 Are Inactionable Statements Of Corporate Optimism**

Several of the statements challenged by Plaintiff are "vague, generalized assertions of corporate optimism or statements of 'mere puffing' [that] are not actionable material misrepresentations under federal securities laws." *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008); MTD 9-10.

Plaintiff contends that these statements are actionable because they purportedly provided specific, objectively verifiable information about the Company that Defendants knew was contradicted by then-existing facts. Opp. § IV.B. That argument is belied by the actual language of the statements—which Plaintiff, tellingly, does not cite. *See, e.g.*, ¶ 97 ("we are in a good position to generate sufficient cash and maintain sufficient cash levels for our existing business"); ¶ 100 (Maxeon was "advancing well in negotiations for multiple offtake agreements"); ¶ 105 (Maxeon was "highly focused on . . .

---

[3]      In contrast to the numerous detailed and evolving risk disclosures accompanying Defendants' statements (Appx. B), *Slayton* involved a single sentence of "vague" cautionary language that the "potential deterioration in the high-yield sectors . . . could result in further losses in AEFA's portfolio" which did not change for months despite defendants reporting significant financial losses and write-downs in the interim. *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 772 (2d Cir. 2010).

liquidity management to enable a return to profitability"); MTD 9-10. These statements do not provide any specific factual assertions. They are generalized and subjective expressions of optimism that are "not capable of objective verification," and therefore not actionable. *Cement & Concrete Workers v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1138-39 (N.D. Cal. 2013); *see also* MTD 9-10; *In re Align Tech., Inc. Sec. Litig.*, 2021 WL 1176642, at *3 (N.D. Cal. Mar. 29, 2021), *aff'd sub nom. Macomb Cnty. Employees' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092 (9th Cir. 2022). Nor does the SAC contain any particularized allegations showing that Defendants were aware of contradictory facts. *See infra* Sec. III; MTD 10-15.

The cases referenced by Plaintiff have no application here. Those decisions address concrete, factual statements easily distinguishable from the soft "puffing" statements challenged by Plaintiff. *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017) (statements regarding the defendants' sales pipeline went beyond "'feel good' optimistic statements" because they provided "a concrete description of the past and present state of the pipeline," stated that prospective sales were unchanged "or even growing, compared to previous quarters," and detailed what proportion of the market they believed was subject to growth); *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 967 (N.D. Cal. 2014) ("statements identified in the FAC contain factual representations at their core—that Defendants had responded to the FDA Warning Letter by instituting various changes to the manufacturing and/or quality control procedures or processes"); *In re InterMune, Inc.*, 2004 WL 1737264 , at *4 (N.D. Cal. July 30, 2004) (statements regarding doctors' receptivity to defendant's primary drug, the number of patients taking the drug during the first quarter of 2003, and the size of defendant's sales force were actionable); *City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 366 (S.D.N.Y. 2012) ("the projections that plaintiff alleges were false were, in many instances, highly specific").[4]

Notably, in *Mulligan*, the Court found that statements that the defendants were "confident" about their ability to resolve regulatory issues were non-actionable puffery. 36 F. Supp. 3d at 967 n 2. Similarly, *In re Impac*—also relied on by Plaintiff—found that statements that the defendants

---

[4]    *City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 412 (S.D.N.Y. 2011) does not address the question of corporate puffery.

"continue to expect solid loan acquisitions and originations," "remain optimistic for continued solid loan production," and "believe our fundamentals are solid" were inactionable puffery. 554 F. Supp. 2d at 1096-97. These statements are far more analogous to Defendants' expressions of corporate optimism. *See* MTD 9-10; ¶¶ 97, 100, 101, 102, 105.

Finally, Plaintiff's contention that analyst reactions or questions transform Defendants' inactionable puffery into actionable misstatements (Opp. 13-14) has been rejected by courts in this District: "[a]n analyst's interpretation of a defendant's statements, however, cannot transform corporate optimism into a securities violation because, absent an actionable misstatement, reliance does not come into play." *Align*, 2021 WL 1176642, at *4.

## C.    Plaintiff Fails To Show That Any Challenged Statement Was False

"By requiring specificity, the PSLRA prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 835 (9th Cir. 2022); *see also* MTD 10. As explained in the Motion, the SAC fails this fundamental requirement; Plaintiff's Opposition does nothing to change that conclusion. MTD 10-15; Opp. 6-12.

### 1.    Plaintiff Fails To Show Statements 3, 4, 5, And 6 Were False When Made

The SAC does not plead facts demonstrating that Statements 3-6 were false because (i) Plaintiff's allegations do not show that that Defendants knew, in November 2023, that Maxeon would have to obtain financing from TZE or that this would derail the DOE Loan; and (ii) Plaintiff does not explain how the statements "affirmatively created an impression of a state of affairs that differed in a material way from the one that actually existed." MTD 11-13 (citing Order at 30). The Opposition largely ignores the substance of these arguments.

Plaintiff argues that he has adequately pled that CW1 is a reliable witness (Opp. 8-9) but that is not the focus of Defendants' argument, which is that, even if CW1's reliability has been established, the substance of the CW1 allegations does not establish falsity. MTD 11-13; *infra* Sec. III(A). In particular, concerns over Maxeon's liquidity and financing from TZE expressed by lenders and the DOE do not suggest that Defendants knew—in November 2023—that they would accept funding from

TZE in April 2024—especially given Plaintiff's own allegations that Defendants were considering "a lot" of financing options during this time period. MTD 11-13, 16-17; ¶¶ 66, 132; *infra* Sec. III(A)–(B). Plaintiff fails to address this critical missing link; the Opposition simply restates the SAC's insufficient allegations.

Plaintiff also does not explain how any of the challenged statements presented a misleading state of affairs other than to conclusorily assert that Statement 6 "put the New Mexico facility in play," without any attempt at explaining how or why that is the case. Opp. 10. Such generalized assertions cannot establish falsity. *See*, *e.g.*, *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th at 835. Moreover, given the Company's detailed and ongoing warnings about the uncertainty surrounding the DOE Loan, there is no basis to suggest that investors were unaware that Maxeon might not receive the loan. *See supra* Sec. II(A).[5]

**2.    Plaintiff Fails To Show Statements 1 And 2 Were False When Made**

Plaintiff's assertions that Statements 1 and 2 regarding Maxeon's cash levels were misleading because they failed to disclose that Maxeon was not going to obtain the DOE Loan and was going to accept financing from TZE fail because (i) Statements 1 and 2 make no mention of either of those subjects, and (ii) the SAC does not plead facts showing that Defendants knew—in November 2023—that Maxeon would have to obtain financing from TZE or that this would derail the DOE Loan. MTD 11-13; *supra* Sec. II(C)(1).

Plaintiff does not meaningfully dispute these points but rather focuses his response on the other bases for falsity alleged in the SAC, notwithstanding that the Court previously rejected the sufficiency of those same allegations. MTD 13-14. Specifically, Plaintiff contends that the SAC cures the defects previously identified by the Court. Opp. 6-8. That is incorrect. *First*, the Court dismissed Plaintiff's claims because "[t]here is no allegation indicating, *e.g.*, that the amortization of the Utility-Scale contracts was of such significance that it alone could dictate whether or not Maxeon would continue as a going concern." Order at 25; MTD 13-14. Plaintiff contends that the SAC includes additional allegations regarding the Company's amortization schedule (Opp. 6-7; ¶¶ 77-81), but ***the SAC still***

---

[5]    Plaintiff also misquotes several of the challenged statements in his attempt to argue falsity. *Compare* Opp. 9 *with* Ex. 10 at 4; Opp. 10 *with* Ex. 9 at 19.

*does not allege* that the amortization of the Utility-Scale contracts threatened Maxeon's status as a going concern—the most it claims is that "the impact of the amortization schedule were huge hits to the Company's cash flows." ¶ 80.

*Second*, the Court dismissed Plaintiff's claims on the grounds that Plaintiff's "allegations about the lender's conclusions are still too vague and conclusory. As alleged, lenders expressed concern about whether Maxeon could continue as a going concern but, without more information about the basis for that concern, it is not clear whether Statement [2], which said Maxeon was expected to continue for another 12 months, was false or misleading." Order at 27. Without expressly addressing the Court's holding, Plaintiff seems to suggest that he has remedied this failure by stating that lenders' going concern worries were "because of their concerns about the Company's ability to repay existing loans." Opp. 8. This is just more of the same: a vague conclusion that does not provide any factual specificity about the alleged basis for the lenders' concerns and simply restates the CAC's insufficient allegations regarding Maxeon's purported debt payment issues.

Furthermore, Plaintiff fails to meaningfully address the case law finding that generalized statements about a company's future prospects and cash flows accompanying admittedly accurate historical financial reporting—as is the case here—cannot support a Section 10(b) claim. MTD at 14; Order at 23-24; *Monachelli v. Hortonworks, Inc*, 225 F. Supp. 3d 1045, 1055 (N.D. Cal. 2016).[6]

### 3.    Plaintiff Fails To Show Statements 7, 8 And 9 Were False When Made

Plaintiff does not seriously defend the SAC's allegations of falsity with respect to the challenged April 2024 statements. MTD 14-15; Opp. 11-12.

**Statement 7**. Although Plaintiff acknowledges that the Court previously dismissed Plaintiff's claims regarding Statement 7, he contends that the Court's prior ruling no longer applies "because the SAC contains far more detailed allegations that have addressed the Court's concerns"—but Plaintiff does not identify what those additional "detailed allegations" are or how they rebut the Court's prior finding that Maxeon's alleged financial and financing concerns did not render Statement 7 false or

---

[6]    Statements 1 and 2 were made on November 15, 2023. ¶¶ 97-98. Plaintiff's assertion that Defendants became aware of delays in Utility-Scale contracts in *2024* (Opp. at 13) does not support any inference of falsity or scienter regarding these earlier statements; it undermines any such inference.

misleading. MTD 14; Opp. 11; Order at 30-31.

**Statement 8**. The Court previously dismissed Plaintiff's claim that Statement 8 was false because "part of the company's evaluation of whether it could continue as a going concern was likely dependent on whether it could get liquidity support from a third party (such as TZE). At bottom, without additional allegations by Plaintiff, it cannot plausibly be said Defendants knew in April 2024 that it could not continue as a going concern." Order at 31. Plaintiff vaguely states that it has provided the requisite additional allegations in the form of details regarding the Company's lenders' concerns about Maxeon's ability to continue as a going concern. Opp. 11-12. Plaintiff is presumably referring to ¶¶ 66 and 67 of the SAC, but those paragraphs remain lacking for the same reason the Court identified in its Order: they do not provide the necessary information about the *basis* for the lenders' concerns. Order at 27; ¶¶ 66-67. Nor do they provide any insight into what Defendants knew in *April 2024* about the Company's ability to continue as a going concern. ¶¶ 66-67 (discussing lenders' alleged concerns in September to November 2023).

**Statement 9**. Plaintiff persists in arguing that the April 8 Press Release's statement that "Maxeon has been executing a transformation of our IBC capacity timed to coincide with the current DG market slowdown" misrepresented the status of the Albuquerque facility, despite the fact that neither the statement nor the April 8 Press Release mention the Albuquerque facility (or the DOE Loan, for that matter). MTD 15; Opp. 12. Faced with that fact, Plaintiff seems to argue that Defendants and the Court must accept Plaintiff's assertion that Statement 9 referred to the Albuquerque facility. Opp. 12. That, of course, is not the law. The text of Statement 9 governs, not Plaintiff's unfounded interpretation. *See*, *e.g.*, *In re Eventbrite, Inc. Sec. Litig.*, 2020 U.S. Dist. LEXIS 74651, at *38 (N.D. Cal. Apr. 28, 2020).[7]

## III.   PLAINTIFF'S ALLEGATIONS DO NOT SUPPORT A STRONG INFERENCE OF SCIENTER

The Opposition fails to demonstrate that any of the SAC's allegations, individually or holistically, support an inference of scienter. MTD 16-20.

---

[7]    Plaintiff's citation to ¶ 100 is puzzling. That paragraph references the November 2023 Earnings Call, not any statements made in the April 8 Press Release.

**A.      The CW1 Allegations Do Not Support An Inference Of Scienter**

CW1's assertions that Maxeon's lenders had questions about the Company's financial condition and that the DOE was concerned about the possibility of TZE providing financing to the Company do not provide any basis to infer that Defendants were aware that Maxeon would have to obtain financing from TZE at the time of their allegedly misleading statements or that this would derail the DOE Loan. MTD 10-12, 16-17.[8] Plaintiff's Opposition sidesteps this critical pleading failure. Instead, it simply repeats the conclusory allegations rebutted in the Motion without explaining how they demonstrate Defendants' knowledge of the purported fraud at the heart of the SAC. Opp. 16-19.

Perhaps recognizing the insufficiency of those arguments, Plaintiff resorts to arguing against straw men:

- The Motion points out that the CW1 allegations regarding meetings in January 2024 have no relevance to Defendants' state of mind in November 2023. MTD 17. Plaintiff does not contest that obvious truth but instead asserts that communications from September/October 2023 may be relevant (they are not, for independent reasons). Opp. 18.

- Plaintiff claims that the SAC provides sufficient details about CW1 to establish his reliability. Opp. 18. But the critical deficiency in the SAC is that, even assuming CW1's reliability, the allegations attributed to CW1 are not indicative of scienter. MTD 16-17; *Zucco Partners, LLC*, 552 F.3d 981, 995 (9th Cir. 2009) ("those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter.").

- Plaintiff contends that, despite the fact that CW1 left Maxeon in January 2024, it would be improper for the Court to discount the significance of the CW1 allegations with respect to Defendants' state of mind in April 2024 (when Statements 7 to 9 were made). Opp. 18 n.13. Ninth Circuit law is to the contrary. MTD 17; *Zucco Partners, LLC*, 552 F.3d at 996; *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020).[9]

---

[8]      *See also, e.g.*, *Zucco Partners, LLC*, 552 F.3d 981, 995 (9th Cir. 2009) ("allegations that senior management ... closely reviewed [quarterly] accounting numbers ... and that top executives had several meetings in which they discussed quarterly inventory numbers" are insufficient to establish scienter); *Shnayder v. Allbirds, Inc.*, 2025 WL 1745596, at *23 (N.D. Cal. June 23, 2025) (CW statements that executives were presented "with data showing their anticipated path forward would lead to failure" did not plausibly suggest they adopted such views or believed failure was inevitable); *In re Affirm Holdings, Inc. Sec. Litig.*, 2024 WL 3955453, at *11 (N.D. Cal. Aug. 26, 2024) (statements demonstrating disagreements within corporation "stop[ped] short of establishing scienter without further facts showing that [CFO] acknowledged or admitted the increased risks[]"), *reconsideration, sub nom*. *Mark Kusnier v. Affirm Holdings Inc.*, 2025 WL 2373353 (N.D. Cal. Aug. 14, 2025) (affirming scienter holdings).

[9]      The sole supporting case cited by Plaintiff does not address this question. *See Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017 (N.D. Cal. 2016).

REPLY IN SUPPORT OF MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT                     9                     CASE NO. 3:24-CV-03869-EMC

**B.    Plaintiff Fails To Plead Scienter Based On Access To Information**

Ninth Circuit precedent is clear that Plaintiff cannot plead scienter based on generalized allegations about access to information—rather, he must plead details about the reports and data accessed by Defendants that contradict the challenged statements. MTD 19; *Steamfitters Loc. 449 Pension Plan v. Molina Healthcare*, 2018 WL 6787349, at *3 (C.D. Cal. Dec. 13, 2018) ("Mere access to information is insufficient to adequately allege scienter."). Nonetheless, Plaintiff—citing *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at *9-10 (C.D. Cal. Aug. 4, 2014)—contends that he can plead scienter based on allegations that Defendants "likely had access to facts" contradicting their statements. Opp. 16. *Amgen* has no bearing here; its holding was expressly limited to claims relating to clinical trials in the pharmaceutical industry. *See* 2014 WL 12585809, at *9-10 ("in pharmaceutical cases involving the results of clinical trials, the crucial question of scienter concerns whether a defendant actually knew that there were major discrepancies in the clinical data or had access to and was therefore put on notice that there might be such discrepancies … The absence of actual knowledge is not fatal to a Section 10(b) claim involving misstatements in the clinical trial context.").

Therefore, Plaintiff's conclusory assertions—absent any identification of specific information provided to Defendants—that Defendants must have had access to contradictory information because of "their focus on liquidity management and the Utility-Scale business" and their executive positions (Opp. 17-19) cannot raise any inference of scienter. MTD 17-18; *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014); *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 537 (9th Cir. 2024) ("Allegations that [individual defendants] signed off on every acquisition, received detailed reports, or were 'obsessed with numbers,' do not compel a strong inference that they had knowledge of the alleged omitted information"); *Sneed v. AcelRx Pharms.*, 2022 WL 4544721, at *5 (N.D. Cal. Sept. 28, 2022) (allegations of access to information "lack the specificity required to show that Defendants had contemporaneous knowledge that any particular statement was untrue").[10]

---

[10]    Plaintiff's cases are not to the contrary. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1022–24 (9th Cir. 2005) (plaintiff provided specific allegations of defendants' direct involvement in production of false statements); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1259–60 (W.D. Wash. 2009) (plaintiff specifically alleged defendant's awareness of contradictory information, including discussing issues relevant to alleged fraud "with a high degree of specificity on more than one occasion"); *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1231 (9th Cir.

**C.      The Core Operations Doctrine Is Inapplicable**

The Opposition primarily focuses on the second prong of the core operations theory, which requires a plaintiff to plead facts demonstrating that the defendants were aware of specific information showing that the challenged statements were false. Opp. 19–20; MTD 18. "Proof under this theory is not easy. A plaintiff must produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring, or witness accounts demonstrating that executives had actual involvement in creating false reports." *Intuitive Surgical, Inc.*, 759 F.3d at 1062. The SAC does not proffer any such facts (MTD 18) and Plaintiff remains unable to identify any such facts—he simply reiterates the SAC's allegations that the Company's Utility-Scale business and its planned Albuquerque facility were important to Maxeon. Opp. 20-21. Absent any particularized allegations showing precisely what facts Defendants knew and how those facts establish Defendants' knowledge of falsity, Plaintiff's reliance on the core operations theory is misplaced. *See, e.g.*, *In re NVIDIA Corp. Securities Litigation*, 768 F. 3d 1046, 1063-64 (9th Cir. 2014) ("[A]bsent some additional allegation of specific information conveyed to management and related to the fraud or other allegations supporting scienter, the core operations inference will generally fall short of a strong inference of scienter.") (citations omitted).

Plaintiff also makes passing reference to the third prong of the core operations theory, which allows an inference of scienter "in rare circumstances where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *Intuitive Surgical, Inc.*, 759 F.3d at 1062; Opp. 20. This prong may be implicated where the challenged statements are contradicted by contemporaneous facts that are so integral to a company's operations that executives must be aware of those conflicting facts, as in the cases referenced in the Opposition. Opp. 20-21.[11] That prong has no application here: Plaintiff does not allege the existence of concrete

2004) (scienter pled based on holistic assessment of allegations including "specific admissions from the three top executive officers of Oracle" that indicated they were very involved in every detail of the business and that they monitored the company's global database" in case involving allegedly improper revenue recognition of significant magnitude); *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1026 (N.D. Cal. 2020) (defendants personally involved in accounting operations in a small department).

[11]      *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 988–89 (9th Cir. 2008) ("hard to believe" that defendants, who were directly responsible for the day-to-day operations of a company

facts belying Defendants' statements but rather that Defendants must have known that the Company's financial vulnerabilities would—in the future—require it to obtain funding from TZE and that this, in turn, would adversely impact the DOE Loan.

### D.    Plaintiff's Remaining Scienter Arguments Are Unavailing

*Motive*. Plaintiff contends that the conclusive precedent holding that a company's desire to obtain financing does not indicate scienter (MTD 16) is inapplicable because Maxeon needed financing to ensure its "continued existence." Opp. 21-22. Courts have rejected identical arguments as the desire to avoid bankruptcy is merely an extension of the general corporate objectives that are insufficient to infer scienter. *See, e.g., In re Dermtech, Inc. Sec. Litig.*, 2024 WL 4941026, at *12 (S.D. Cal. Dec. 2, 2024) (rejecting argument that defendants were motivated by desire to "keep the lights on" because it "points only to a general objective of all companies: to maximize profitability and remain in business"); *Webb v. Solarcity Corp.*, 884 F.3d 844, 854, 856 (9th Cir. 2018).[12]

*Strohbecke's Resignation*. Plaintiff's assertion that Strohbecke "abrupt[ly] depart[ed]" the Company one week after the alleged truth was revealed (Opp. 22) is erroneous. Although Maxeon announced Strohbecke's resignation on June 4, 2024, his departure was with three months-notice and was scheduled for the end of August 2024 (with an interim internal replacement until a permanent successor was hired shortly thereafter). Ex. 16 at 3; ¶ 150. This does not give rise to any inference of scienter. MTD 19-20; *Zucco Partners, LLC*, 552 F.3d at 1002. The cases cited by Plaintiff are

whose primary customers were government agencies, would not have known of the "prominent" fact that the government issued four "stop-work orders" that halted tens of millions of dollars of the company's work); *Mulligan*, 36 F. Supp. 3d at 970 (it would have been absurd for the CEO and CFO of a pharmaceutical company to be unaware that the company had received an FDA warning letter and undergone several failed inspections as such events are "crucial" to a pharmaceutical company); *Reese v. Malone*, 747 F.3d, 557, 576 (9th Cir. 2014) (absurd that the head of BP-Alaska's Prudhoe Bay operations did not know that two pipelines operated in Prudhoe Bay were similar, especially when comparable conditions between the lines had been documented for at least a decade and they underwent similar monitoring procedures, because such information was "core" to pipeline operations) overruled, in part, by *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017). *In re CV Therapeutics, Inc.*, 2004 WL 1753251, at *10 (N.D. Cal. Aug. 5, 2004), does not address the core operations doctrine.

[12]    This is distinguishable from situations where scienter is inferred based on specific allegations that defendants were motivated to avoid triggering defaults under existing loan covenants. *See Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000); *In re U.S. Aggregates, Inc. Sec. Litig,* 2003 WL 252138, at *3-4 (N.D. Cal. Jan. 24, 2003).

inapposite. *See Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1263 (D. Nev. 2019) (executive "unexpectedly resigned" one week after safety issues at the corporate defendant came to light and the press release announcing his departure "suggested the resignation was tied to operational challenges at the company"); *In re Myriad Genetics, Inc.*, 2021 WL 977770, at *22 (D. Utah Mar. 16, 2021) (plaintiff pointed to the resignations of three executives and the demotion of a fourth; the court found that two of the resignations did not support scienter and that the other resignation and demotion provided "very modest scienter support because they occurred only days apart and because [the] resignation was unusual in that it was effective immediately with no successor identified").

*Temporal Proximity*. Plaintiff does not provide any support for his contention that the six-month gap between Defendants' November 15, 2023 and May 30, 2024 statements raises an inference of scienter. MTD 18-19. Two of the cases relied on by Plaintiff addressed corrective disclosures made just *two weeks* after the allegedly misleading statements. *See Berson*, 527 F.3d 988, 988 n.5; *In re Secure Computing Corp. Sec. Litig.*, 184 F. Supp. 2d 980, 990 (N.D. Cal. 2001). In the other decisions cited by Plaintiff, the defendants' later statements indicated (or outright admitted) that they had contradictory information at the time the earlier challenged statements were made. In *Reese*, following multiple regulatory investigations and a criminal guilty plea relating to one of the largest oil spills in history, the court found that documents acknowledging high pipeline corrosion rates prepared by BP three to six months after a BP executive dismissed pipeline corrosion as anomalous bolstered a scienter inference given the historically "constant, long-term nature of the information" regarding pipeline corrosion, "particularly when considered in conjunction with other facts alleged in the complaint." *Id.* at 747 F.3d 572–75. In *Roberti v. OSI Systems, Inc.*, the court found that a disclosure made "less than six months" after the alleged misstatement that software was in final testing supported a finding of scienter because the later disclosure stated the company had become aware of software problems "months ago." 2015 WL 1985562, at *11 (C.D. Cal. Feb. 27, 2015).

## IV. PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

As discussed in the Motion, the SAC fails to plead loss causation based on a corrective disclosure because the allegedly corrective May 30, 2024 disclosures did not reveal that the DOE Loan

was no longer possible. MTD 20-22.[13] Rather, they emphasized that the DOE Loan application was "still advanced and live," Maxeon was working closely with the DOE, and there remained "scenarios that will allow [the Albuquerque] project to proceed with the DOE[.]" Ex 15 at 11; MTD 20-22.

Plaintiff does not respond to this dispositive point. Opp. 23–25. Instead, Plaintiff asserts that the SAC adequately pleads loss causation based on the allegation that Maxeon's stock price fell after the Company's negative disclosures about its financial condition on May 30, 2024. Opp. 23-24. That is patently insufficient. The Ninth Circuit has repeatedly found that loss causation requires allegations "that the market learned of and reacted to the practices the plaintiff contends are fraudulent, as opposed to merely reports of the defendant's poor financial health generally." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010).[14] A plaintiff is not allowed "to plead loss causation through 'euphemism' and thereby avoid alleging the necessary connection between defendant's fraud and the actual loss. So long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market 'understood' a defendant's statement precipitating a loss as a coded message revealing the fraud. Enabling a plaintiff to proceed on such a theory would effectively resurrect what *Dura* discredited—that loss causation is established through an allegation that a stock was purchased at an inflated price. Loss causation requires more." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008).

Plaintiff's assertion that loss causation can be based on analyst questions (Opp. 24) is a red herring. Defendants do not argue otherwise. Rather, the specific question and answer between an analyst and Mulligan referenced by Plaintiff does not suffice as a corrective disclosure because it did

_____

[13] Although Plaintiff tries to dismiss his obligation to plead particularized facts demonstrating loss causation as a "low bar" (Opp. 23), Section 10(b) claims are routinely dismissed for failure to plead loss causation. *See, e.g.*, *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th at 832; *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 401, 405 (9th Cir. 2021); *DeKalb Cnty. Pension Fund v. Roblox Corp.*, 2025 WL 948124, at *4 (N.D. Cal. Mar. 28, 2025); *Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735, 772–73 (N.D. Cal. 2020).

[14] *See also In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 955 (9th Cir. 2023) (citing *Oracle*, 627 F.3d at 392) ("Because loss causation requires that the defendant's misstatement, rather than some other fact, foreseeably caused the plaintiff's loss, establishing loss causation requires more than 'an earnings miss' or the market's reaction to a company's 'poor financial health generally.'") (citing *Oracle*, 627 F.3d at 392), *cert. granted in part sub nom. Facebook, Inc. v. Amalgamated Bank*, 144 S. Ct. 2629, 219 L. Ed. 2d 1267 (2024), *and cert. dismissed as improvidently granted sub nom. Facebook, Inc. v. Amalgamated Bank,* 604 U.S. 4, 145 S. Ct. 10 (2024).

not indicate that the DOE Loan was out of reach or that any of Defendants' prior statements regarding the loan were false. MTD 21–22; *Metzler*, 540 F.3d at 1063-64.

Evidently recognizing the deficiency of his corrective disclosure theory, Plaintiff falls back on arguing that he can proceed based on a materialization of risk theory. Opp. 24–25. However, as Plaintiff concedes, the Ninth Circuit has not adopted this theory. *Id.* at 25 n.22. Even if a materialization of risk theory is tenable in this Circuit, Plaintiff must still show that Defendants "lied about 'the very facts' causing the plaintiffs' losses." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th at 838 n.6. Specifically, Plaintiff must factually allege that the purportedly concealed risk—that Maxeon's liquidity concerns would defeat the DOE Loan—materialized when Maxeon made its May 30, 2024 disclosures. *See*, *e.g.*, *Inchen Huang v. Higgins*, 2019 WL 1245136, at *16 (N.D. Cal. Mar. 18, 2019) ("[E]ven assuming the viability of [the materialization of risk] theory, Plaintiffs have not sufficiently alleged 'a causal connection' between the risks of the alleged off-label marketing and the negative financial news announced on the identified disclosure dates.").[15] The SAC fails to establish any such connection. *See supra* Sec. II(C); MTD 20-22.

## V.    CONCLUSION

Plaintiff has now had multiple opportunities to plead a viable cause of action but has failed to do so and, despite his cursory request for leave to amend (Opp. 25 n.23), does not identify any additional allegations he could plead to remedy the numerous deficiencies in the SAC. Therefore, the SAC should be dismissed with prejudice. *See Zucco Partners, LLC*, 552 F.3d at 1007 ("repeated failure to cure deficiencies by amendments previously allowed" warrants dismissal with prejudice); *In re Cloudera, Inc.*, 121 F.4th 1180, 1190 (9th Cir. 2024) (affirming dismissal with prejudice where plaintiff failed to identify additional facts he could plead to remedy previous failures).

---

[15]    *See also In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at *20 ("[Plaintiff must] establish loss causation by alleging that the defendant's misrepresentations concealed a risk that materialized and played some part in diminishing the value of the security.").

DATED: August 22, 2025

HUGHES HUBBARD & REED LLP
YI-CHIN HO
SHAHZEB LARI (*Pro Hac* Forthcoming)
KATHERINE TAYLOR (*Pro Hac* Forthcoming)


*/s/      Yi-Chin Ho*
Yi-Chin Ho

Attorneys for Defendants
MAXEON SOLAR TECHNOLOGIES, LTD.,
WILLIAM MULLIGAN, and KAI
STROHBECKE